UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISON

**CLAUDE BOUDREAUX, ET AL.**      **CIVIL ACTION NO. 6:65-11351**

**VS.**      **JUDGE DRELL**

**SCHOOL BOARD OF ST. MARY**      **MAGISTRATE JUDGE WHITEHURST**
**PARISH, ET AL.**

**RESPONSE OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** …………………………………………………………………ii

**INTRODUCTION** …………………………………………………………………..……1

**PROCEDURAL HISTORY** ………………………………………………………………….2

**ARGUMENT** …………………………………………………………………………………5

    I.   The United States, by Order of this Court, Has Broad Authority to Litigate this Case ......5

    II.  A Live Controversy Exists until the St. Mary Parish School Board Achieves Unitary Status ..................................................................................................................................8

    III. This Court has the Discretionary Authority and Support in the Record to Maintain this Case as a Class Action ..................................................................................................9

        A.  School Desegregation Cases, by their Very Nature, Warrant Class Relief .....................9

        B.  The Court, with the Board's Consent, Approved this Case as a Class Action 54 Years Ago and has Continuously Treated it as Such …..………………………......10

        C.  This Court, Consistent with the U.S. Supreme Court in *Spangler* and the Fifth Circuit in *Tasby* and *Graves*, Retains its Discretionary Powers with Respect to Class Certification and Mootness ..…………………………………………..12

**CONCLUSION** …………....……………………………………………………………15

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Bd. of Educ. of Okla. City v. Dowell*, 498 U.S. 237 (1991) ………………………………………9

*Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128 (1975) ……………………………………….12, 13

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) ...……………………………………..................5

*Freeman v. Pitts*, 503 U.S. 467 (1992) ……………………………………………………….....9

*Green v. County Sch. Bd. of New Kent Cty.*, 391 U.S. 430 (1968) …………………………............9

*Missouri v. Jenkins*, 515 U.S. 70 (1995) ……………………………………………………..9

*Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424 (1976) …………………………..12, 13, 14

*Rogers v. Paul*, 382 U.S. 198 (1965) ……………………………………………………………13, 14

*Sosna v. Iowa*, 419 U.S. 393 (1975) ……………………………………………………………12, 13

*Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946) ……………………….......5

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) …………………………………………….12

**Federal Courts of Appeal**

*Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963) ……………………………………………10, 11

*Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973) ……………………………7, 12, 14

*Day v. Persels & Associates*, 729 F.3d 1309 (11th Cir. 2013) ………………………………………7

*Faubus v. United States*, 254 F.2d 797 (8th Cir. 1958) ……………………………………...5, 6, 7

*Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977) ……………………………………………………….12

*Graves v. Walton Cty. Bd. of Educ.*, 686 F.2d 1135 (5th Cir.1982) ……………………...12, 13, 14

*Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979) ……………………………………...12

*Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963) ……………………………………………………….10, 11

*Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981) ……………………………………………9, 12, 13

*Thomas ex rel. D.M.T. v. Sch. Bd. of St. Martin Par.*, 756 F.3d 380 (5th Cir. 2014) ……………….9

*United States v. Barnett*, 330 F.2d 369 (5th Cir. 1963) …………………………..….5, 6, 7, 8

**Federal District Courts**

*Bennett v. Madison Cty. Bd. of Educ.*, Civ. Action 5:63-cv-00613-MHH (N.D. Ala.) …………..11

*Bush v. Orleans Par. Sch. Bd.*, 191 F. Supp. 871 (E.D. La. 1961) ………………………..5, 6, 7, 8

*Cowan v. Bolivar Cty. Bd. of Educ.* (Cleveland Sch. Dist.), 186 F.Supp.3d 564 (N.D. Miss. 2016) ……………………………………………………………………………………………14

*Hereford v. Huntsville Bd. of Educ.*, 5:63-CV-00109-MHH, 2014 WL 12781219 (N.D. Ala. May 20, 2014) …………………………………………………………………………........11

