# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

|  |  |
|---|---|
| CLAUDE BOUDREAUX, *et al.*,<br><br>               Plaintiffs,<br>     v.<br><br>SCHOOL BOARD OF ST. MARY PARISH, *et al.*,<br><br>               Defendants. | Civil Action No. 6:65-cv-11351<br><br>JUDGE DEE D. DRELL<br><br>MAGISTRATE JUDGE CAROL WHITEHURST |

## THE PLAINTIFF CLASS'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**

I.      Facts. ............................................................................................................... 2

II.     Under Controlling Precedent, This Case Is a Valid Class Action. ..................................... 3

III.    Because This Case Is A Class Action, and Because Plaintiffs Have Moved to Substitute New Class Representatives with Live Claims, the Case Is Not Moot. .............................. 8

      A.      The Class Here Was Clearly Defined, and the Case Has Always Been Treated as a Class Action. ..................................................................................... 8

      B.      The Plaintiff Class Has Properly Moved to Substitute Named Class Representatives. ................................................................................................ 13

IV.     Conclusion. ...................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984)..................................................................................18

*Bailey v. Cumberland Cas. & Sur. Co.*,
    180 F. App'x 862 (11th Cir. 2006) ..........................................................13

*Birmingham Steel Corp. v. Tennessee Valley Auth.*,
    353 F.3d 1331 (11th Cir. 2003) ............................................................8, 13

*Boatman, On Behalf of Boatman v. Sullivan*,
    No. 78 C 299, 1990 WL 146699 (N.D. Ill. Oct. 1, 1990) ........................14

*Bob Jones University v. United States*,
    461 U.S. 574 (1983)..................................................................................18

*Brown v. Bd. of Ed. of Topeka*,
    84 F.R.D. 383 (D. Kan. 1979)...................................................................15

*Brown v. Board of Education*,
    347 U.S. 483 (1954)..................................................................................18

*Cowan v. Bolivar Cty. Bd. of Educ.*,
    914 F. Supp. 2d 801 (N.D. Miss. 2012)....................................................14

*Doe v. Bush*,
    261 F.3d 1037 (11th Cir. 2001) .................................................................5

*Freeman v. Pitts*,
    503 U.S. 467 (1992)..................................................................................17

*Gochicoa v. Johnson*,
    238 F.3d 278 (5th Cir. 2000) ......................................................................7

*Graves v. Walton Cty. Bd. of Educ.*,
    686 F.2d 1135 (5th Cir. 1982) ........................................................ *passim*

*Green v. Sch. Bd. of New Kent Cty.*,
    391 U.S. 430 (1968)..................................................................................19

# TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

**Cases**

*Hereford v. Huntsville Board of Education*,
2014 WL 12781219 (N.D. Ala. May 20, 2014)..............................................15, 16

*Indianapolis School Commissioners v. Jacobs*,
420 U.S. 128 (1975)...........................................................................6, 15

*Lockett v. Bd. of Educ. of Muscogee Cty. Sch. Dist.*,
976 F.2d 648 (11th Cir. 1992) ...........................................................14

*Lynch v. Baxley*,
651 F.2d 387 (5th Cir. 1981) ............................................................8, 13

*McNeal v. Tate Cty. Sch. Dist.*,
No. 2:70-cv-00029-DMB, 2016 WL 3264111 (N.D. Miss. June 14, 2016)..........14

*Missouri v. Jenkins*,
515 U.S. 70 (1995)........................................................................17

*Navarro-Ayala v. Hernandez-Colon*,
951 F.2d 1325 (1st Cir. 1991)...........................................................6, 7

*Pasadena City Board of Education v. Spangler*,
427 U.S. 424 (1976).........................................................................4

*Tasby v. Estes*,
643 F.2d 1103 (5th Cir. 1981) ............................................................7

*Thomas v. St. Martin Parish Sch. Bd.*,
No. 65-11314 (W.D. La. Nov. 13, 2014), Doc. 79 ..................................14

*Thompson v. Dallas City Attorney's Office*,
913 F.3d 464 (2019).........................................................................6

*Whittenberg v. Sch. Dist. of Greenville Cty.*,
607 F. Supp. 289 (D.S.C. 1985).........................................................5

*Wyatt By & Through Rawlins v. Poundstone*,
169 F.R.D. 155 (M.D. Ala. 1995).......................................................14

## <u>TABLE OF AUTHORITIES</u>
(CONTINUED)

<u>Page(s)</u>

**<u>Other Authorities</u>**

Fed. R. Civ. P. 23(c)(1) ........................................................................................................3

R. Skiba et al., *Are Black Kids Worse? Myths and Facts About Racial Differences*
    *In Behavior: A Summary of the Literature*, Ind. Univ. (March 2014),
    <u>http://www.indiana.edu/~atlantic/wp-content/uploads/2014/03/African-</u>
    <u>American-Differential-Behavior_031214.pdf</u> ........................................................................18

