# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **CLAUDE BOUDREAUX, ET AL.** | **CASE NO. 6:65-CV-11351** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **SCHOOL BOARD OF ST MARY PARISH, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

## <u>MEMORANDUM RULING</u>

Before the Court in this longstanding school desegregation case is a Motion to Dismiss as Moot for Lack of Subject Matter Jurisdiction, filed by Defendant St. Mary Parish School Board ("Board") [Doc. No. 17], and a Motion to Substitute Named Plaintiffs, filed by counsel for "Private Plaintiffs." [Doc. No. 26]. For the reasons that follow, the Motion to Dismiss is DENIED, and the Motion to Substitute Named Plaintiffs is GRANTED.[1]

## I.
### BACKGROUND

On August 31, 1965, five African-American students attending public schools in St. Mary Parish filed suit for injunctive relief against the School Board of St. Mary Parish ("the Board") and B. Edward Boudreaux, Superintendent of the public schools of St. Mary Parish (collectively,

---

[1] In the prescient words of Judge Higginbotham written more than thirty-five years ago, and still echoing today:

> We are learning that much of our school litigation has proceeded with ill-defined and largely ignored classes of litigants. Indeed, in some cases we learn after as long as ten years that no class of plaintiffs was ever certified and the originally proffered class representatives, and sometimes their counsel, have long since departed. Attempting to terminate such cases highlights their estrangement from classic party-oriented disputes.

*Williams v. City of New Orleans*, 729 F.2d 1554, 1569 n.4 (5th Cir.1984) (Higginbotham, J., concurring).

"Defendants"), alleging Defendants were maintaining racially segregated schools in violation of the Fourteenth Amendment to the United States Constitution. [Doc. No. 17-4 at 2, 4]. The suit was brought as a class action:

> Plaintiffs bring this action as a class suit pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of other Negro[2] children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein as more fully appears. The members of the class on behalf of which plaintiffs sue are so numerous as to make it impracticable to bring them all individually before this Court, but there are common questions of law and fact involved, common grievances arising out of common wrongs and common relief is sought for each of the plaintiffs individually and for each member of the class. Plaintiffs fairly and adequately represent the interests of the class.

*Id.* at 3. At the time the suit was filed, a prior version of Rule 23 governing class actions (the 1938 rule) was in effect. Unlike the current version of Rule 23, the former rule did not require that courts issue an order certifying an action as a class action. *Compare* former Rule 23, 39 F.R.D. 69, 94-95, *with* Fed. R. Civ. P. 23(c) (West 2019).

On September 22, 1965, Defendants answered suit and admitted that "prior to the filing of this suit bi-racial schools did exist in St. Mary Parish and . . . have existed as such for many years." *Id.* at 11. Defendants further stated they had passed a resolution on September 16, 1965, which they asserted "effectively removes defendant, School Board, from the category of operating a discriminatory bi-racial school system."[3] *Id.* Defendants' prayer for relief asked the Court to approve the resolution "as providing a proper mode of desegregation of the public schools of St.

---

[2] The Court uses the term "Negro" only where it reflects the usage in the historical document cited.

[3] The resolution, passed to "comply with anticipated orders of the United States District Court," set up a system allowing any parent to "request for transfer of one or more of his children to a specific school or schools, stating reason or reasons for this request," subject to approval by the Superintendent. [Doc. No. 17-4 at 15-17].

Mary Parish" and to summarily dismiss the Complaint. *Id.* at 11-12. Alternatively, Defendants asked "that this Court assume jurisdiction to supervise the development and implementation of an orderly plan of desegregation of the public schools of St. Mary Parish in such a manner as to cause an orderly transition from a bi-racial to a unitary, non-racial system." *Id.* at 12. Defendants raised no objection to the propriety of the suit proceeding as a class action; rather, the foregoing demonstrates Defendants implicitly agreed a class action was the appropriate procedural vehicle.

Two weeks after its Answer, the Board sent a letter to the Court stating they would "stipulate, or admit, that the plaintiffs are residents of St. Mary Parish, Louisiana, and are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs, and that plaintiffs are, therefore, under the law entitled to bring this suit as a class action." *Id.* at 19. On October 11, 1965, the Court granted Plaintiffs' Motion for Judgment on the Pleadings and issued a Decree stating in pertinent part as follows:

> For written reasons this day assigned, it being stipulated that plaintiffs are members of the Negro race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class, it is now:

> I.      ORDERED, ADJUDGED AND DECREED that the defendants, St. Mary Parish School Board and B. Edward Boudreaux, Superintendent, . . . be and they are hereby permanently restrained and enjoined from:

> > (a)      Continuing to operate a segregated or biracial public school system in said parish . . ., and

> > (b)      from assigning . . . pupils to said public schools solely because of the race of any or all of such pupils, and

> > (c)      from continuing to maintain dual attendance zones or districts in furtherance of a segregated or biracial public school system.

II. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the proposed plan of desegregation of the St. Mary Parish Public School System, adopted and filed in this cause by defendants on September 16, 1965, retroactive to the beginning of the fall term 1965-66, applying to grades one through twelve . . ., be and the same is hereby approved and made the order of this Court . . . .

. . . .

IV. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs' request for desegregation of teaching personnel and other administrative staff in said school system, is deferred and action thereon at this time is denied, pending the progress of the pupil desegregation of said system; all subject to the future orders of the Court.

V. Jurisdiction is retained in this case for such further proceedings as may become necessary and proper.

*Id.* at 20-22, 24.

The following year, the Fifth Circuit issued an opinion impliedly overruling the Decree issued by this Court. *United States v. Jefferson Cty. Bd. of Educ.*, 372 F.2d 836 (5th Cir.1966), *on reh'g*, 380 F.2d 385 (5th Cir.1967); *see also* Doc. 17-4 at 29. On May 2, 1967, in conformity with the Fifth Circuit opinion in *Jefferson County*, the Court issued a superseding Decree. [Doc. 17-4 at 31-46]. The Decree was drafted by the Fifth Circuit and ordered to be entered by the district courts on remand in the consolidated cases in *Jefferson Cty.*[4] This second Decree imposed "additional detailed duties" on the Defendants, including the desegregation of teaching personnel and the submission of bi-annual reports. [Doc. 17-4 at 30, 31-46]. Two years later, the Fifth Circuit found the "freedom of choice" desegregation plans ordered in *Jefferson* and in effect in the Western District of Louisiana, including the plan in effect in St. Mary Parish, were ineffective and remanded "in order that a new plan may be put into effect in each school district." *Hall v. St.*

---

[4] *See Jefferson Cty.*, 380 F.2d 385, 390-96. The desegregation plans ordered in *Jefferson* were known as "freedom of choice" plans or "Jefferson-decree plans." *See e.g. Hall v. St. Helena Parish School Bd.*, 417 F.2d 801, 808 (5th Cir. 1969).

*Helena Parish School Bd.*, 417 F.2d 801, 809 (5th Cir. 1969). On August 4, 1969, the Court issued its third and last Decree, further refining the desegregation duties of Defendants and maintaining the requirement of bi-annual reporting. [Doc. No. 1-13 at 1-4].

The following month, the United States filed a Motion for Appointment and Designation as Amicus Curiae. [Doc. No. 1-15]. The United States filed its motion due to the filing of a suit in state court (the "*Swope*" case), whereby certain white citizens of St. Mary Parish sought to enjoin Defendants from implementing the desegregation plan ordered by this Court.[5] [Doc. No. 29 at 6; Doc. No. 1-15 at 3-4]. The United States, relying upon 28 U.S.C. § 1651 (the All-Writs Statute) and supporting jurisprudence, moved "to appear and participate in this action to aid this Court to do all that reasonably and lawfully can be done to protect and effectuate its order of August 4, 1969." [Doc No. 1-15 at 4]. The Court granted the motion the same day, thereby authorizing the United States "to appear and participate in this action . . . as amicus curiae, with the right as such to submit pleadings, evidence, arguments and briefs, to move for injunctive and other necessary and proper relief, and to initiate such further proceedings that may be necessary and appropriate." [Doc. 1-15 at 6].[6] The Court simultaneously issued a separate Order granting the United States' Petition for Removal and Consolidation of the *Swope* case with the instant case. [Doc. No. 1-16 at 12-13]. On February 27, 1970, the Court granted the United States' motion to dismiss the *Swope*

---

[5] *See Swope v. St. Mary Parish School Bd.*, 241 So.2d 238, 240 (La. 1970); *see also* Doc. No. 1-16 at 6.

[6] Although the docket sheet identifies the United States as "Intervenor Plaintiff," that designation is incorrect. As set forth above, the United States was permitted to appear in this matter as amicus curiae only.

portion of the consolidated proceedings with full prejudice. [Doc. No. 1-30]. After dismissal of the

*Swope* matter, the United States' participation in this suit ceased until 2018. [Doc. No. 8].

Over the next four and a half years, the Court issued a series of orders establishing various

remedial measures Defendants were required to undertake to desegregate their schools. In April of

1975, the Court issued the following Order:

> Considering the biannual report dated April 15, 1975 filed by the defendant, St. Mary Parish School Board,
>
> IT IS NOW ORDERED that counsel for plaintiffs forthwith examine said report and its contents and, on or before thirty (30) days from the date of this Order, file any and all objections they may have to the operation of the public school system in the parish of St. Mary, Louisiana and to the proposed construction, the abandonment of school facilities set out therein, and any other matters pertaining to the operation of said system to which they may object, otherwise this Court shall, in the absence of such objections, declare said system unitary and direct that the matter be placed on the inactive docket.

