## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| CLAUDE BOUDREAUX, *et al.*, | |
| Plaintiffs, | Civil Action No. 6:65-cv-11351 |
| v. | JUDGE ROBERT G. JAMES |
| SCHOOL BOARD OF ST. MARY PARISH, *et al.*, | MAGISTRATE JUDGE CAROL WHITEHURST |
| Defendants. | |

## THE PLAINTIFF CLASS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR CLASS RECERTIFICATION AND FORMAL APPOINTMENT OF CLASS COUNSEL

The Plaintiff Class respectfully submits this memorandum in support of its motion for an order (1) formally recertifying this matter under Rule 23 as a class action on behalf of "all Black children eligible to attend the public schools in St. Mary Parish and their parents and/or guardians," and (2) appointing the Plaintiff Class' current counsel of record as class counsel.

## I.    FACTS

The original plaintiffs filed this class action lawsuit on August 31, 1965 "on behalf of themselves and on behalf of other [Black] children and their parents in St. Mary Parish, similarly situated," seeking to desegregate the St. Mary Parish, Louisiana schools. *See* Compl., ECF No. 17-4 at 2-3. As the Complaint stated:

> Infant and adult plaintiffs are [Black] citizens of the United States and of the State of Louisiana presently residing in St. Mary Parish, Louisiana. The minor plaintiffs allege that they, and each of them, are either currently attending the public free schools of St. Mary Parish or are in all material respects *eligible to register, enroll, enter, attend classes* and receive instruction in the public free schools of St. Mary Parish.

*Id.* at 4 (emphasis added). Like the original named plaintiffs, the current Plaintiff Class Representatives are the parents of Black school children eligible to attend, and indeed currently

1

enrolled in, the public schools in St. Mary Parish who seek relief on their own behalf, on behalf of their minor children, and on behalf of all others similarly situated who are affected by the past or present racially discriminatory actions and policies of Defendant.

## II.   LEGAL STANDARD

This Court has determined that this pre-1966 class action should be recertified under the amended 1966 version of Rule 23. *See* ECF No. 36. Under that Rule, certification is proper where, as here:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class," Federal Rule of Civil Procedure 23(a), and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Federal Rule of Civil Procedure 23(b)(2). "[T]he district court maintains great discretion in certifying and managing a class action." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986)).

## III.   ARGUMENT

### A.   The Plaintiff Class Meets the Requirements of Rule 23(a).

#### i.   The Plaintiff Class Is Sufficiently Numerous.

Per Rule 23(a)(1), a plaintiff class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]o satisfy his burden with respect to this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). At issue is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id*. at 1038 (quoting *Phillips v. Joint Legislative Comm.*, 637

2

F.2d 1014, 1022 (5th Cir. 1981)). Courts have also considered "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim" *Mullen*, 186 F.3d at 624-25 (quoting *Zeidman*, 651 F.2d at 1038).

The number of class members involved here "is within the range that generally satisfies the numerosity requirement." *Mullen,* 186 F.3d at 624 (numerosity satisfied where there were 100-150 class members). According to the Louisiana Department of Education, as of February 2019 (the most recent figure available), there were 3,331 Black students enrolled in the St. Mary Parish schools. La. Dep't of Educ., *Multiple Statistics By School System For Total Public Students – Feb. 1, 2019*, https://www.louisianabelieves.com/docs/default-source/data-management/feb-2019-multi-stats-(total-by-site-and-school-system).xlsx?sfvrsn=e4aa9f1f_3 (*See* cell I57).

Moreover, other factors also demonstrate numerosity here, including the nature of the case and the fluid nature of the class. *Mullen*, 186 F.3d at 624-25. For example, because class members periodically move into and out of St. Mary Parish and because, by virtue of their getting older, new Black children become eligible to attend the St. Mary Parish schools each year, while others become ineligible, it is difficult to identify, with precision, each member of the class as the membership of the class is continually changing. *See Graves v. Walton Cty. Bd. of Educ.*, 686 F.2d 1135, 1138 (5th Cir. 1982) (acknowledging that the membership of the class constantly changes in school desegregation cases). In addition, as in *Mullen*, class members "might be reluctant to file individually for fear of . . . retaliation" directed at their children or, for class members employed by the District, towards them as employees. 186 F.3d at 624.

