# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **CLAUDE BOUDREAUX,** *et al*, | * | **CIVIL ACTION NO. 65-11351** |
| *Plaintiffs* | * | |
| | * | |
| v. | * | **JUDGE ROBERT G. JAMES** |
| | * | |
| **ST. MARY PARISH SCHOOL BOARD,** | * | |
| *et al*, | * | **MAGISTRATE JUDGE WHITEHURST** |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF ST. MARY PARISH SCHOOL BOARD
## REGARDING CLASS ACTION RECERTIFICATION

**MAY IT PLEASE THE COURT:**

The St. Mary Parish School Board ("Board" or "District") respectfully submits this memorandum to address the class action certification requirements necessary to formally certify a plaintiff class.[1] As detailed below, the Board submits that the class in this case must be adequately defined and clearly ascertainable to the parties and the public as this case moves forward. Undersigned counsel is not aware of any recent Louisiana desegregation case in which the class has been formally certified and would provide guidance as to such definition. However, so as to avoid any confusion as to whom this case concerns, the Board would submit that the following class definition should be utilized: "black students who attend schools in the St. Mary Parish School System operated by the St. Mary Parish School Board." To the extent that Plaintiffs may request that parents be part of the class, rather than acting on behalf of their minor children, the Board would oppose parents being members of the class because they do not have any injury sufficient to satisfy standing requirements. With respect to Rule 23(a) requirements, the Board does not intend to dispute numerosity, commonality, or typicality

---

[1] By Order dated January 30, 2019, the Court gave the parties until October 25, 2019 brief the formal recertification of a class action in this matter should they choose to do so. Order, Record Document 38.

of the proffered class of black students who attend its schools.² Finally, the Board would request that the Court ensure that the requirements for adequacy of representation for the class are properly met.

## I. Discussion

Prior to certifying any class, the Court must ensure that the four (4) explicit requirements of Rule 23(a) for a class action are met:³ (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23 also has a fundamental implied prerequisite of "ascertainability" which concerns the definition of the class itself.⁴ Importantly, "[t]he named plaintiffs, as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23."⁵ As detailed below, the Board respectfully requests that the Court ensure that these requirements have been adequately met for the proposed class.

### A. Ascertainability

The Fifth Circuit has long held that "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."⁶ Stated another way, "[a]lthough the text of Rule 23(a) is silent on the matter, a class must not only exist, the

---

² Due to the parties' simultaneous briefing schedule, the Board is unaware of exactly what position Plaintiffs will take on these three (3) requirements. The Board would reserve the right to request a response to Plaintiffs' position should one be necessary.

³ *See, e.g., M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) ("It is well-established that '[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class.' ")

⁴ *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

⁵ *Bridges v. Freese*, No. 3:13CV457TSL-JCG, 2015 WL 1401513, at *2 (S.D. Miss. Mar. 26, 2015) (citing *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 548 (5th Cir.2003)); *see also, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule-that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

⁶ *DeBremaecker*, 433 F.2d at 734.

class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.' "[7] As such, "[a] proposed class's definability and ascertainability are consequently implied prerequisites to Rule 23's requirements for class certification."[8]

The Complaint in this matter described the named Plaintiffs as follows:

> Infant and adult plaintiffs are Negro citizens of the United States and of the State of Louisiana presently residing in St. Mary Parish, Louisiana. The minor plaintiffs allege that they, and each of them, are either currently attending the public free schools of St. Mary Parish or are in all material respects eligible to register, enroll, enter, attend classes and receive instruction in the public free schools of St. Mary Parish.[9]

Relatedly, this Court's October 11, 1965 decree stated, pertinent to a potential class definition:

> For written reasons this day assigned, it being stipulated that plaintiffs are members of the Negro race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class, it is now ... ORDERED, ADJUDGED AND DECREED ...[10]

To the extent that these descriptions of the plaintiffs could be considered a class definition, they are imprecise and do not clearly define the class in this matter.

As this Court recognized in its Ruling, "much of our school litigation has proceeded with ill-defined and largely ignored classes of litigants,"[11] and that "failure to define the parties to this lawsuit in times past has led to difficulty in achieving a final result."[12] This highlights why it is important for

---

[7] *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n. 3 (5th Cir. 2007) (quoting 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997); *see also*, *Sadler v. Intl. Paper Co.*, CIV.A. 09-1254, 2010 WL 5125502, at *2 (W.D. La. Dec. 9, 2010) (citing same).