*Oburn v. Shapp*, 393 F. Supp. 561 (E.D. Pa. 1975) ……………………………………………9, 11

*Parm v. Shumate*, Civ. Action 3-01-2624, 2006 WL 1228846 (W.D. La. May 1, 2006) ………7, 8

*Stout v. Jefferson Cty. Bd. of Educ.*, Civ. Action 2:65-cv-396-MHH (N.D. Ala.) ……………....11

*Thomas ex rel. D.M.T. v. Sch. Bd. of St. Martin Par.*, Civ. Action 65-cv-11314-EEF (W.D. La.) ……………………………………………………………………………………………14

**State Courts**

*Swope v. St. Mary Par. Sch. Bd.*, 256 La. 1110, 241 So.2d 238 (1970) ………………………..2, 3

**Rules**

Federal Rule of Civil Procedure 23 ……………………………………………………..2, 10, 11

**Other**

7AA Charles Alan Wright, Arthur R. Miller, et. al., Federal Practice and Procedure, Federal Rules of Civil Procedure § 1785.4 (3d ed.) ……………………………………………………..12

# INTRODUCTION

The United States of America ("United States") now submits its Opposition to the Motion to Dismiss as Moot for Lack of Subject Matter Jurisdiction [Doc. 17] filed by the Defendant School Board of St. Mary Parish ("Board" or "District"). Fifty-four years ago, this Court found the Board in violation of the U.S. Constitution and ordered it to desegregate the *de jure* segregated school district. At no time during the subsequent five decades has the Board moved for a declaration of unitary status and made the necessary affirmative showings of remediation to enable this Court to declare the District unitary and dismiss the case. Instead of describing compliance with the outstanding desegregation order(s), the District, in its Motion to Dismiss, seeks to effectively circumvent its remaining desegregation obligations. The Board asserts that there is no plaintiff to prosecute this action and that no plaintiffs' class has ever been certified. The Board further argues that the United States is merely an amicus curiae with limited authority, thereby rendering the controversy dead and the case moot. In so arguing, however, the Board ignores both its prior stipulation that Plaintiffs are "under the law *entitled to bring this suit as a class action*" [Doc. 17-4 at 19] (emphasis added), and this Court's appointment of the United States as an amicus curiae with broad litigating authority in the representation of the public interest.

The United States respectfully submits that this case is not moot and requests that: (1) the Board's Motion be DENIED; and (2) the United States be permitted to continue to participate in the instant litigation pursuant to the broad authority granted it by this Court in 1969. Moreover, it is well within this Court's discretion to grant Plaintiffs' Motion to Substitute. [Doc. 26.]

1

## PROCEDURAL HISTORY

On August 31, 1965, Plaintiffs brought this action against the Board:

> as a class suit pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of other Negro children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein as more fully appears.

[Doc. 17-4 at 3, §III.]

Almost immediately thereafter, in October 1965, the Board stipulated that:

> the plaintiffs are residents of St. Mary Parish, Louisiana, and are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs, and that plaintiffs are, therefore, under the law entitled to bring this suit as a class action.

[Doc. 17-4 at 19.]

On October 11, 1965, this Court explicitly relied on the Board's stipulation in permanently enjoining the Board from operating a dual system and ordering parish-wide relief. [Doc 17-4 at 20-22].[1] Following additional litigation, this Court issued an additional injunction on August 4, 1969, specifying bi-annual reporting requirements. [Doc. 1-13 at 4.]

On September 9, 1969, in light of attempts in the state courts (the *Swope*[2] case) to interfere with enforcement of this Court's desegregation orders, the United States filed a "Motion for Appointment and Designation of the United States as Amicus Curiae." [Doc. 1-15.] The United States sought appointment on multiple grounds: (1) "to maintain and to preserve the due

---

[1] "For written reasons this day assigned, it being stipulated that plaintiffs are members of the Negro race and residents of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class, it is now ORDERED, ADJUDGED AND DECREED that…" [Doc. 17-4 at 20–22.] The Court also referred to the Board's stipulation in its written reasons accompanying the Decree: "On October 5, 1965, defendants stipulated that plaintiffs are residents of St. Mary Parish and that they are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs and that plaintiffs are, therefore, entitled to bring this suit as a class action." [Doc 17-4 at 24.]