This suit was filed as a class action; the St. Mary Parish School Board (the "Board," "District," or "Defendant") stipulated that it was a class action; the Court accepted that stipulation in entering its 1965 decree enjoining the District from continuing to operate segregated schools; and the Court and the litigants have treated it as a class action ever since. Yet, the District now contends that the lack of formal class certification under the 1966 amendments to Rule 23 means "there is no class action" in this case, and that the case is therefore moot because the original named plaintiffs no longer attend the District's schools. *See* Mem. of Law In Supp. of Mot. to Dismiss 8, Doc. 17-1 (hereinafter, "Def.'s Br."). That argument is not only contrary to the District's own stipulation that this case was properly brought as a class action, it is foreclosed by controlling precedent. The Fifth Circuit has held that "the lack of a formal order of class certification" does not undermine the class action status of a case when it has been "specifically described and treated as such by the parties and the trial court." *Graves v. Walton Cty. Bd. of Educ.*, 686 F.2d 1135, 1138 (5th Cir. 1982). The Court of Appeals specifically considered and rejected the argument now made by the District. *See id*.

The District's alternative arguments that *Graves* is inapplicable because the class was not defined in this case, or because the Plaintiffs had not previously substituted named plaintiff class representatives, fare no better. The class was clearly defined in the Complaint, and a review of the record establishes that the Court and litigants consistently treated this case as a class action based on that definition of the class. Controlling precedent is also clear that a class must be afforded the opportunity to substitute named plaintiffs in order to keep the action alive after claims of original named plaintiffs are rendered moot.

1

I.    **Facts.**

As the Board concedes, when Plaintiffs filed this suit on August 31, 1965, they did so as a class action. *See* Def.'s Br. 2, Doc. 17-1. Specifically, in the Complaint, Plaintiffs stated they were bringing this action "as a class pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of other Negro children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein." Compl., Doc. 17-4 at 3.

Plaintiffs then proceeded to explain why treating the case as a class action was proper under Rule 23:

> The members of the class on behalf of which plaintiffs sue are so numerous as to make it impracticable to bring them all individually before this Court, but there are common questions of law and fact involved, common grievances arising out of common wrongs and common relief is sought for each of the plaintiffs individually and for each member of the class. Plaintiffs fairly and adequately represent the interests of the class.

*Id.*

As the District also concedes, on October 5, 1965, the District stipulated that the case had been properly brought as a class action. *See* Def.'s Br. 2, Doc. 17-1. The District wrote the Court stating it "will stipulate, or admit, that the plaintiffs . . . are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs, and that plaintiffs are, therefore, under the law entitled to bring this suit as a class action." Stipulation, Doc. 17-4 at 19.

On October 11, 1965, this Court entered a decree, along with a separate statement of written reasons, recognizing that the District's operation of a segregated school system was "discriminatory per se" and, among other things, enjoining the District from continuing its unconstitutional racial segregation. Oct. 11, 1965 Decree, Doc. 17-4 at 20; Written Reasons, *id.* at

2

25. In so doing, the Court accepted the District's stipulation and recognized that the case was properly filed as a class action.

As the Court explained in its written reasons, the District had "stipulated that plaintiffs are . . . members of a class so numerous that it would be impractical to bring them all into court as plaintiffs and that plaintiffs, are, therefore, entitled to bring this suit as a class action." Written Reasons, Doc. 17-4 at 24. And, in the Decree, the Court recognized that it had been stipulated that the lawsuit was "a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class." Oct. 11, 1965 Decree, *id.* at 20; *see also* Def.'s Br. 3, Doc. 17-1.

Finally, contrary to the District's suggestion that the class was not clearly defined, *see id.*, the Plaintiffs expressly defined the class as all Black "children and their parents in St. Mary Parish, similarly situated [to the original named plaintiffs], all of whom are affected by the policy, practice, custom and usage complained of herein as more fully appears." Compl., Doc. 17-4 at 3; *see also id.* at 4 ("The minor plaintiffs allege that they, and each of them, are either currently attending the public free schools of St. Mary Parish or are in all material respects eligible to register, enroll, enter, attend classes and receive instruction in the public free schools of St. Mary Parish.").

## II.    Under Controlling Precedent, This Case Is a Valid Class Action.

The year after the Court entered its 1965 decree recognizing the class action nature of the case and ordering the Board to desegregate, Rule 23 was amended to include a requirement for certification in class action cases. *See* Fed. R. Civ. P. 23(c)(1). The District, however, did not raise any argument in the ensuing years that the class action status of this case—which it had previously stipulated to and which this Court had already adopted—was now invalid because class certification was necessary under the 1966 amendments to Rule 23.