[Doc. No. 1-67]. No objections were ever filed. Thereafter, the record reflects a series of reports

submitted by Defendants from 1975 through 1983, as well as a Joint Motion by Defendants and

Plaintiffs to reconfigure certain schools, which was granted by the Court in 1981. [Doc. Nos. 1-68

through 1-79]. However, no subsequent order is found in the record declaring the St. Mary Parish

public school system unitary, placing the matter on the inactive docket, dissolving the

desegregation Decree, or dismissing the case.

For the next thirty years, no further activity is reflected in the record. Then, on May 15,

2012, the undersigned issued an Order stating as follows:

> The Court has been in the process of reviewing all of the long-standing desegregation cases in this District. After reviewing the original record in the above-referenced matter, the Court finds that on April 9, 1975, United States District Judge Richard J. Putnam issued an Order, indicating that the public school system of St. Mary Parish appeared to be unitary. Absent any objection within thirty (30) days, Judge Putnam stated that he intended to issue a unitary status finding. No objections are found in the record. In an August 25, 1980 unopposed motion for

expansion of the Franklin Senior High School, the School Board of St. Mary Parish ("the School Board") stated that "[a]ll schools in West St. Mary Parish are paired, and there is therefore no change in racial composition, percentage wise in each school." After that date, the School Board continued to file bi-annual reports, but no documents have been filed since the last bi-annual report on December 8, 1983.

Given these facts, the Court finds that the School Board has eliminated all vestiges of the prior *de jure* discrimination, to the extent practicable, and there is no longer any reason to maintain this case on the inactive docket of the Court. Accordingly,

IT IS ORDERED that the St. Mary Parish school system is declared unitary in all respects.

[Doc. No. 2]. A judgment issued the same day dismissing this matter with prejudice. [Doc. No. 3].

Two days later however, the Court vacated its Judgment, stating "upon further review, the Court finds that additional facts are necessary to address the unitary status of the school system." [Doc. No. 4]. On May 21, 2012, the undersigned reassigned this matter to a judge in the Lafayette Division. [Doc. No. 5]. Four years later, the case was again reassigned to a judge in the Alexandria Division. [Doc. No. 6]. Beginning in early 2018, new counsel moved to enroll on behalf of all parties.[7] [Doc. Nos. 7-10, 15; *see also* Doc. Nos. 19-20]. On March 25, 2019, the Board filed the present Motion to Dismiss [Doc. No. 17], and on May 29, 2019, counsel for Plaintiffs filed "The Plaintiff Class' Motion to Substitute Named Plaintiffs." [Doc. No. 26]. On June 11, 2019, this matter was again transferred to the undersigned. The Court now issues its Ruling on the pending motions.

---

[7] This is the first activity of any party since 1983.

## II.
### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

By this motion, the Board argues the Court no longer retains jurisdiction over this suit, because the original Plaintiffs' claims have become moot and no class action was ever certified. Thus, the Board contends there is no longer a case or controversy before the Court, thereby depriving it of jurisdiction. Plaintiffs and the United States oppose the motion.

### A.    Standard of Review

"The objection that a federal court lacks subject-matter jurisdiction, see Fed. R. Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006). Rule 12(h) instructs, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The party asserting jurisdiction bears the burden of proof. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Thus, in this matter, Plaintiffs "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Id.* "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

### B.    Arguments of the Parties

By its motion, the Board makes three arguments in support of its position that this case is moot, and therefore the Court is without subject-matter jurisdiction. First, the Board contends that

because this suit was never explicitly certified as a class action it is not a class action, and because there is no named Plaintiff with a live claim, the case is moot.[8] Second, the Board argues to the extent Fifth Circuit jurisprudence recognizes an "implied class" doctrine, such caselaw "is directly contrary to Supreme Court precedent [and] is not binding." [Doc. No. 17-1 at 11]. Finally, and in the alternative, the Board argues that if the Court determines that the implied class doctrine has not been overruled, the facts of this case do not give rise to that doctrine, because: (1) "other than the initial 1965 order and stipulation by the Board, this case has not been treated as a class action," *Id.* at 12; (2) neither the 1965 Decree nor the two superseding Decrees adequately defined the class; and (3) Plaintiffs have not sought to substitute new plaintiffs with live claims.[9] Plaintiffs respond that the implied class doctrine has not been overruled, and that under the facts of this matter, an implied class exists.