Given the size of the class, the difficulty of identifying class members, and the likelihood that many class members may be reluctant to file suit individually, it is clear that the numerosity requirement is met since the Plaintiff Class is "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). Indeed, as the District stipulated on October 5, 1965, "the plaintiffs . . . are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs, and . . . plaintiffs are, therefore, under the law entitled to bring this suit as a class action." Stipulation, ECF No. 17-4 at 19 (originally filed Oct. 11, 1965).

### ii.   There Are Many Common Issues of Law and Fact.

Per Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "Their claims must depend upon a common contention . . . that [] is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *accord In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014).

Here, the commonality requirement is met. As the Court recognized on October 11, 1965, "the right sought to be enforced is common to all members of such class." Oct. 11, 1965 Decree, ECF No. 17-4 at 20. As the Plaintiffs alleged in their complaint, "there are common questions of law and fact involved, common grievances arising out of common wrongs and common relief is sought for each of the plaintiffs individually and for each member of the class." ECF No. 17-4 at

3. Namely, the District operated *de jure* segregated schools for years and has failed to fulfill its "affirmative" and "continuing duty to take whatever action may be necessary to create a 'unitary, nonracial system.'" *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 440 (1968) (citation omitted).

The District's operation of a *de jure* segregated school system and the failure to eradicate the vestiges thereof is a "common wrong" that harms every member of the Plaintiff Class. "The injury [that the Plaintiff Class seeks to rectify] – their children's diminished ability to receive an education in a racially integrated school – is, beyond any doubt, not only judicially cognizable but . . . one of the most serious injuries recognized in our legal system." *Allen v. Wright*, 468 U.S. 737, 756 (1984)). This past and ongoing injury satisfies commonality "even when the resulting injurious effects … are diverse." *Deepwater Horizon*, 739 F.3d at 810-11 (stating that even a single common question, like a companywide policy of discrimination, can be sufficient).

This common wrong calls for common, systemic relief. Indeed, all of the relief granted has been class-wide relief applicable to the entire school system, including both the original 1965 decree and subsequent orders. *See, e.g.*, Oct. 11, 1965 Decree, ECF No. 17-4 at 20-22; May 2, 1967 J. On Mots., ECF No. 17-4 at 28-30; Feb. 2, 1968 Order, ECF No. 30-5; June 5, 1969 En Banc Order, ECF No. 1-4; Aug. 4, 1969 Decree, ECF No. 1-13; Aug. 6, 1969 Mem. Op., ECF No. 1-14; July 7, 1970 Order, ECF No. 1-37; Aug. 7, 1970 Op. & Order, ECF No. 1-42; Sept. 18, 1970 Order, ECF No. 1-46; June 30, 1971 Order, ECF No. 1-50; Aug. 2, 1971 Am. J., ECF No. 1-51.

### iii.   Plaintiff Class Representatives' Claims Are Typical of Those of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Fifth Circuit explained, "the test for typicality is not demanding." *Mullen*, 186 F.3d at 625. The inquiry "'focuses on the

similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Id.* (quoting *Lightbourn*, 118 F.3d at 426).

The typicality requirement is met. The Plaintiff Class Representatives' claims and defenses are typical of those of the class. Like the class members, the Plaintiff Class Representatives – Black children eligible to attend the St. Mary Parish schools and their parents – like their predecessors before them, all seek relief from the District's operation of a *de jure* segregated school system and the unremedied vestiges of that unconstitutional segregation.

### iv.   The Plaintiff Class Representatives Are Adequate Class Representatives.

Rule 23(a)(4) requires that the Plaintiff Class Representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Plaintiff Class Representatives must be "part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, the Plaintiff Class Representatives are members of the class, have the same interest as other class members in remedying the harm caused by the District's unconstitutional segregation, are knowledgeable about the schools, and have each affirmed their willingness to undertake the duties of representing the class. *See* Dupas Decl. & Boston Decl.