[8] *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, No. 3:17-CV-1158-K, 2018 WL 2415027, at *1 (N.D. Tex. May 29, 2018) (citing *John*, 501 F.3d at 445).

[9] Complaint, Record Document 17-4 at p. 4.

[10] October 11, 1965 Decree, Record Document 17-4 at p. 20.

[11] Ruling, Rec. Doc. 36 at p. 1 n. 1 (quoting *Williams v. City of New Orleans*, 729 F.2d 1554, 1569 n.4 (5th Cir.1984) (Higginbotham, J., concurring)).

[12] *Id.* at p. 22 (quoting *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 938 (5th Cir.1984) (Higginbotham, J., dissenting)).

the class in a desegregation case to be adequately defined and clearly ascertainable.

So-called "class definitions" in early desegregation cases run the gamut in how broadly or narrowly they defined who the plaintiffs were as the vast majority of them did not formally certify a class definition. Some cases, as in this case, included references to black children "eligible to attend" parish schools.[13] Others, again as in this case, broadly referred to "members of the Negro race and residence of the parish."[14] Some more narrowly defined the class to include references to injuries caused by a defendant in maintaining a dual system.[15] Ultimately, however, such "definitions" from early desegregation cases generally go beyond the scope of what desegregation cases truly concern.

As the Fifth Circuit has aptly explained: "[t]he class is all Negro children in a school district attending, by definition, inherently unequal schools and wearing the badge of slavery separation displays."[16] The class in this matter is just that–the black students who are attending schools within the St. Mary Parish School System. This litigation was designed to dismantle the prior *de jure* segregated system in this school district on their behalf and the class in this case should be defined accordingly. As such, the Board respectfully submits that the class should be defined as: "black students who attend schools in the St. Mary Parish School System operated by the St. Mary Parish School Board."

---

[13] *See, e.g.,* Complaint, Rec. Doc. 17-4 at p. 4; *Lemon v. Bossier Par. Sch. Bd.*, 240 F. Supp. 709, 713-14 (W.D. La. 1965), *aff'd*, 370 F.2d 847 (5th Cir. 1967) ("Plaintiffs are entitled to bring this suit on behalf of the class consisting of all Negro children eligible to attend Bossier Parish schools, whether because of residence or contract. Plaintiffs' lack of residence in Bossier Parish, then, does not prevent their representing the class in this suit.").

[14] *See, e.g.,* 1965 Decree, Rec. Doc. 17-4 at p. 20; *Thomas v. St. Martin Par. Sch. Bd.*, 245 F. Supp. 601, 604 (W.D. La. 1965) ("plaintiffs are members of the Negro race and residents of the parish of St. Martin, Louisiana").

[15] *See, e.g., Graves v. Walton Cty. Bd. of Educ.*, 686 F.2d 1135, 1139 (5th Cir. 1982) ("Negro parents and pupils of the public schools of Walton County, Georgia who are similarly affected and injured by the action of the defendants in maintaining and operating a racially segregated school system").

[16] *U.S. v. Jefferson County Bd. of Educ.*, 372 F.2d 836, 867-68 (5th Cir. 1966), *opinion adopted and clarified on other grounds on reh'g en banc*, 380 F.2d 385 (5th Cir. 1967).

The Board anticipates that Plaintiffs will request that the class include students who are "eligible" to attend public schools in St. Mary Parish, similar to Plaintiffs' description in the Complaint. The Board would oppose such a broad definition because it would encompass many students who are not attending schools operated by the Board. Such a definition would include those who attend private school, are home schooled, attend another public school in St. Mary Parish (i.e., a charter school), or may never attend schools operated by the Board. Further, including those who attend private school, for example, would potentially create a conflict of interest within the class. At the very least, such a broad definition would include two or more separate groups who have very different interests.