[2] *Swope v. St. Mary Par. Sch. Bd.*, 256 La. 1110, 241 So.2d 238 (1970). The *Swope* plaintiffs sought to preserve the existing "freedom of choice" system and prevent the Board's implementation of the federal court's August 1969 Order.

2

administration of justice and the integrity of the judicial process;" (2) "to prevent interference with the carrying out of this Court's orders;" and (3) "to aid this Court to do all that reasonably and lawfully can be done to protect and effectuate its order of August 4, 1969." *Id.* at 1, 3–4.

That same day, this Court entered an "Order Appointing and Designating the United States as Amicus Curiae." [Doc. 1-15 at 5–6.] Styled as *amicus curiae*, this Court vested in the United States full litigating rights, including the rights "to submit pleadings, evidence, arguments and briefs, to move for injunctive and other necessary and proper relief, and to initiate such further proceedings that may be necessary and appropriate." *Id.* at 6. The Court further ordered that "the Attorney General of the United States, and such attorneys in the United States Department of Justice as he may designate, be and is hereby appointed to appear and participate in behalf of the United States in this action." *Id.*

The Court simultaneously approved the United States' Motion for Removal and Consolidation of the *Swope* case with the instant *Boudreaux* case. [Doc. 1-16 at 12–13.] On December 18, 1969, the United States filed a Motion to Dismiss the former state court proceedings. [Doc. 1-25.] On February 27, 1970, this Court dismissed the *Swope* portion of the consolidated proceedings with full prejudice. [Doc. 1-30.][3]

Over the next decade, following implementation of the updated 1970 desegregation plan ordered by this Court [Doc. 1-42], the class plaintiffs and the Board were able to successfully negotiate multiple joint and unopposed motions related to, *inter alia*, the assignment of students

---

[3] The *Swope* plaintiffs did not appeal the judgment of this Court, seeking instead a writ of mandamus from the Louisiana Court of Appeals, First Circuit, which denied the writ for lack of jurisdiction on February 11, 1970. *Swope*, 256 La. at 1117. In an order issued on June 29, 1970 (and confirmed on rehearing on November 9, 1970), the Supreme Court of Louisiana affirmed the decision of the Louisiana Court of Appeals. Notably, the Louisiana Supreme Court recognized the class action nature of the *Boudreaux* case and the participation of the United States. *Id.* at 1113, 1116.

and the construction of new facilities in the school district.[4] The District, without the permission of this Court, ceased reporting after its December 1983 bi-annual report. [Doc. 1-79.]

In 2012, the Court found that "additional facts are necessary to address the unitary status of the [St. Mary Parish] school system." [Doc. 4.] The Court subsequently continued without date a telephone status conference scheduled for June 18, 2012, and reassigned the case. [Doc. 5.] The Court again reassigned the case on June 3, 2016. [Doc. 6.][5]

In early 2016, the United States received multiple letters from concerned residents of St. Mary Parish regarding the Board's intent to close two additional elementary schools in the parish, including one of the parish's few remaining historically African-American schools.[6] Consistent with the authority granted to it by this Court to "initiate such further proceedings that may be necessary and appropriate" [Doc. 1-15 at 6], the United States opened a compliance review of the District in April 2016. The District, over several months, provided responses to the United States' request for information. The United States also initiated contact with Plaintiffs' counsel.

On March 1, 2018, the United States issued a supplemental request for information and requested the opportunity to visit the school district. Plaintiffs participated in these exchanges and in the organization of the site visit. In advance of the site visit, the United States and Plaintiffs' counsel entered appearances in the record without objection. The United States and Plaintiffs conducted a joint site visit to the parish from May 21-24, 2018, interviewing numerous

---

[4] *See*, *e.g.*, February 6, 1973 Joint Motion and Order [Doc. 1-57]; July 2, 1974 Motion and Order [Doc. 1-63]; November 18, 1981 Joint Motion and Order for Further Relief [Doc. 1-74].