Now, for the first time, over 50 years after the 1966 amendments, the District claims that "there is no class action because this case was never certified as a class action[.]" Def.'s Br. 8, Doc. 17-1. But the Fifth Circuit has already rejected that argument. *See Graves*, 686 F.2d at 1138–40.

*Graves* was a desegregation case filed in 1968 in Walton County, Georgia. Although the district court "hearing the case at that time treated the case as a class action," nothing in the record indicated that it was certified as such. *Id.* at 1136. Over a decade later, a group of predominately white parents intervened and argued that the case was moot because the class was never certified, and because it was undisputed that the claims of the original named plaintiffs were moot. *See id.* at 1136–37. In support of that argument, the intervenors relied on several decisions, including *Pasadena City Board of Education v. Spangler*, 427 U.S. 424 (1976), which, in intervenors' view, stood for the proposition that "a court must dismiss an alleged class action where the individual claim of the purported class representative has become moot, in the absence of a proper certification of the class." *Graves*, 686 F.2d at 1138.

The Fifth Circuit rejected the intervenors' argument, refusing to treat the lack of formal class certification as dispositive. The Court explained: "'To state at this late date that this was not a class action, "would be to ignore the substance of the proceeding below[.]"'" *Id.* at 1140 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (5th Cir. 1976), and *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir. 1973)). The record before the Court "evinces the class action status of this case; despite the lack of a formal order of class certification, this case was in fact a class action and was specifically described and treated as such by the parties and the trial court." *Id.* The lack of formal certification therefore did not cause the case to lose its status as a class action, and the district court properly permitted the substitution of additional named plaintiffs after

the claims of the original named plaintiffs had become moot. *See id.*; *accord Doe v. Bush*, 261 F.3d 1037, 1051 (11th Cir. 2001) (explaining that the plaintiff class "should not be penalized because the district court [and the parties] either forgot to address the certification question sooner, or determined that it was not necessary to do so.").

*Graves* is directly on point. It specifically rejected the argument made by the Board now, i.e., that because a class action was not certified, the case cannot be treated as a class action. Here, as in *Graves*, the case was "specifically described and treated as [a class action] by the parties and the trial court," which means that the lack of certification does not change the class action nature of the case. 686 F.2d at 1140. Indeed, this principle applies even more forcefully here than in *Graves* itself. In *Graves*, the class action was not certified even though the case was brought after the 1966 amendments to Rule 23. Here, the case was already stipulated to be a class action and treated as such by this Court in its Decree ordering the Board to desegregate it schools, which predated the 1966 amendments. *See Whittenberg v. Sch. Dist. of Greenville Cty.*, 607 F. Supp. 289, 304 (D.S.C. 1985) (finding that the fact that the case "proceeded for approximately three years under the earlier version of Rule 23, which did not require certification," where the court and the parties treated the case as a class action, helped show that the case was, in fact, a class action, and therefore was not moot, even though the named plaintiffs were no longer in school and the class was never certified).

The District appears to recognize that its position is foreclosed by *Graves*. *See* Def.'s Br. 10, Doc. 17-1. Yet, the District contends that this Court should not follow *Graves* because, in the District's view, *Graves* is inconsistent with the Supreme Court's earlier decision in *Spangler*. But, as discussed, the Fifth Circuit in *Graves* considered *Spangler* and rejected the argument that the Board now makes. Specifically, the Fifth Circuit rejected the argument that *Spangler*—along with

other cases applying *Indianapolis School Commissioners v. Jacobs*, 420 U.S. 128 (1975)—makes the lack of class certification dispositive. Indeed, after citing *Spangler* and other cases applying *Jacobs*, the Fifth Circuit stated: "We do not find appellants' reliance upon the Jacobs line of cases persuasive." 686 F.2d at 1138.

The District may disagree with *Graves*'s interpretation of *Spangler*, but *Graves* is, of course, controlling here. As the Fifth Circuit recently explained in *Thompson v. Dallas City Attorney's Office*, 913 F.3d 464 (2019), "a panel's interpretation of a Supreme Court decision is binding on a subsequent panel even if the later panel disagrees with the earlier panel's interpretation." *Id*. at 468 n.17 (citing *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014)). In *Thompson*, a Fifth Circuit panel applied a U.S. Supreme Court decision rather than a prior Fifth Circuit decision only because the prior Fifth Circuit decision "made no claim, nor plausibly could have, that it was interpreting" the Supreme Court case. *Id*. That is not the case here. *Graves* considered and rejected an argument that *Spangler* (and the other *Jacobs* line of cases) prohibits treating a case as a class action when it was not certified as such. *See Graves*, 682 F.2d at 1138. This Court is bound by that decision of the Fifth Circuit.