## C.    **Applicable Jurisprudence**

The Board primarily relies upon three decisions in support of its argument: *Pasadena City Board of Education v. Spangler*, 427 U.S. 424 (1976); *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981); and *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135 (5th Cir. 1982).[10] Each of those cases are discussed below.

---

[8] No party disputes that the individual claims of the named Plaintiffs have become moot with the passage of time.

[9] After submission of the Boards motion, counsel for Plaintiffs submitted the Motion to Substitute Named Plaintiffs. That motion is addressed in Section III, *infra*.

[10] The Board additionally relies upon *Hereford v. United States*, 2014 WL 12781219 (N.D. Ala. May 20, 2014). However, the Court finds that case distinguishable on its facts, most notably that the United States intervened in that case, and once it did so, it, rather than plaintiffs, "propelled the litigation forward." *Id.* at *6.

In *Spangler*, several students attending the public schools of Pasadena, California, joined by their parents, brought a class action suit in federal court in 1968 seeking injunctive relief from allegedly unconstitutional segregation of Pasadena's public high schools. *Spangler*, 427 U.S. 424, 427 (1976). The United States intervened pursuant to Title IX of the Civil Rights Act of 1964.[11] *Id.* No class was ever formally certified by the court in accordance with Rule 23. On January 23, 1970, after a trial on the allegations, the court entered judgment in favor of plaintiffs, finding defendants' educational policies and procedures were violative of the Fourteenth Amendment. The court ordered defendants to submit a plan for desegregating the Pasadena schools and retained jurisdiction over the case "in order to continue to observe and evaluate the plans and the execution of the plans . . . ." *Id.* at 428. The following September, defendants' desegregation plan was approved and implemented. *Id.* In January 1974, defendants filed a motion seeking relief from the court's 1970 order, which the court denied. *Id.* at 428-29.

The Supreme Court granted certiorari to address "the extent of a district court's authority in imposing a plan designed to achieve a unitary school system." *Id.* at 429. However, before reaching the merits, the Court addressed defendants' argument – raised for the first time in the Supreme Court[12] – that because the original student plaintiffs had graduated, and because the

---

[11] 42 U.S.C. § 2000h-2 provides:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

[12] *See U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 400 n.7 (1980); *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135, 1138 (5th Cir. 1982).

district court never certified the suit as a class action pursuant to Rule 23, the case was moot. *Id.*

at 430. On this issue, the Supreme Court stated as follows:

> Counsel for the individual named respondents, the original student plaintiffs and their parents, argue that this litigation was filed as a class action, that all the parties have until now treated it as a class action, and that the failure to obtain the class certification required under Rule 23 is merely the absence of a meaningless "verbal recital" which counsel insists should have no effect on the facts of this case. But these arguments overlook the fact that the named parties whom counsel originally undertook to represent in this litigation no longer have any stake in its outcome. As to them the case is clearly moot. And while counsel may wish to represent a class of unnamed individuals still attending the Pasadena public schools who do have some substantial interest in the outcome of this litigation, there has been no certification of any such class which is or was represented by a named party to this litigation. Except for the intervention of the United States, we think this case would clearly be moot.
>
> The case did not remain an individual private action seeking to desegregate the Pasadena schools, however. The United States intervened in this case pursuant to 42 U.S.C. § 2000h-2. That section provides that "the United States shall be entitled to the same relief as if it had instituted the action." The meaning of this provision is somewhat ambiguous, and there is little legislative history to shed any light upon the intention of Congress. But we think the statute is properly read to authorize the United States to continue as a party plaintiff in this action, despite the disappearance of the original plaintiffs and the absence of any class certification, so long as such participation serves the statutory purpose, and that the presence of the United States as a party ensures that this case is not moot.

*Id.* at 430-31 (citations omitted).[13]

Five years after *Spangler*, the Fifth Circuit decided *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981). There, the parents of black children attending school in the Dallas Independent School District ("DISD") brought suit in 1970, alleging the school district's student disciplinary policies and practices discriminated against black students and violated due process guarantees. *Tasby v. Estes*, 643 F.2d 1103, 1104 (5th Cir. 1981). Litigation to desegregate DISD's school facilities had

---

[13] The Court notes the *Spangler* suit was filed in 1968 – two years after the amendments to Rule 23 mandating courts to certify by order whether a matter may proceed as a class action.

begun in the 1950s, and the actual desegregation process began in 1961. *Id.* A decade later, plaintiffs brought the *Tasby* suit "to purge the remaining traces of de jure racial segregation in the DISD." *Id.* In 1976, the court issued an order adopting a detailed student assignment plan, as well as additional remedial measures, including provisions addressing student disciplinary policies. *Id.* In March of 1979, plaintiffs filed a "Motion for Further Relief," alleging the DISD had failed to comply with the district court's desegregation order as it pertained to student discipline. *Id.* at 1105. After a hearing, the district court dismissed plaintiff's motion and plaintiffs appealed.