### B.   The Plaintiff Class Meets the Requirements of Rule 23(b)(2).

As this Court explained, this case is "properly brought under Rule 23(b)(2)" because the District "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." ECF No. 36 at 20-21 n.24 (citations omitted). *Accord Ayers v. Thompson*, 358 F.3d 356, 376 (5th Cir. 2004) (a school desegregation lawsuit challenging the vestiges of discrimination was an appropriate Rule 23(b)(2) class action); Fed. R. Civ. P. 23(b)(2) advisory comm.'s notes to 1966 amend. (citing school desegregation lawsuits as examples of proper Rule 23(b)(2) class actions).

C.      **Class Definition**

The Plaintiff Class has always included all Black children eligible to attend the St. Mary

Parish public schools and their parents and/or guardians. Defendant agrees that the class should

include Black students who currently attend the District's schools. Defendant objects to the

inclusion of: (1) Black students who are eligible to attend, but do not attend, District schools, and

(2) Black parents. Defendant's objections are meritless.

This class definition was appropriate in 1965 and remains so today. Courts in desegregation

cases have defined classes to include all Black children eligible to attend the schools. *See, e.g.*,

*Lemon v. Bossier Par. Sch. Bd.*, 240 F. Supp. 709, 713-14 (W.D. La. 1965) (defining the class as

all Black children eligible to attend the schools), *aff'd* 370 F.2d 847 (5th Cir. 1967); Am. Final

Order, *Bradley v. Pinellas Cty. Sch. Bd.*, No. 8:64-cv-000 98-SDM, ECF No. 277 at 3 n.5 (M.D.

Fla. Aug. 17, 2000) (same); *Franklin v. Parker*, 223 F. Supp. 724, 727 (M.D. Ala. 1963) (same),

*aff'd* 331 F.2d 841 (5th Cir. 1964); *Flax v. Potts*, 204 F. Supp. 458, 465 (N.D. Tex. 1962), *aff'd*,

313 F.2d 284 (5th Cir. 1963) (same). *Cf. Milliken v. Bradley*, 418 U.S. 717, 722 (1974) (defining

the class as all school age children residing in a city); Order, *United States v. Simpson Cty. Sch.*

*Dist.*, No. 3:70-cv-04706-DPJ-LRA (S.D. Miss. Aug. 20, 1982), ECF No. 95-2 at 1 (same).

Here, the Plaintiff Class has an interest in protecting the rights of Black students who are

eligible to attend public schools in the parish, but – because of the actions of the District and/or

other third parties, like charter schools – are not enrolled or otherwise might be harmed. For

example, Black students involuntarily expelled under discriminatory discipline or other policies

are plainly members of the class. *Cf. Franklin*, 223 F. Supp. at 727 (defining a class as Black

people barred from attending school because of discriminatory policies). Unenrolled Black

students also endure the dignitary harm of discrimination. *See Stout v. Jefferson Cty. Bd. of Educ.*,

882 F.3d 988, 1012 (11th Cir. 2018) (noting that the anti-Black message of inferiority

7

communicated "cannot have escaped the [black] children in the [C]ounty." (citation omitted)). The Plaintiff Class may also seek to vindicate the right to an integrated education for Black students in public charter schools. *See Smith v. Concordia Par. Sch. Bd.*, 906 F.3d 327, 330-31 (5th Cir. 2018) (stating that charter schools are subject to preexisting desegregation orders).

Courts have also defined classes to include parents and others. *See, e.g.*, *Graves v. Walton Cty. Bd. of Educ.*, 686 F.2d 1135, 1139 (5th Cir. 1982) (defining the class to include Black parents); *Ayers v. Allain*, 674 F. Supp. 1523, 1525 (N.D. Miss. 1987) (including parents and taxpayers), *vacated on other grounds*, 970 F.2d 1378 (5th Cir. 1992) (en banc); *Thomas v. St. Martin Par. Sch. Bd.*, 245 F. Supp. 601, 604 (W.D. La. 1965) (defining the class as all Black citizens in the parish).