"While '[t]he court need not know the identity of each class member before certification,' the class must be clearly ascertainably such that 'the court [is] able to identify class members at some stage of the proceeding.' "[17] "[V]ague and subjective elements within the definition may render a class unascertainable."[18] For example, the Fifth Circuit has found that a proposed class made up of "residents of this State active in the 'peace movement' " too vague.[19] Courts have also rejected proposed class definitions that "rel[y] on multiple assumptions that cannot be readily verified."[20] And, importantly, courts have rejected proposed classes where "[t]he interests of separate groups simply do not coincide given their different educational needs and circumstances."[21] As such, the Board would submit that the Court should reject any broad definition of the plaintiff class in this case and properly

---

[17] *White Glove Staffing*, 2018 WL 2415027, at *2 (citing *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015)).

[18] *Id.* (quoting *Simms v. Jones*, 296 F.R.D. 485, 506 (N.D. Tex. 2013)).

[19] *DeBremaecker*, 433 F.2d at 734.

[20] *White Glove Staffing*, 2018 WL 2415027, at *2 (rejecting proposed class of "all employees of White Glove Staffing who would have been supplied to Defendants to be banquet servers, prep cooks, dishwashers, and set-up crews").

[21] *Blunt v. Lower Merion Sch. Dist.*, 262 F.R.D. 481, 488-89 (E.D. Pa. 2009), *aff'd on other grounds*, 767 F.3d 247 (3d Cir. 2014) (discussing, under Rule 23(a)(4), how "the named plaintiffs [who] are students *with* learning disabilities" cannot "fairly and adequately protect the interests of students *without* learning disabilities").

define the class as to the black students attending the Board's schools.

Finally, the Board also anticipates that Plaintiffs will request that parents be a part of the class itself and/or represent the class in their own capacity. While parents, generally speaking, can act on behalf of their minor children, in order to represent the class as named plaintiffs, parents must also satisfy Article III standing requirements. As recently explained by the Fifth Circuit:

> [S]tanding requirements are equally applicable in class actions. The Supreme Court has said: "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class ... which they purport to represent."[22]

Here, parents have suffered no injury related to the Board operation of its schools. Simply put, they do not attend the Board's schools. While parents have an interest in their children's education, that does not satisfy, at a minimum, the injury requirement to confer standing upon *them*.

Similarly, adding "parents" to the class definition would be ill-defined. "Parents" could include biological parents, custodial and non-custodial parents, foster parents, grandparents, etc. Legal guardians would seemingly be excluded from "parents." And, "parents" themselves would not be able to satisfy Rule 23(a) requirements necessary for class members because, for example, they could not show that parents and black students attending Board schools "have suffered the same injury" necessary to satisfy the commonality requirement.[23] As such, the Board would respectfully submit that parents should not be certified as named plaintiff representatives in their own capacity nor be included as members of the class.

In sum, the Board respectfully submits that the class in this case must be must be adequately defined and clearly ascertainable to the parties and the public as this case moves forward. The class in

---

[22] *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

[23] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

this case are black students attending the Board's schools.  As such, the Board respectfully submits that the class should be defined as: "black students who attend schools in the St. Mary Parish School System operated by the St. Mary Parish School Board."

### B. Adequacy of Representation

As to the explicit requirements of Rule 23, as noted above, the Board does not intend to dispute numerosity, commonality, or typicality with respect to black students attending its schools.  However, the Board would request that the Court ensure that the Plaintiff class is adequately represented prior to certifying the class.  As explained by one Court:

> The adequacy requirement of Rule 23(a)(4) mandates an inquiry into both "[1] the zeal and competence of the representative's counsel and ... [2] the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir.2001). Furthermore, "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 482–83 (citation omitted). Thus, the class representative must possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation. *Id.* (citation omitted).
> . . .
> [C]lass representatives are not required to have detailed knowledge of the facts and legal theories underlying their claims ... they are entitled to rely to some extent on counsel. *See Berger*, 257 F.3d at 483 n. 15 (N.D.Tex.1988)("In analyzing the 'vigorous prosecution' element of the adequacy requirement, the Court concludes that the qualifications and experience of class counsel is of greater consequence than the knowledge of class representatives.") (emphasis added). However, in all cases, "the class representatives' level of knowledge remains a relevant factor," *Berger*, 257 F.3d at 483 n .15, and to qualify as adequate class representatives, they should "know more than that they were involved in a bad business deal," *Id.* at 483 (internal quotation mark and citation omitted).[24]

Another important part of the adequacy inquiry concerns potential conflicts between named representatives and the absent class members:

> The adequacy inquiry also " 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.' " [*Berger*, 257 F.3d] at 479–80 (quoting *Amchem* [*Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689

---

[24] *Bridges*, 2015 WL 1401513, at *5-6.