[5] On both occasions, the Court reached out directly to the United States, whether to help initiate the status conference and/or provide current contact information for the parties in the case.

[6] In early 2017, the Office for Civil Rights at the U.S. Department of Education forwarded to the Department of Justice an additional citizen complaint alleging resource and other disparities between schools in St. Mary Parish.

4

district and school-based officials, visiting more than a dozen schools, and talking with parents and other community members.

On August 8, 2018, the United States and Plaintiffs issued separate supplemental requests for information, to which the Board responded in stages throughout the fall 2018 semester. The United States and Plaintiffs were prepared to share feedback and discuss next steps on a call with the Board scheduled for March 28, 2019; however, the Board chose not to complete this exchange of information or continue our collaboration, instead filing the instant Motion. [Doc. 17.]

## ARGUMENT

**I.     The United States, by Order of this Court, Has Broad Authority to Litigate this Case.**

This Court granted the United States, under the name Amicus Curiae, full power to represent the public interest and seek affirmative relief. As the Supreme Court of the United States has recognized, "a federal court can always call on law officers of the United States to serve as amici" to "represent the public interest in the administration of justice." *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 581 (1946). In the desegregation cases that followed in the wake of *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954), federal courts repeatedly called on the United States to act, as a litigant, to protect and enforce their desegregation orders. *See, e.g.*, *Faubus v. United States*, 254 F.2d 797, 805 (8th Cir. 1958); *United States v. Barnett*, 330 F.2d 369, 388–89 (5th Cir. 1963); and *Bush v. Orleans Par. Sch. Bd.*, 191 F. Supp. 871, 875–76 (E.D. La. 1961). This Court was undoubtedly informed of this line of cases when it appointed the United States as a litigating amicus on September 9, 1969.

Beginning in *Faubus*, courts used the "amicus curiae" designation to allow the United States to participate in all aspects of desegregation cases. There, addressing the desegregation of

5

Central High School in Little Rock, Arkansas, the Eighth Circuit affirmed a district court order authorizing the United States to "submit pleadings, evidence, arguments and briefs, and to file a petition for injunctive relief to prevent obstructions to the carrying out of the Court's orders." *Faubus*, 254 F.2d at 804. The court reasoned that "the status of the Attorney General and the United States Attorney was something more than that of mere amici curiae in private litigation. They were acting under the authority and direction of the court to take such action as was necessary to prevent its orders and judgements from being frustrated and to represent the public interest in the due administration of justice." *Id.* at 805.

Similarly, in affirming the scope of the United States' appointment as amicus in connection with the desegregation of the University of Mississippi Law School, the Fifth Circuit stated:

> This Court's order of September 18, 1962 . . . constituted the United States as something more than a mere amicus curiae. Pursuant to that order, the United States was '* * * acting under the authority and direction of the court to take such action as was necessary to prevent its orders and judgements from being frustrated and to represent the public interest in the due administration of justice'.

*Barnett*, 330 F. 2d at 388–89, quoting *Faubus*, 254 F.2d at 805.

In *Bush*, the court held that the appointment of the United States as amicus curiae in a desegregation case vested it with broad powers, including the power to initiate proceedings, noting that there was no "merit to the argument that, because the United States is styled an 'amicus curiae', it cannot ask for affirmative relief." 191 F. Supp. at 877. The court noted that "in these proceedings the United States is no ordinary amicus. Whether 'amicus curiae' is the proper title is a quibble over labels." *Id.* The court found it more important to "state unequivocally the right of the U.S. to appear . . . because it involves a principle vital to the effective administration of justice." *Id.* at 876.