Although *Graves* is controlling regardless, Plaintiffs also note the District's reliance on *Spangler* is unpersuasive on its own terms. As the First Circuit has explained, *Spangler* did not involve a written stipulation that the matter should proceed as a class. *See Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1335–36 (1st Cir. 1991) (recognizing that the case at bar was properly treated as a class action notwithstanding the lack of an express certification). Such a written stipulation serves the same purpose as class certification, i.e., to "'give clear definition to the action.'" *Id*. (quoting Rule 23(c)(1) advisory committee's notes to the 1966 amendment). When, as here, there is such a stipulation that the Court approves, *Spangler* is distinguishable, and

an "action may proceed as a class action." *Id.* at 1336. Notably, in support of this conclusion, the First Circuit cited *Graves*, and explained: "Since *Spangler* was decided, the Fifth Circuit . . . has continued to hold that a class action may proceed despite the district court's failure to certify a class where the 'defendants knew of the class nature of the action and acquiesced in it.'" *Id.* at n.12 (quoting *Graves*, 686 F.2d at 1139) (alterations omitted).

Nor can the District evade *Graves* by citing the Fifth Circuit's prior decision in *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981). *Tasby* cites *Spangler* in support of the proposition that "a school desegregation case *can become moot* if it is not certified as a class action, the named plaintiffs have graduated from school, and *there is no other factor which avoids mootness*." *Id.* at 1106 (citing *Spangler*, 427 U.S. at 429–30) (emphases added). That statement in *Tasby* is dicta because the Court in *Tasby* concluded the case was not moot without any analysis of the class certification question, *see id.*, which means it was not binding on subsequent Fifth Circuit panels. *See, e.g.*, *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) (defining dicta and explaining that "[o]f course, one panel's *dictum* cannot bind future panels.").

In any event, *Graves*'s holding is fully consistent with this *Tasby* dicta. Although a case "can become moot" if it is "not certified as a class action . . . and there is no other factor which avoids mootness," *Tasby*, 643 F.2d at 1106, *Graves* identifies another "factor which avoids mootness," *i.e.*, when a case is "specifically described and treated as [a class action] by the parties and the trial court" such that it maintains its character as a class action notwithstanding the lack of certification, and thereby permits the substitution of named plaintiffs. *Graves*, 686 F.2d at 1140. *Graves*'s holding is binding here and forecloses the District's assertion that the lack of formal certification means this case is not a class action.

III.    **Because This Case Is A Class Action, and Because Plaintiffs Have Moved to Substitute New Class Representatives with Live Claims, the Case Is Not Moot.**

Under *Graves*, a desegregation case such as this one must be treated as a class action even absent formal certification so long as the case "was specifically described and treated as such by the parties and the trial court." 686 F.2d at 1140. As discussed, that standard is clearly satisfied here. Plaintiffs specifically described the case as a class action and defined the class, the District stipulated the case was properly brought as a class action, and the Court accepted that stipulation. And controlling precedent is equally clear that, when a case is a class action, the plaintiff class must have an opportunity to substitute new class representatives with live claims when the claims of the named plaintiffs have become moot. *Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. 1981); *see Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1336, 1339 (11th Cir. 2003) (applying *Lynch* and concluding that class must be given the chance to substitute new plaintiff representatives). Plaintiffs have already filed such a substitution motion here, *see* Doc. 26, which means this case is not moot. The District's contrary arguments are factually and legally untenable.

A.    **The Class Here Was Clearly Defined, and the Case Has Always Been Treated as a Class Action.**

The District seeks to distinguish *Graves* by arguing that here, the class has not been defined, and that the case has not been treated as a class action since 1965. *See* Def.'s Br. 12–13, Doc. 17-1. Those arguments are belied by the record.

*First*, the Complaint specifically defined the class as encompassing Black students and parents who lived in St. Mary Parish and were affected by the District's unconstitutional de jure segregation. *See* Compl., Doc. 17-4 at 3 ("Plaintiffs bring this action as a class pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of other Negro children and their parents in St. Mary Parish, similarly situated, all of whom are affected by

the policy, practice, custom and usage complained of herein as more fully appears."). That is precisely how one of the two classes was defined in *Graves*. *See* 686 F.2d at 1139 (noting that plaintiffs sued on behalf of two classes, one of whom were "'Negro parents and pupils of the public schools of Walton County, Georgia who are similarly affected and injured by the action of the defendants in maintaining and operating a racially segregated school system[.]'").

The District suggests the Court instead treated the class as encompassing all Black residents of St. Mary Parish. *See* Def.'s Br. 12–13, Doc. 17-1. Plaintiffs do not concede that a class so defined would be improper. But that is not how the class was defined in this case, and the District's contrary argument is based on taking snippets of the Court's 1965 Decree out of context. The relevant language of the decree states:

> For  written reasons this day assigned, it being stipulated that plaintiffs are members of the Negro race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class, it is now . . . .