On appeal, the Fifth Circuit first addressed DISD's contention that the controversy was moot "because the plaintiffs ha[d] not shown that any of the black students originally named in the complaint still attend[ed] school in the district and because the district court never certified this suit as a class action pursuant to Fed. R. Civ. P. 23." *Id.* at 1105. The Fifth Circuit found this argument to be without merit:

> The DISD does not contest the plaintiffs' standing to bring this lawsuit when it was originally filed, and there is no reason to believe that the plaintiffs have necessarily lost their personal stake in the outcome of this litigation during the intervening years. *Of course, a school desegregation case can become moot if it is not certified as a class action, the named plaintiffs have graduated from school, and there is no other factor which avoids mootness.* If the DISD thought that the plaintiffs no longer resided within the school district or had graduated from school, then the way was open for it to make such a showing. In the absence of proof by the DISD that the plaintiffs no longer have a present interest in this litigation, we hold that this action was properly maintained in the district court.

*Id.* at 1105-06 (citations omitted; emphasis added). The Fifth Circuit did not expound upon the district court's failure to certify the suit as a class action.[14]

---

[14] The Court notes the *Tasby* suit was brought in 1970 – four years after the amendments to Rule 23 were enacted, requiring district courts to certify class actions.

The year after the *Tasby* decision, the Fifth Circuit rendered its opinion in *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135 (5th Cir. 1982). The *Graves* suit was filed in 1968 as a class action on behalf of all black school children in Walton County, Georgia, and sought to force the desegregation of two school systems in that county. *Id.* at 1136. That same year, the district court entered a judgment desegregating the two school systems. The plan operated effectively for many years, but in 1979, disagreements arose as to whether the plan was being followed. *Id.* Around the same time, "a group of predominantly white parents, known as the Concerned Citizens of Walton County," were granted leave to intervene in the case. *Id.* The intervenors immediately filed a motion to vacate the 1968 decree and to dismiss the action for mootness, asserting "the graduation, or departure, from school of the original named plaintiffs and the failure of the district court to certify the case as a class action mooted the action." *Id.* In an effort "to quell the mootness claim," a motion was filed to add as plaintiffs two black students enrolled in the subject schools. Thereafter, the district court granted the motion to add the additional plaintiffs and vacated its prior order allowing the parents to intervene. *Id.* at 1137.

On appeal, the intervenors sought to set aside the district court's order adding additional plaintiffs, asserting that "the lack of class certification of the action and the change in status of the original plaintiffs since the commencement of the suit rendered the action moot, thus depriving the district court of power to add additional plaintiffs under Fed. R. Civ. P. 21." *Id.* at 1137. The Fifth Circuit affirmed the district court, finding intervenors' reliance on the *Jacobs*[15] and *Spangler* line of cases unpersuasive, reasoning as follows:

---

[15] In *Jacobs*, issued the year prior to *Spangler*, six high school students challenged the constitutionality of regulations issued by the school board, which plaintiffs argued violated their First and Fourteenth Amendment rights. *Board of School Com'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975). The suit was brought as a class action in 1972, but it was never properly certified nor was the

It is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot. This procedure is deeply implemented in desegregation cases, where the mootness problem constantly arises because of protracted litigation and the eventual graduation of named plaintiffs.

*Id.* at 1138 (citations omitted). As to the intervenors' argument that the case was not a class action,

and therefore, as in the *Jacobs* and *Spangler* line of cases, there was no "viable action in which the

proposed party plaintiffs could be added," the Fifth Circuit found:

After reviewing the record, we simply cannot accept this contention; we find this case to be a class action.

This case was filed as a class action and proceeded to trial as a class action. The description of the class affected by the alleged discrimination in the complaint and the scope of the relief requested clearly indicate that the suit was intended to benefit the entire class. . . . [T]he responsive pleading filed in this case "neither admitted nor denied the specific allegations that this case should proceed as a class action . . . ." We infer from this silence that the defendant school boards knew of the class nature of this action and acquiesced in it. It is clear that throughout its pendency the district court regarded the case as a class action.

*Id.* at 1138-39 (citations and footnote omitted).

The Fifth Circuit further relied upon the fact that the district court "adopted as its injunctive

order a proposed decree prepared and agreed upon by the defendant school boards," the decree

provided relief "not for the individual plaintiffs but for the entire plaintiff class of (black) parents

and students," and that "[t]hroughout this process there was never a suggestion by anyone that the

question of whether the plaintiff class should be certified was an issue to be decided." *Id.* at 1139.