Black parents unquestionably have the "personal right" to vindicate their children's right to receive an "education in a racially integrated school." *Allen*, 468 U.S. at 757. Separate from the injuries to their children, Black parents also suffer harm, such as additional time, effort, emotional energy, and financial resources they must expend in an attempt to protect their children from the harmful effects of the Defendant's ongoing constitutional violation. For example, when a school district unjustly subjects Black students to a disproportionate share of exclusionary discipline,[1] so too has the district subjected those children's parents to a disproportionate share of the phone calls home summoning those parents from their jobs to the school. Every additional phone call, email, meeting, letter, or conversation these parents must initiate in an attempt to ensure that their children are given equal educational opportunities adds up to years of additional stress. *Cf. Green*, 391 U.S. at 441-42 (stating that a school's failure to affirmatively desegregate operates to "burden children and their parents with a responsibility which *Brown II* placed squarely on the School Board");

---

[1] Plaintiffs' Counsel's analysis of publicly available information and the data produced by the District suggests that such discriminatory discipline is occurring here. This issue will be addressed as the parties work to resolve this matter.

*Cowan v. Bolivar Cty. Bd. of Educ.*, No. 2:65-CV-00031, 2016 WL 5462820, at *5 (N.D. Miss. Sept. 29, 2016) (acknowledging the "harm to the plaintiffs and the public in maintaining vestiges of segregation").

Further, Black parents are injured as taxpayers required to support the District, as parents experiencing the dignitary harm of having children attending schools tainted with the vestiges of discrimination, and, for many class members, as individuals who were themselves victims of past discrimination by the District. *See Liddell v. Special Admin. Bd. of Transitional Sch. Dist.*, 894 F.3d 959, 965-66 (8th Cir. 2018) ("Parents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children."); *Brown v. Bd. of Ed. of Topeka*, 84 F.R.D. 383, 397 (D. Kan. 1979) ("[T]he case law indicates that students and parents have a natural legal interest in seeing that a court's desegregation order is properly carried out.").

### D.     Appointment of Class Counsel

"In appointing class counsel, the court: . . . must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee explained that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory comm.'s notes to 2003 amend.

The Plaintiff Class' counsel, the NAACP Legal Defense and Educational Fund, Inc. ("LDF"), is highly qualified to adequately represent the Plaintiff Class. Founded in 1940 by Thurgood Marshall, LDF is the nation's first civil and human rights law firm. It is a leading voice in the decades-long struggle for equal educational opportunities. LDF won the landmark case,

*Brown v. Board of Education*, 347 U.S. 483 (1954), and continues to litigate the many desegregation cases across the country that came in its wake. As such, LDF has a "corporate reputation for expertness in presenting and arguing the difficult questions of law that frequently arise in civil rights litigation." *NAACP v. Button*, 371 U.S. 415, 422 (1963).

Moreover, each of the individuals enrolled as counsel of record for the Plaintiff Class have substantial experience litigating desegregation cases. *See, e.g.*, *Moore v. Tangipahoa Par. Sch. Bd.*, 921 F.3d 545 (5th Cir. 2019); *Stout*, 882 F.3d 988; *Thomas v. Sch. Bd. St. Martin Par.*, 756 F.3d 380 (5th Cir. 2014), *on remand* No. 65-11314, 2016 U.S. Dist. LEXIS 8580 (W.D. La. Jan. 21, 2016); *Banks v. St. James Par. Sch. Bd.*, No. 65-16173, 2019 WL 2051644 (E.D. La. May 8, 2019), 2017 WL 2554472 (E.D. La. Jan. 30, 2017); *Andrews v. Monroe City Sch. Bd.*, No. 65-11297, 2015 WL 5675862 (W.D. La. Sept. 25, 2015).

## IV.     CONCLUSION

Accordingly, the Plaintiff Class respectfully requests that this Court recertify the class as defined herein and appoint counsel of record as class counsel. Should the Court require further information before ruling on this motion, the Plaintiff Class respectfully requests a status conference, hearing, or further briefing on the matter.

Respectfully submitted on October 25, 2019,

<table>
<tr><td>

*/s/ Michaele N. Turnage Young*
Michaele N. Turnage Young
Samuel Spital
Deuel Ross
NAACP Legal Defense &
    Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
mturnageyoung@naacpldf.org
sspital@naacpldf.org
dross@naacpldf.org

</td><td>

*/s/ Gideon T. Carter, III*
Gideon T. Carter, III
Bar Roll Number 14136
Post Office Box 80264
Baton Rouge, LA 70898-0264
(225) 214-1546
(225) 341-8874 Fax
gideontcarter3d@gmail.com




*Counsel for the Plaintiff Class*

</td></tr>
</table>