(1997)]). Throughout the inquiry, the Court must remain cognizant of "the constitutional dimensions of the adequacy requirement." *Id.* at 481. "[B]ecause absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.* at 480. "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Id.*[25]

First, the Board is not contesting the zeal and competence of the representative's counsel. Undersigned counsel has worked with several of Plaintiffs' counsel for many years in other desegregation cases and has no reason to question their zeal or competency.

However, it is not clear whether Plaintiffs' substituted named representatives satisfy the adequacy requirement of Rule 23(a)(4). Plaintiffs' recent Motion to Substitute Named Plaintiffs substituted: "Tiffany Dupas, on behalf of her minor children S.F.M., J.A.M., J.A.L.M., and J.A.S.M., students at LaGrange Elementary School, Franklin Junior High School, and Franklin Senior High School; and George Joseph Boston, on behalf of his minor child, G.J.B., a Berwick High School student."[26] The only information Plaintiffs provided was that Ms. Tupas and Mr. Boston "are parents of Black school children currently enrolled in schools operated by the St. Mary Parish Public School System" and "are also citizens of the United States and the State of Louisiana, and residents of St. Mary Parish, Louisiana."[27]

The Board readily acknowledges that Ms. Tupas and Mr. Boston are parents of the above mentioned minor students who attend its schools. However, Plaintiffs' Motion to Substitute does not demonstrate that Ms. Tupas and Mr. Boston "possess a sufficient level of knowledge and understanding

---

[25] *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. CIV.A. 11-2777, 2013 WL 6072702, at *8 (E.D. La. Nov. 18, 2013).

[26] The Plaintiff Class' Motion to Substitute Named Plaintiffs, Record Document 26 at p. 3.

[27] *Id.* at p. 4.

to be capable of 'controlling' or 'prosecuting' the litigation."[28]

For example, Courts have found proposed representatives are not adequate when they "ha[ve] barely a clue what th[e] case is about," or "lack[] even a basic understanding of the litigation."[29] And, courts have rejected proposed class representatives where "the plaintiffs have pointed the Court to no evidence whatsoever that any of the ... proposed class representatives" satisfy Rule 23(a)(4).[30]

Plaintiffs may, however, be intending to submit with their class certification brief additional information to demonstrate that Ms. Tupas and Mr. Boston meet Rule 23(a)(4)'s standard. The Board, at this time, simply does not have enough information to determine whether they do. As such, the Board would request that the Court ensure that Tiffany Dupas and Joseph Boston will adequately represent the interests of the class.

## II.  CONCLUSION

The class definition is fundamentally important as this desegregation case moves forward. It will clearly define to the parties and the public who this case concerns. The St. Mary Parish School Board, for the foregoing reasons, respectfully submits that this Court should define the class as: "black students who attend schools in the St. Mary Parish School System operated by the St. Mary Parish School Board." Further, parents should not be class members because they have no injury to satisfy standing requirements. Finally, the Board respectfully requests that the Court ensure that Tiffany Dupas and George Joseph Boston adequately represent the interests of the class.

---

[28] *Berger*, 257 F.3d at 482–83.

[29] *Bridges*, 2015 WL 1401513, at *5 (both proposed representatives not adequate).

[30] *Baricuatro*, 2013 WL 6072702, at *8.

**Respectfully submitted**, this the 25th day of October 2019.

                **ST.  MARY PARISH SCHOOL BOARD**

                **HAMMONDS, SILLS, ADKINS & GUICE**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, LA 70808
Telephone  (225) 923-3462
Facsimile   (225) 923-0315

*/s/ John Richard Blanchard*
**ROBERT L. HAMMONDS, T.A.**
Louisiana Bar Roll No. 6484
rhammonds@hamsil.com
**PAMELA WESCOVICH DILL**
Louisiana Bar Roll No. 31703
pdill@hamsil.com
**JOHN RICHARD BLANCHARD**
Louisiana Bar Roll No. 37036
jblanchard@hamsil.com