6

The broad language of the Court's appointment of the United States in this case mirrors the words used to appoint the United States in *Faubus*, *Barnett*, and *Bush*. The United States was appointed "to submit pleadings, evidence, arguments and briefs, to move for injunctive and other necessary and proper relief, and to initiate such further proceedings that may be necessary and appropriate." [Doc. 1-15 at 5–6.] That appointment gave the United States full power to litigate this matter.

The Board does not debate the scope of the United States' powers under the "amicus" designation. Instead, the Board claims that the United States' appointment itself was limited "purely for the purposes of stopping a state court from interfering with this Court's remedial orders, which it successfully achieved." [Doc. 17-1 at 22.] However, the text of the order does not support the limitation that the Board seeks. This Court placed neither a temporal nor a subject matter limitation on the scope of the United States' appointment. Moreover, such a limitation would be inappropriate in this desegregation litigation, where the United States acts in the public interest to assist the Court in the enforcement of its orders.

The Board's reliance on cases outside of desegregation litigation is simply inapposite. For example, the Board asserts that as amicus curiae "the United States cannot direct the course of litigation or individually request relief no other party requested," relying on *Bing v. Roadway Express*, 485 F. 2d 441, 452 (5th Cir. 1973), *Day v. Persels & Associates*, 729 F.3d 1309 (11th Cir. 2013), and *Parm v. Shumate*, Civ. No. 3-01-2624, 2006 WL 1228846 (W.D. La. May 1, 2006). These cases have nothing to do with the appointment of the United States as "amicus" to protect the public interest. The *Bing* court, in an employment discrimination case, was dealing with an existing Government amicus' attempt to bring forward an issue that was not before the court and not raised on appeal. 485 F.2d at 452. Similarly, the Eleventh Circuit in *Day* did not

7

dispute the existence and right to participate of amicus curiae; it chose not to address amicus' argument because it was an issue that had not been raised in the district court. 729 F.3d at 1325. The court in *Parm*, from the beginning, limited private amicus' participation in the litigation to the filing of a brief in connection with two specific motions. In its decision on amicus' motion to file further pleadings, the court permitted the amicus to submit additional briefing on specific issues raised by the parties, but not to submit evidence or file objections. 2006 WL 1228846 at 1. By contrast, the desegregation cases cited above make clear that the United States, as amicus, is authorized to individually request relief that no other party has requested. *See Bush*, 191 F. Supp. at 877 ("Nor is there merit to the argument that, because the United States is styled an 'amicus curiae,' it cannot ask for affirmative relief"); *Barnett*, 254 F.2d at 804 (United States properly authorized to seek "relief to prevent obstructions to the carrying out of the court's orders"). The substantive issue in the instant case is whether the District has complied with the Court's orders, and the United States has acted fully within the scope of the authority granted to it by this Court in its review of the District.

Given the scope and value of the United States' role in desegregation cases, as recognized by this Court and the Fifth Circuit, the United States has the authority in this case to continue acting as an active, litigating amicus and to seek appropriate relief.

**II.    A Live Controversy Exists until the St. Mary Parish School Board Achieves Unitary Status.**

In school desegregation cases, the Court's supervision continues until the Court determines that the District has made an affirmative showing that it (1) fully and satisfactorily complied with the court's decrees for a reasonable period of time; (2) eliminated all vestiges of *de jure* segregation to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the court's decrees and those provisions of the law and the Constitution that were

8

the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491–92, 98 (1992); *Bd. of Educ. of Okla. City v. Dowell*, 498 U.S. 237, 248–50 (1991). In addition to the "*Green*[7] factors" (student assignment, faculty, staff, transportation, extracurricular activities, and facilities), courts may consider other indicia such as "the quality of education being offered to the white and black student populations," *Freeman*, 503 U.S. at 473, and discipline, s*ee*, *e.g.*, *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981). In the fifty-four years since the initial finding of a constitutional violation, the St. Mary Parish Schools have failed to make such a showing.[8]

Instead, the Board attempts to distract from its failure to demonstrate compliance and the achievement of unitary status by seeking to prevent the Court from recognizing a class of plaintiffs who are at the heart of this school desegregation case. In doing so, the District ignores the nature and procedural history of desegregation cases. Until the District makes an affirmative showing persuading this Court that it has achieved unitary status, there remains an ongoing case or controversy between the class represented by the named plaintiffs and the Board, even if the named plaintiffs are no longer the most appropriate class representatives.