Oct. 11, 1965 Decree, Doc. 17-4 at 20 (emphases added). The order thus notes that the Plaintiffs are Black residents of the Parish, but it does not define the class as such. Instead, it notes, in two separate clauses that the District had stipulated that:  (a) plaintiffs are Black residents of St. Mary Parish, and (b) this case was properly brought as a class action affecting all members of the class to which plaintiffs belong and who were similarly situated to plaintiffs. *See id.* In so doing, the Court simply tracked the stipulation that the District itself provided, which noted *both* that the Plaintiffs were Black residents of St. Mary Parish *and* that they were "members of a class so numerous that it would be impractical to join them all into court as plaintiffs, and that plaintiffs are, therefore, under the law entitled to bring this suit as a class action." Stipulation, Doc. 17-4 at 19. That stipulation was a response to the class allegations in the Plaintiffs' Complaint which, as

9

noted, clearly defined the class as Black children and their parents in St. Mary Parish who were affected by the District's unconstitutional policy of segregating its schools. Compl., Doc. 17-4 at 3. In sum, the Complaint clearly defines the class, and that was the definition on which the District relied in stipulating that the case was properly brought as a class action, and, in turn, on which the Court relied on in accepting the District's stipulation.

*Second*, the parties and the Court have consistently treated this case as a class action. Just as in *Graves*, "the scope of the relief requested clearly indicate that the suit was intended to benefit the entire class," and the decree "'adopted by the court provide[d] relief not for the individual plaintiffs but for the entire plaintiff class of [black] parents and students.'" *Graves*, 686 F.2d at 1138–39 (quoting district court opinion) (alterations in *Graves*). In their complaint, the Plaintiffs wrote, "Plaintiffs and the members of the class which they represent are irreparably injured by the acts of defendants complained of herein[,]" then asked the Court to enjoin the Defendants "from continuing to operate a compulsory biracial school system in St. Mary Parish, Louisiana." Compl., Doc. 17-4 at 6–7. The Court issued systemwide relief not only to the named plaintiffs, but to all Black children, their parents, and educators. *See* Oct. 11, 1965 Decree, Doc. 17-4 at 20 (permanently enjoining the Defendants from "[c]ontinuing to operate a segregated or biracial public school system . . . ."). That is, even though there were only five Black schoolchildren from two families named as plaintiffs in this lawsuit, who presumably only attended one to five of the 28 St. Mary Parish schools then in existence[1] at any given time,[2] the Court issued an injunction

---

[1]    *See* Sept. 21, 1967 Report, Ex. 2 at 15.
[2]    Siblings often attend the same schools. *See, e.g.*, Def.'s Br. 7, Doc. 17-1 (noting that the Bourgeois children all graduated from Centerville High School within two years of each other).

10

that required *all* of the St. Mary Parish schools to admit *all* Black students, not just the Boudreaux and Bourgeois children.

The parties and Court then continued to treat the case as a class action. For example, on August 8, 1966, the Plaintiffs filed a motion for further relief asking that the case be expedited so that "full and effective relief . . . may be offered movants *and members of their class* . . . ." Mot. For Further Relief, Ex. 1 at 3 (emphasis added). Similarly, on November 4, 1968, Plaintiffs filed a brief "on behalf of the plaintiff Negro school children" in multiple cases, including this one. Br. for Pls., Ex. 3 at 3. Referring to these cases, Plaintiffs argued, "The right to desegregated educational opportunities established by *Brown* has never been realized by the *overwhelming majority of Negro children* in these parishes," a statement clearly not limited to the named plaintiffs. *Id*. at 4 (emphasis added). For its part, the United States recognized in a September 9, 1969 court filing, "This class action was commenced by Negro parents of St. Mary Parish on August 31, 1965 . . . ." Pet. for Removal & Consolidation, Doc. 1-16 at 1.

The Defendant also continued to treat the case as a class action after 1965. Even though the Boudreaux and Bourgeois children only attended – at most – five different schools at a time, the Defendant provided lengthy answers to interrogatories and prepared reports that pertained to all 28 or so schools for years and proposed desegregation plans that affected the entire school system. *See, e.g.*, July 6, 1967 Report, Ex. 4; Feb. 28, 1968 Report, Doc. 1-1; Sch. Bd.'s July 3, 1969 Desegregation Plan, Doc. 1-5; Sept. 9, 1969 Report, Doc. 1-18; May 22, 1970 Report, Doc. 1-34; Sch. Bd.'s Aug. 4, 1970 Proposed Integration Plan, Doc. 1-40; Nov. 30, 1971 Report, Doc 1-53; Nov. 28, 1972 Report, Doc. 1-56; Nov. 29, 1973 Report, Doc 1-59; Nov. 22, 1974 Report, Doc. 1-65; Nov. 24, 1975 Report, Doc. 1-68; Nov. 19, 1976 Report, Doc. 1-71; Apr. 19, 1977

11

Report, Doc. 1-72; June 16, 1978 Report, Doc. 1-73; Nov. 25, 1981 Report, Doc. 1-75; Nov. 22, 1982 Report, Doc. 1-77; Dec. 8, 1983 Report, Doc. 1-79.