After discussing a line of Fifth Circuit cases recognizing the viability of cases implicitly certified

_____

class ever properly defined. At oral argument before the Supreme Court, the Court was informed for the first time by counsel that all of the named plaintiffs had graduated. Under such circumstances, the Supreme Court held the case was moot. *Id.* at 130.

as class action suits[16], the Court held that the matter was in fact a class action despite the lack of a formal certification order, concluding: "To state at this late date that this was not a class action, 'would be to ignore the substance of the proceeding below in favor of an excessively formalistic adherence to the Federal Rules of Civil Procedure.'"[17] *Id.* (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (5th Cir. 1976)).

## D.    Analysis

"Article III of the Constitution imposes a threshold requirement that those who seek to invoke the power of federal courts must allege an actual case or controversy." *Graves* at 1137; *see also U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 395 (1980). "The starting point for analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Id.* (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301 (1964)).

"In general a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[18] *Murphy v. Hunt*, 455 U.S. 478, 481

---

[16] *See Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973); *Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979); and *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (5th Cir. 1976).

[17] The Court notes the *Graves* suit was brought in 1968 – two years after the amendments to Rule 23.

[18] It is clear in this case that the controversy over the unlawful segregation of the St. Mary Parish public schools is still a "live" controversy between the Board and at least some members of the class Plaintiffs seek to represent; this is demonstrated by the fact that students currently attending St. Mary Parish

(1982) (internal quotation marks omitted) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). As a rule, "[t]he mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). A notable exception to the mootness doctrine exists in class action suits, where the Article III mootness doctrine is more "flexible." *Geraghty* at 388. Where a district court certifies a case as a class action, the class of unnamed persons described in the certification acquires a legal status separate from the interest asserted by the named plaintiff. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). The named plaintiff must have a live case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court.[19] *Id.* at 402.

The Board is correct here that no class was ever formally certified in this matter. When the suit was filed in 1965, there was no requirement that courts issue an order certifying whether a case could properly proceed as a class action. The following year, Rule 23 "was amended to include a mandatory requirement of class certification."[20] *Jones v. Caddo Parish School Bd.*, 704 F.2d 206, 212 (5th Cir. 1983). The Order of the Supreme Court issued in conjunction with the 1966 amendments to the Federal Rules of Civil Procedure stated that the amendments "shall govern all proceedings in actions brought [after July 1, 1966] and also in all further proceedings

---

public schools have moved to be substituted as "named" Plaintiffs in this case. *See Geraghty*, 445 U.S. at 396.

[19] On appellate review, "[t]he controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Sosna*, 419 U.S. at 402.

[20] "Rule 23(c)(1), effective July 1, 1966, provided that '[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained . . . .'" *Jones v. Caddo Parish School Bd.*, 704 F.2d 206, 212 (5th Cir. 1983) (alterations in original).

in actions then pending, *except to the extent that in the opinion of the court their application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies*." *Id.* (citing 383 U.S. 1031 (1966) (emphasis added)). No order retroactively certifying the class after the 1966 amendments to Rule 23 went into effect is found in the record; nor has the Court located any express determination that it "would not be feasible or would work injustice" to apply amended Rule 23. Thus, it appears unless the Court finds the implied class action doctrine has not been overruled, and further finds the facts of this matter give rise to that doctrine, the case is moot. For the reasons that follow, the Court finds the implied class action doctrine has not been overruled, and further finds under the facts of this matter this suit constitutes an implied class action.

According to the Board, *Spangler* and *Tasby* dictate that the case is moot because the original Plaintiffs no longer have a live claim, this matter was never properly certified as a class action, and "there is no other factor which avoids mootness."[21] [Doc. No. 17-1 at 9 (quoting *Tasby* at 1106; citing *Spangler* at 430-31)] The Court disagrees with the Board's position for several reasons. First, as Plaintiffs correctly argue, the statements in *Spangler* and *Tasby* upon which the Board relies are dicta. *See e.g. In re Cajun Elec. Power Coop., Inc.*, 109 F.3d 248, 256 (5th Cir. 1997) (statements that can be deleted "without seriously impairing the analytical foundations of the holding" are dicta).[22] Additionally, several courts, including the Supreme Court, have

---

[21] The Board appears to argue the only "other factor" available to prevent mootness is "the presence of the United States as a party plaintiff." [Doc. No. 17-1 at 9; *see also* Doc. No. 32 at 3]. The Court disagrees with the Board's argument, as it finds neither the *Spangler* nor *Tasby* set forth such an exclusive limitation.