### III.     This Court has the Discretionary Authority and Support in the Record to Maintain this Case as a Class Action.

#### A.  School Desegregation Cases, by their Very Nature, Warrant Class Relief.

"In a case of racial discrimination in any sector of our society, the nature of the wrong charged, i.e. a class wrong, dictates class relief." *Oburn v. Shapp*, 393 F. Supp. 561, 572 (E.D.

---

[7] *Green v. County Sch. Bd. of New Kent Cty.*, 391 U.S. 430 (1968).

[8] The Board acknowledges that with regard to unitary status it is also bound by the Fifth Circuit's 2014 decision in *Thomas ex rel. D.M.T. v. Sch. Bd. of St. Martin Par.*, 756 F.3d 380 (5th Cir. 2014). The procedural history weighing against dismissal here is even clearer than in St. Martin, as evidenced by the eight years of Board reporting and the 1981 Joint Motion and Order for Further Relief [Doc. 1-74], all of which were filed subsequent to this Court's April 9, 1975 Order [Doc. 1-67].

Pa. 1975); *see also Potts v. Flax*, 313 F.2d 284, 289, n.5 (5th Cir. 1963) (school segregation suits involve "discrimination against a *class* as a class") (emphasis in original); *Bailey v. Patterson*, 323 F.2d 201, 206–07 (5th Cir. 1963). School desegregation lawsuits were brought to do more than get an individual African-American student admitted to a formerly all-white school; they were "directed at the system-wide policy of racial segregation [and] sought obliteration of that policy of system-wide racial discrimination." *Potts*, 313 F.2d at 288–89.

As in *Potts*, "only one question of any real moment is presented, and that is the procedural one of whether this was shown to be a class action. It is perhaps ironic that it arises in a context in which on the substantive merits there cannot be the slightest doubt." *Id.* at 286. Like the school district in *Potts*, the Board does not try to persuade the Court that it has achieved unitary status. The District, in seeking resolution of this matter through procedural means rather than an affirmative showing of compliance, overlooks both the nature and long-term impact of school desegregation cases. Indeed, the *Bailey* court, in determining that appellants were entitled to recognition as a class, found it completely unnecessary to determine whether that case was properly brought under Rule 23(a) of the Federal Rules of Civil Procedure ("FRCP"). *Bailey*, 323 F.2d at 206 (holding that "the very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of appellants but also for all persons similarly situated").

### B. The Court, with the Board's Consent, Approved this Case as a Class Action 54 Years Ago and has Continuously Treated it as Such.

The Plaintiffs appropriately filed their complaint as a class action under then FRCP 23(a)(3), the Board stipulated to the existence of a class, and the Court recognized this stipulation and the class in its October 1965 Order. At the time of the Court's 1965 decree, these actions were more than sufficient to constitute an approved class action. Even if procedurally "it

10

was an error to treat the case as a class suit and enter such a decree, such error, if any, was harmless since the decree for all practical purposes would have been the same had it been confined to the [named plaintiffs]." *Oburn*, 393 F. Supp. at 572–73 (citing *Potts*, 313 F.2d at 289-90); *see also Bailey*, 323 F.2d at 207.