And the Court continued to treat the case as a class action. For example, the Court issued an en banc order on June 5, 1969 in multiple school desegregation cases, including this one, stating, "[t]hese law suits are all class actions for black citizens[.]"[3] En Banc Order, Doc. 1-4 at 8. All of the relief granted has been class-wide relief applicable to the entire school system, including both the original 1965 decree and subsequent orders. *See, e.g.*, Oct. 11, 1965 Decree, Doc. 17-4 at 20–22; May 2, 1967 J. On Mots., Doc. 17-4 at 28–30; Feb. 2, 1968 Order, Ex. 5; June 5, 1969 En Banc Order, Doc. 1-4; Aug. 4, 1969 Decree, Doc. 1-13; Aug. 6, 1969 Mem. Op., Doc. 1-14; July 7, 1970 Order, Doc. 1-37; Aug. 7, 1970 Op. & Order, Doc. 1-42; Sept. 18, 1970 Order, Doc. 1-46; June 30, 1971 Order, Doc. 1-50; Aug. 2, 1971 Am. J., Doc. 1-51. The Court also did not treat this case as a moot once the named plaintiffs graduated in the 1970s. To the contrary, the Court continued to issue orders in this case years after the named plaintiff-students would have graduated. *See* Nov. 18, 1981 Order, Doc. 1-74; May 17, 2012 Order, Doc. 4.

In sum, just as in *Graves*, here the class was clearly defined, and the parties and Court consistently treated the case like a class action. *Graves* is therefore indistinguishable from this case.

---

[3]    Indeed, the District was mistaken when it represented to the Court in its motion to dismiss that, "none of the Court's orders since 1965 refer to the remedial measures being entered as to the 'class;' instead, they reference only the Plaintiffs." Def.'s Br. 3, Doc. 17-1; *id*. at 12, 18 (repeating this falsehood). Furthermore, the District's citation of the Court sometimes referring to the Plaintiff Class as "Plaintiffs" as proof that the Court did not treat this case as a class action is unpersuasive. *Id.* at 3 & n.9. Since the Plaintiff Class is comprised of more than one individual, it was accurate for the Court and the parties to refer to the Plaintiff Class as the plural "Plaintiffs."

**B.    The Plaintiff Class Has Properly Moved to Substitute Named Class Representatives.**

Because this case is a class action under *Graves*, the case cannot be dismissed on mootness grounds unless the Plaintiff Class first has an opportunity to substitute class representatives with live claims for the students who have now graduated from the District. *Lynch v. Baxley*, 651 F.2d 387 (5th Cir. 1981), is directly on point. In that case, the Fifth Circuit explained that a class acquires a legal status separate from that of the named plaintiff. *Id.* at 388 (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). Therefore, a class action should not be dismissed because the named plaintiffs' claims are individually moot, unless the court first provides an opportunity for new named plaintiffs to replace them. *Id.* Applying *Lynch*, the Eleventh Circuit later held in another case the "district court . . . erred by not giving counsel an opportunity to seek a new named plaintiff" before decertifying a class. *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1339 (11th Cir. 2003).

To be sure, these cases were decided in the context of classes that had been certified, and they do not apply to "putative" class actions that have not yet been established as class actions. *See Bailey v. Cumberland Cas. & Sur. Co.*, 180 F. App'x 862, 865 (11th Cir. 2006). But, as discussed, under *Graves*, when "the record evinces the class action status of this case," "[a]lthough no formal order of certification [is] entered by the district court, [the] case [is] in fact a class action." 686 F.2d at 1136. Therefore, "members of the class may be substituted as named plaintiffs in order to preserve the action after the claims of the original named plaintiffs have become moot." *Graves*, 686 F.2d at 1136. Such a procedure is "deeply implemented in desegregation cases, where the mootness problem constantly arises because of protracted litigation and the eventual graduation of named plaintiffs." *Id.* at 1138. In sum, unlike the factual scenario in *Bailey*, here, the class is not putative; rather, the case is a class action in fact, even though it has not been certified, and it

13

has been recognized as such by this Court for decades. Accordingly, the principles set forth in *Lynch* and *Birmingham Steel* are fully applicable to the case at hand.