[22] Courts "are generally bound by Supreme Court dicta, especially when it is 'recent and detailed.'" *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (quoting *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)). The Fifth Circuit, however, is not bound by its own dicta. *See e.g. Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015).

distinguished *Spangler* as "a case in which there was an attempt to appeal the merits without first having obtained proper certification of a class." *Geraghty* at 400 n.7 (further describing *Jacobs* and *Spangler* as cases "adopting a less flexible approach" to the Article III mootness doctrine than other cases decided by the Supreme Court); *see also Graves* at 1138; *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1335 (1991). Thus, *Spangler* is distinguishable, as the issue of class certification in this matter is being raised in the first instance not on appellate review, but in the trial court. Further distinguishing *Spangler* is that the defendants there did not stipulate to the propriety of handling the matter as a class action, s*ee Navarro-Ayala*, 951 F.2d at 1135, the suit was initiated after the amendments to Rule 23 were in effect, and no motion had been filed in the trial court seeking to substitute named plaintiffs with live claims.

The Court finds *Graves* is practically on all-fours with the case at bar. In *Graves*, the Fifth Circuit found that although the case was never explicitly certified as a class action, it was in fact filed as a class action, defendants knew of the class nature of the action and acquiesced in it, the case proceeded to trial as a class action, and the case was regarded as a class action at all times by the district court. *Graves* at 1138-39. Other courts have found such exceptions to the requirement of class certification post-*Spangler* under facts similar to *Graves*. *See e.g. Johnson v. General Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979) (class action may exist in absence of formal certification order if litigation was conducted as a class action); *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1334 (1st Cir. 1991) ("When the parties stipulate that the action is a class action and clearly define the members of the class, and the court enters judgment pursuant to the stipulated terms, this may sufficiently imply certification for purposes of Fed. R. Civ. P. 23(c)(1)") (citing *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir. 1973)); *Kelly v. Metropolitan County Bd. of Ed. of Nashville and Davidson County, Tenn.*, 463 F.2d 732, 743, 749-50 (6th Cir.

1972); *Lockett v. Board of Educ.*, 976 F.2d 648, 649 (11th Cir. 1992) (per curiam); *Doe, 1-13 ex rel. Doe St. 1-13 v. Bush*, 261 F.3d 1037, 1049-52 (11th Cir. 2001); *Wyatt By and Through Rawlins v. Poundstone*, 169 F.R.D. 155, 159-60 (M.D. Ala. 1995); *but see Brown v. Philadelphia Housing Authority*, 350 F.3d 338, 346 (3rd Cir. 2003) (finding the Supreme Court "summarily dismissed any doctrine of 'implied class certification' in dicta"); *Partington v. American Intern. Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Davis v. Hutchins*, 321 F.3d 641 (7th Cir. 2003).

In the matter before this Court, Plaintiffs brought "a class suit pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of [Plaintiffs] and on behalf of other Negro children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein . . .," namely, the operation of a "compulsory biracial school system." [Doc. No. 17-4 at 3, 5]. The Complaint described the named Plaintiffs (i.e., those to whom the class members are "similarly situated") as follows:

> Infant and adult plaintiffs are Negro citizens of the United States and of the State of Louisiana presently residing in St. Mary Parish, Louisiana. The minor plaintiffs allege that they, and each of them, are either currently attending the public free schools of St. Mary Parish or are in all material respects eligible to register, enroll, enter, attend classes and receive instruction in the public free schools of St. Mary Parish.

*Id.* at 4. The suit sought injunctive relief prohibiting the Board from, *inter alia*, "continuing to operate a compulsory biracial school system in St. Mary Parish, Louisiana," and from "assigning teachers, principals and other professional personnel to the public schools under their jurisdiction on the basis of race or color" *Id.* at 7. In its Answer, the Board admitted it had operated bi-racial schools for many years and voluntarily offered two resolutions to the case, both of which offered class-wide relief. *Id.* at 11-12. Two weeks after filing its Answer, the Board stipulated that Plaintiffs were "under the law entitled to bring this suit as a class action." *Id.* at 19. Six days after