The Board contends that this case was never properly certified according to FRCP 23, and that even if certified as a class action, it was not treated as such. However, the Court approved this case as a class action, with the Board's consent, in 1965. The 1966 Amendments to Rule 23, which required certification of *pending* actions, did not require re-certification of existing classes.[9] The Board cites no support for its proposition that filings must be labeled as class action post-certification in order to maintain certification. Nor do FRCP 23 or the local rules of this Court require that in order to preserve a class all references to plaintiffs must be replaced with the word "class." The district also argues that the class recognized by the Court was too vague. And yet, no matter how broadly or narrowly the 1965 stipulation and Court decree are read, the decree would have been the same. *See Oburn*, 393 F. Supp. at 572–73. The Board's stipulation and the Court's decree served as recognition of a class, and the parties treated the case as such, implementing desegregation plans and joint agreements covering the entire

---

[9] The United States also observes that the District relies almost exclusively on cases whose initial complaints were filed *after* the 1966 Amendments to Rule 23, except for *Hereford v. Huntsville*, which was filed in 1963 but did not actually cite to Rule 23 in the filings. 5:63-CV-00109-MHH, 2014 WL 12781219 at 6 (N.D. Ala. May 20, 2014). The United States, as plaintiff-intervenor in the *Hereford* case, is fully aware of the unique circumstances surrounding that court's decision to dismiss plaintiffs. Moreover, the U.S. District Court for the Northern District of Alabama has since permitted substitution of plaintiffs in other longstanding school desegregation cases. *See, e.g.*, *Bennett v. Madison Cty. Bd. of Educ.*, Civ. Action 5:63-cv-00613-MHH (Order, Doc. 131, Oct. 27, 2015); *Stout v. Jefferson Cty. Bd. of Educ.*, Civ. Action 2:65-cv-00396-MHH (Order, Doc. 1024, May 4, 2015).

parish, not only those schools attended by individual Plaintiffs.[10] The procedural history of this case supports the existence of a class action.

### C. This Court, Consistent with the U.S. Supreme Court in *Spangler* and the Fifth Circuit in *Tasby* and *Graves*, Retains its Discretionary Powers with Respect to Class Certification and Mootness.

The decision to alter or amend a class certification decision is entirely at the court's discretion. 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.). The Supreme Court's decision in *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424 (1976), did not remove the district court's discretionary powers with regard to desegregation cases. The Fifth Circuit, consistent with *Spangler*, subsequently re-affirmed the district court's discretionary powers in school desegregation cases. *See, e.g.*, *Tasby*, 643 F.2d 1103; *Graves v. Walton Cty. Bd. of Educ.*, 686 F.2d 1135, 1139–40 (5th Cir. 1982) (holding that a case can be a class action despite the lack of a formal certification order). Under *Spangler* and *Tasby*, neither the graduation of named plaintiffs nor the failure of a court to certify the class action alone automatically render a case moot. Even if both have occurred, the Supreme Court and the Fifth Circuit have correctly recognized that other issues or circumstances may be considered and assessed. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Johnson v. General Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979); *Gore v. Turner*, 563 F.2d 159, 165–66 (5th Cir. 1977); *Bing*, 485 F.2d 441. The Fifth Circuit's decision in *Graves* did not contradict but rather continued this tradition. 686 F.2d 1135.

The Board rests its argument almost entirely on one sentence from *Tasby* that acknowledges the *Spangler* decision: "Of course, a school desegregation case can become moot if it is not certified as a class action, the named plaintiffs have graduated from school, and there

---

[10] *See, e.g.* February 6, 1973 Joint Motion and Order [Doc. 1-57]; July 2, 1974 Motion and Order [Doc. 1-63]; November 18, 1981 Joint Motion and Order for Further Relief [Doc. 1-74].

12

is no other factor which avoids mootness." 643 F.2d at 1106 (referencing *Spangler*, 427 U.S. at 429–30). The *Spangler* court, in the section referenced by *Tasby*, cited two non-desegregation cases: *Sosna v. Iowa*, 419 U.S. 393 (1975), and *Indianapolis Sch. Comm'rs v. Jacobs*, 420 U.S. 128 (1975). However, the Board's reliance on a narrow reading of *Tasby* incorporating *Spangler* and its reasoning is misplaced. The *Tasby* court allowed that a case "*can* become moot," not "*must*" or "*will*," and that there might be another "factor which avoids mootness," even when plaintiffs have graduated and there is no certified class. 643 F.2d at 1106. In *Sosna*, the Supreme Court recognized that a controversy may exist "between a named defendant and a member of the class represented by the named plaintiff, *even though* the claim of the named plaintiff has become moot" (emphasis added). 419 U.S. at 402. In *Jacobs*, and subsequently in *Spangler*, the Court did not fully articulate what constitutes appropriate certification.

  Moreover, neither *Spangler* nor *Tasby* addressed what factor(s), other than the intervention of the United States (*Spangler*), would suffice to avoid mootness given the lack of a certified class and live plaintiffs. The *Spangler* court omitted any discussion of whether or not the school board stipulated or denied the existence of a class action. Contrary to the District's assertion, neither the Supreme Court nor the Fifth Circuit limited the "other factor" to the existence of the United States as a party. In the case at hand, the Board speeds past several factors that this Court should address before contemplating any modification of the Court's 1965 decree: the Board's 1965 stipulation; recognition of the class action by both this Court and the Supreme Court of Louisiana; this Court's 2012 Order that additional facts are necessary to determine whether the District is unitary; Plaintiffs' pending Motion to Substitute [Doc. 26]; the Court's duty to ensure that the constitutional violation is remedied; and the interest and broad Court-approved participation of the United States.

13

The Fifth Circuit in *Graves* re-affirmed the overarching and firmly established governing principle that class members may keep an action alive even after the claims of the original named plaintiffs are rendered moot, 686 F.2d at 1138 ("[W]here a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot.") (citing *Rogers v. Paul*, 382 U.S. 198, 199 (1965); *Bing*, 485 F.2d 441). Substitutions of named plaintiffs are well-recognized in the school desegregation context, where "the mootness problem constantly arises because of protracted litigation and the eventual graduation of named plaintiffs." *Id. See also Cowan v. Bolivar Cty. Bd. of Educ.* (Cleveland Sch. Dist.), 186 F.Supp.3d 564 (N.D. Miss. 2016); *Thomas ex rel. D.M.T. v. Sch. Bd. of St. Martin Par.*, Civ. Action 65-cv-11314-EEF (Order, Doc. 79, Nov. 13, 2014).

The *Graves* court also recognized that even when named plaintiffs' claims are moot, there is a second question: whether there is a viable class action to which proposed party plaintiffs could be added. As noted above, the Supreme Court in *Spangler* chose not to do a deep analysis into the record regarding the certification question as the presence of the United States rendered it unnecessary. By contrast, the Fifth Circuit in *Graves* did find sufficient support in the record for a class action, even without a formal order. *Graves*, 686 F.2d at 1139–40. It therefore remains well and appropriately within this Court's discretion, after consulting the instant record, including the Board's stipulation, to recognize the existence of a class action and permit substitution of plaintiffs. When such a determination is coupled with the Court-approved litigating authority of the United States, this case is decidedly not moot.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court deny Defendant's Motion to Dismiss, permit the substitution of new Plaintiffs, and authorize the continued active participation of the United States.

Date: May 31, 2019.

Respectfully submitted,

| | |
|---|---|
| DAVID C. JOSEPH<br>United States Attorney<br>Western District of Louisiana | ERIC M. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division |
| */s/ Katherine Vincent*<br>KATHERINE W. VINCENT (#1817)<br>Assistant United States Attorney<br>800 Lafayette Street, Suite 2200<br>Lafayette, LA 70501-6832<br>(337) 262-6618<br>Katherine.Vincent@usdoj.gov | SHAHEENA A. SIMONS, Chief<br>FRANZ R. MARSHALL, Deputy Chief<br>Educational Opportunities Section<br><br>*/s/ Ceala E. Breen-Portnoy*<br>Ceala E. Breen-Portnoy (MD)<br>United States Department of Justice<br>Civil Rights Division<br>Educational Opportunities Section<br>950 Pennsylvania Avenue, NW, PHB 4300<br>Washington, D.C. 20530<br>Telephone: (202) 353-1120<br>Ceala.Breen-Portnoy@usdoj.gov |