Indeed, courts consistently have upheld the principle in *Graves* that "where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after claims of original named plaintiffs are rendered moot." *Graves*, 686 F.2d at 1138; *see, e.g.*, *McNeal v. Tate Cty. Sch. Dist.*, No. 2:70-cv-00029-DMB, 2016 WL 3264111, at *3–4 (N.D. Miss. June 14, 2016) (granting a motion to substitute plaintiffs in a school desegregation lawsuit that was never formally certified as a class action over the District's objection); *Lockett v. Bd. of Educ. of Muscogee Cty. Sch. Dist.*, 976 F.2d 648, 649 (11th Cir. 1992) (vacating dismissal of school desegregation case since the lower court erred when it dismissed the case as moot because the original class of plaintiffs were no longer students and remanding "for further proceedings because the district court and original parties treated this case from the outset as one that was, in fact, a class action, that is, a suit to benefit directly persons other than the named plaintiffs." (citing Graves, 686 F.2d at 1138)); *Cowan v. Bolivar Cty. Bd. of Educ.*, 914 F. Supp. 2d 801, 810–11 (N.D. Miss. 2012) (holding that newly substituted plaintiffs in a school desegregation case have standing); Order at 1, *Thomas v. St. Martin Parish Sch. Bd.*, No. 65-11314, (W.D. La. Nov. 13, 2014), Doc. 79 (granting motion to substitute new plaintiffs in a pre-1966 school desegregation case over the District's objection 49 years after the case was initially filed despite decades of dormancy); *Wyatt By & Through Rawlins v. Poundstone*, 169 F.R.D. 155, 160 (M.D. Ala. 1995) ("Where the court is confronted with named plaintiffs who no longer have live interests, the appropriate course is to substitute new named class members."); *Boatman, On Behalf of Boatman v. Sullivan*, No. 78 C 299, 1990 WL 146699, at *1 (N.D. Ill. Oct. 1, 1990) (allowing

14

for substitution of plaintiffs when "claims of the original named plaintiffs in [the] case . . ha[d] been satisfied and [were] therefore moot.").

Even the landmark school desegregation case, *Brown v. Board of Education*, was never certified as a class action (it, too, preceded the 1966 amendment of Rule 23) and the court nevertheless allowed for intervention of plaintiffs over the defendant's objection that the claims of the originally named plaintiffs were moot and even though the case had been dormant for 24 years. *Brown v. Bd. of Ed. of Topeka*, 84 F.R.D. 383, 392–96, 405 (D. Kan. 1979) (rejecting *Jacobs*, 420 U.S. 128, as unpersuasive, distinguishing *Jacobs* on the ground that it did not involve new plaintiffs seeking to keep the lawsuit alive, and noting, "This Court is not inclined to tell the Supreme Court that it erred in *Brown I* when it stated 'these are class actions.'" (citation omitted)).[4]

Rather than address the controlling law established by the Fifth Circuit in *Lynch*, and applied by the Eleventh Circuit in *Birmingham Steel*, the District relies on an unpublished district court decision in *Hereford v. Huntsville Board of Education*, 2014 WL 12781219 (N.D. Ala. May 20, 2014). But this Court is bound by Fifth Circuit precedent, not an out-of-circuit district court opinion. And, in any event, *Hereford* would not support the Board's argument that this case should be dismissed without providing Plaintiffs' counsel an opportunity to substitute named class representatives.

---

[4]     *See Brown v. Bd. of Ed. of Topeka*, 84 F.R.D. 383, 394 (D. Kan. 1979) ("[W]e believe it would be unfair and unrealistic to judge the handling of the class action portion of this case in 1951 by the standards which did not come into existence until nearly fifteen years later." Also noting, "Lack of certification is . . . not surprising" given that the case was filed before 1966 and acknowledging that "the exact definition of the class in this case was never concretely established. However, under the rudimentary class action law existing at the time this action was filed, no such requirement clearly existed." (citation omitted)).

In *Hereford*, the court expressly recognized that desegregation cases may proceed as class actions notwithstanding a lack of a formal certification order "if the court and the parties conduct the litigation as a class action." *Id*. at *5 (citing multiple cases). Nonetheless, the court erroneously relied on the presence of the United States as a separate plaintiff to conclude that there was no need to permit the private plaintiffs to substitute new named class representatives. The court stated:

> although this case bears many of the characteristics of a class action, because of the presence of the United States as the plaintiff intervenor, this litigation is distinguishable from school desegregation cases in which courts, in the absence of a formal class certification order, eventually have declared that the litigation constitutes a class action. The claims of the original private plaintiffs are moot. The Court does not need to order the United States or counsel for the NAACP to identify and add new private plaintiffs because the United States, as plaintiff intervenor, has fully and adequately represented the interests of black students in the city of Huntsville's public school system.

*Id.* at *7.

Plaintiffs respectfully submit that *Hereford*'s analysis is incorrect, as the United States does not represent the specific rights and interests of Black schoolchildren subject to unconstitutional discrimination by a school district. But, in any event, *Hereford* is clearly distinguishable from this case. Here, the District's argument is that the United States is *not* a party, such that there would be no remaining plaintiff if the claims of the Plaintiff Class were dismissed as moot.

The district court in *Hereford* also discussed whether an attorney involved in that case had acted as class counsel and concluded that he had not. The court explained that, even though that case was active, the attorney "ha[d] served more as a consultant than as counsel," and had been acting "without local counsel," and had "little contact, if any, with the families of black public school students in the City of Huntsville." *Id*. Again, *Hereford* is distinguishable in all of these respects. Here, counsel for the Plaintiff Class include local counsel, are in contact with families of Black public school students (including some who have moved to be substituted as named

plaintiffs in the case), have performed on-site investigations of the conditions of the schools, and are actively prosecuting the case.

* * *

For the foregoing reasons, the District's mootness arguments are untenable. Although the law is clear that the Plaintiff's claims are not moot, it is worth emphasizing the consequences of the District's motion. Specifically, the District seeks dismissal of this case even though the District has failed to even attempt to demonstrate that it has met its continuing burden to remedy the vestiges of de jure segregation.

Plaintiffs' Counsel's analysis of publicly available information and the data produced by the District in response to Plaintiffs' request for information show that the District clearly could not meet its burden to prove that it has fully and satisfactorily complied with the Court's decrees for "a reasonable period of time," "the vestiges of [de jure segregation] have been eliminated to the extent practicable," and that the district has demonstrated a "good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance." *Missouri v. Jenkins*, 515 U.S. 70, 82, 88–89, 101 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491, 498 (1992).

The data revealed, among other things, that the District operates several racially identifiable schools, including a formerly de jure white high school whose student and faculty populations are currently disproportionately white. The racially identifiably white high school offers Advanced Placement courses, while none of the racially identifiably Black high schools do. White students are three times more likely than Black students to be enrolled in the gifted and talented program. Although Black students do not misbehave more than white students, District employees have subjected Black students to a disproportionate share of the exclusionary discipline,

17

suspending them, sending them to detention, and transferring them to alternative schools at far higher rates than their white classmates, thereby causing Black students to lose valuable instructional time. *See* R. Skiba et al., *Are Black Kids Worse? Myths and Facts About Racial Differences In Behavior: A Summary of the Literature*, Ind. Univ. (March 2014), http://www.indiana.edu/~atlantic/wp-content/uploads/2014/03/African-American-Differential-Behavior_031214.pdf. In addition, inter-district and intra-district transfer data show a pattern of transfers that serve to further exacerbate racial segregation in between-school student assignments.

Dismissal of the lawsuit in its entirety would inflict grave harm on the Black children and the Black community of St. Mary Parish. Indeed, "[t]he injury [the Plaintiff Class seeks to rectify]—their children's diminished ability to receive an education in a racially integrated school—is, beyond any doubt, not only judicially cognizable but, as shown by cases from *Brown v. Board of Education*, 347 U.S. 483 (1954), to *Bob Jones University v. United States*, 461 U.S. 574 (1983), one of the most serious injuries recognized in our legal system." *Allen v. Wright*, 468 U.S. 737, 756 (1984)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

## IV.    Conclusion.

Rather than work in good faith to eliminate its longstanding racial segregation, the Board has elected to file this motion in an attempt to avoid curing its longstanding noncompliance with the U.S. Constitution and federal civil rights laws. "'[S]uch a class action as this dealing with continuing constitutional violations does not become moot because of years of delay (much of it attributable to [Defendant]) which occasioned the graduation of the named, original student plaintiffs from the school system before final decision.'" *Graves*, 686 F.2d at 1138 (quoting *Kelley v. Metropolitan Cty. Bd. of Educ. of Nashville*, 463 F.2d 732, 743 (6th Cir. 1972)). The Court

should not countenance the Board's thinly-veiled attempt to evade its "affirmative" and "continuing duty to take whatever action may be necessary to create a 'unitary, nonracial system.'" *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 440 (1968) (citation omitted). The Plaintiff Class respectfully requests that this Court deny the Defendant's motion.


Respectfully submitted on May 31, 2019,


*/s/ Michaele N. Turnage Young*
Michaele N. Turnage Young
 NAACP Legal Defense &
    Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
mturnageyoung@naacpldf.org


Samuel Spital
Earl Kirkland
NAACP Legal Defense &
    Educational Fund, Inc.
40 Rector Street, 5th Fl.
New York, NY 10027
(212) 965-2200
(212) 226-7592 Fax
ekirkland@naacpldf.org
sspital@naacpldf.org

*/s/ Gideon T. Carter, III*
Gideon T. Carter, III
 Bar Roll Number 14136
Post Office Box 80264
Baton Rouge, LA 70898-0264
(225) 214-1546
(225) 341-8874 Fax
gideontcarter3d@gmail.com


*Counsel for Private Plaintiffs*