this admission, the Court issued its first Decree, which began by recognizing and relying upon the stipulation of the parties as to the class nature of the suit. *Id.* at 20. The Court then permanently enjoined the Board from discriminating against all black public school students of St. Mary Parish, thereby granting relief that was aimed at a class of people. *Id.* Likewise, the superseding Decree issued on May 2, 1967 (and the first filing after the amendments to Rule 23 went into effect) granted class-wide relief by permanently enjoining the Board "from discriminating on the basis of race or color in the operation of the St. Mary Parish public school system." *Id.* at 30-31. The third and final Decree issued in this matter also granted class-wide relief, permanently enjoining the Board "from discriminating on the basis of race or color in the operation of their parish school system." [Doc. 1-13 at 1]. On appeal, the Fifth Circuit implicitly treated this matter as a class action and made no mention of the amendments to Rule 23. *Hall v. St. Helena Parish School Bd.*, 417 F.2d 801, 808-811 (5th Cir. 1969) (ordering revisions to parish-wide desegregation plans). The underlying record shows that all parties to this action not only knew of its class nature but stipulated to same. *See e.g. Bing v. Roadway Exp., Inc.*, 485 F.2d 441, 446 (5th Cir. 1973). Throughout the litigation, the Court believed the suit to be a class action and treated it as such.[23] The only conclusion to be drawn from these facts is that the "court implicitly determined that this suit would be maintained as a class action." *Id.* at 447. In light of the foregoing, the Court finds despite the lack of a formal certification order, this case is a class action filed on behalf of all black students attending public schools in St. Mary Parish.[24]

---

[23] *See also Conley v. Lake Charles Sch. Bd.*, 303 F.Supp. 394, 398-99 ("These law suits are all class actions for black citizens. . . .") (W.D. La. 1969).

[24] Further, this suit "is the type properly brought under Rule 23(b)(2)." *Bing* at 447. That section is designed for situations in which "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

Notwithstanding the foregoing, the Court is of the opinion the class in this matter should be formally recertified and its parameters should be clarified. Accordingly, the Court will set a briefing schedule forthwith.[25]

## III.
### MOTION TO SUBSTITUTE NAMED PLAINTIFFS

Plaintiffs have filed a Motion to Substitute Named Plaintiffs, whereby they seek to substitute two parents, in a representative capacity, on behalf of their children who attend St. Mary Parish public schools. [Doc. No. 26]. The Board opposes the motion but makes no argument other than those presented in its Motion to Dismiss. Accordingly, the Court will grant Plaintiffs' motion.

## IV.
### CONCLUSION

The Court has made its best effort at applying the law to the facts of this case but is cognizant that much of the pertinent caselaw is from times past, and times (as well as jurisprudence) have changed. Further, the Court recognizes there are factors undercutting its decision – *e.g.*, the failure of the parties and the Court to expeditiously move this case to resolution;

---

respecting the class as a whole." Fed. R. Civ. 23(b)(2); *see also Bing* at 447. The suit alleges the St. Mary Parish School Board was maintaining racially segregated schools in violation of the Fourteenth Amendment to the United States Constitution. "Such conduct clearly constitutes acting 'on grounds generally applicable to the class.'" *Id.*; *see also* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment. As this is a class action pursuant to Rule 23(b)(2), notice to the class is not required, although it is permissive. Fed. R. Civ. P. 23(c)(2)(A)

[25] One additional argument bears mention. In its opposition to the Motion to Dismiss, the United States "requests" that it "be permitted to continue to participate in the instant litigation pursuant to the broad authority granted it by this Court in 1969." [Doc. No. 29 at 5; *see also Id.* at 19]. While the Court recognizes the United States was previously granted broad authority, that authority was granted to ensure enforcement of the Court's desegregation decrees. The limits of the government's authority are not before the Court at this time, but the Court merely notes that the United States did not seek, nor was it granted, permission to intervene in this matter. Thus, the limits of its authority are likely less than those of a party. *See e.g. Bing v. Roadway Exp., Inc.*, 485 F.2d 441, 452 (5th Cir. 1973) ("As amicus curiae the Government cannot control the course of this litigation to the extent of requesting individual relief not requested by anyone else.").

the fact the United States has appeared only as amicus, rather than as an intervenor; certain dicta found in Supreme Court and Fifth Circuit opinions; etc. Accordingly, the Court would look favorably upon a request to certify this matter for interlocutory appeal. *See e.g.* 28 U.S.C. § 1292(b). As foretold by Judge Higginbotham:

> [This] case is a warning to courts struggling with public law cases. Difficult legal questions, particularly in school cases, are magnified by failure to adhere strictly to procedure. With these public law cases we are learning that the fastest path between two points is not a straight line. It is, instead, the sometimes tedious and seemingly tortuous path of procedural due process.
>
> . . . Critically, failure to define the parties to this lawsuit in times past has led to difficulty in achieving a final result.

*Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 938 (5th Cir.1984) (Higginbotham, J., dissenting).

For the reasons set forth above, the Motion to Dismiss as Moot for Lack of Subject Matter Jurisdiction [Doc. No. 17], filed by Defendant St. Mary Parish School Board ("Board"), is DENIED, and the Motion to Substitute Named Plaintiffs [Doc. No. 26], filed by counsel for "Private Plaintiffs" is GRANTED.

SIGNED this 18th day of September 2019.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE