UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CLAUDE BOUDREAUX, ET AL.** | **CASE NO. 6:65-CV-11351** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SCHOOL BOARD OF ST MARY PARISH, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

## RULING ON CLASS CERTIFICATION

On September 18, 2019, the Court issued a Ruling in this longstanding school desegregation suit denying a Motion to Dismiss filed by Defendant the St. Mary Parish School Board ("the Board"). [ECF No. 36]. Pursuant to its motion, the Board contended, in part, that the Court no longer retained jurisdiction over this suit because it was never formally certified as a class action pursuant to Fed. R. Civ. P. 23. [ECF No. 17-1 at 8]. Although the Court rejected the Board's argument,[1] it nonetheless found "the class in this matter should be formally recertified and its parameters should be clarified." [ECF No. 36 at 21]. The Court set a briefing schedule [ECF No. 38], and the matter is now ripe for review.

## I.
### BACKGROUND

On August 31, 1965, five African-American students attending public schools in St. Mary Parish filed suit for injunctive relief against the St. Mary Parish School Board and B. Edward Boudreaux, Superintendent of the public schools of St. Mary Parish, alleging that Defendants were maintaining racially segregated schools in violation of the Fourteenth Amendment to the United

---

[1] Specifically, the Court found that it had been implicitly determined that this suit would be maintained as a class action on behalf of all Black students attending public schools in St. Mary Parish. [ECF No. 36 at 20].

States Constitution. [Doc. No. 17-4 at 2, 4]. The suit was brought as a class action and defined the class as follows:

> III.
>
> Plaintiffs bring this action as a class suit . . . on behalf of themselves and on behalf of other [Black] children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage [of Defendants' maintenance and operation of a compulsory, biracial school system] . . .
>
> IV.
>
> Infant and adult plaintiffs are [Black] citizens of the United States and of the State of Louisiana presently residing in St. Mary Parish, Louisiana. The minor plaintiffs allege that they, and each of them, are either currently attending the public free schools of St. Mary Parish or are in all material respects eligible to register, enroll, enter, attend classes and receive instruction in the public free schools of St. Mary Parish.

*Id.* at 3-4.[2]

The Board then stipulated that Plaintiffs were "under the law entitled to bring this suit as a class action," and the Court subsequently issued several decrees granting class-wide relief. *Id.* at 19-20. At the time suit was filed, a prior version of Rule 23 (the 1938 rule) was in effect, which did not require courts to issue an order certifying an action as a class action. *Compare* former Rule 23, 39 F.R.D. 69, 94-95, *with* Fed. R. Civ. P. 23(c) (West 2020). The following year, Rule 23 "was amended to include a mandatory requirement of class certification." *Jones v. Caddo Parish School Bd.*, 704 F.2s 206, 212 (5th Cir. 1983). The Order of the Supreme Court issued in conjunction with the 1966 amendments to the Federal Rules of Civil Procedure stated that the amendments "shall govern . . . in actions then pending, except to the extent that in the opinion of the court their application in a particular action then pending would not be feasible or would work injustice, in

---

[2] The original decree issued on October 11, 1965 described the plaintiff class as "members of the [Black] race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated. . . ." [ECF No. 17-4 at 20].

which event the former procedure applies." *Id.* (citing 383 U.S. 1031 (1966)). Neither the Court nor the parties have located in the record a formal order certifying the class, or an express determination that the application of amended Rule 23 "would not be feasible or would work injustice." Accordingly, the Court found "the class in this matter should be formally recertified and its parameters should be clarified."[3] *Id.* at 21. The issue has now been fully briefed by the parties [ECF Nos. 39-40, 54], and the Court finds formal certification of this matter as a class action is warranted.

## II.
## LAW AND DISCUSSION

**A.     Legal Standard**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). A plaintiff seeking class certification bears the burden of satisfying all implicit and explicit requirements of Federal Rule of Civil Procedure 23. *Id.* at 350; *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Implicit requirements of Rule 23 are that the class representative must be a member of the class and that the class is "definite" or "ascertainable." *Wal-Mart* at 348-49; *John* at 445. As to the Rule's explicit requirements, the party seeking certification must first demonstrate:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[3] "[A] district court is free to reconsider its class certification ruling as often as necessary before judgment." *McNamara v. Felderhof*, 410 F.3d 277, 280 (5th Cir. 2005); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).[4] Next, the plaintiff must show the proposed class satisfies at least one of the three requirements listed in Rule 23(b). *Id.* at 345; *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). Here, Plaintiffs seek certification under Rule 23(b)(2), which allows for certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b). The Board contests only ascertainability and adequacy. [ECF No. 40 at 1-2 (conceding "the proffered class of black students who attend its schools" satisfy the numerosity, commonality, and typicality prongs)]. Nevertheless, because the Court "must conduct a rigorous analysis of the Rule 23(a) prerequisites before certifying a class," these elements are discussed below. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

B.  **Ascertainability**

"A precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice."[5] *In re Monumental Life Ins. Co.*, 365 F.3d

---

[4] Rule 23(a) serves to ensure "the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart* at 349. The rule's four requirements – numerosity, commonality, typicality, and adequate representation – serve to "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

[5] Courts outside of the Fifth Circuit have found that a precise class definition is either unnecessary or less critical where certification is sought under Rule 23(b)(2). *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) (ascertainability is not required for a (b)(2) class action, as the composition of the class in such cases often is not readily ascertainable – *e.g.*, where plaintiffs attempt to bring suit on behalf of a shifting prison population); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir.1972) ("notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited"); *see also*

408, 413 (5th Cir. 2004) (internal quotation marks omitted). In this matter, Plaintiffs contend that the class definition "was appropriate in 1965 and remains so today,"[6] and ask that the Court formally redefine the class as "all Black children eligible to attend the public schools in St. Mary Parish and their parents and/or guardians." [ECF No. 39-1 at 7; *see also* ECF No. 39 at 1]. The Board contends that the definition urged by Plaintiffs is "imprecise and do[es] not clearly define the class in this matter." [ECF No. 40 at 3]. Specifically, the Board objects to the inclusion of "black students eligible to attend District schools, . . . as well as black parents of such students." [ECF No. 54 at 1]. The Board contends that the class should be redefined as "[B]lack students who attend schools in the St. Mary Parish School System operated by the St. Mary Parish School Board." *Id.* at 4.

1. **Students**

Plaintiffs contend that the class "has always included all Black children eligible to attend the St. Mary Parish public schools" and should continue to do so. [ECF No. 39-1 at 7]. Plaintiffs assert they have an interest in protecting the rights of those Black students "who are eligible to attend public schools in the parish, but – because of the actions of the District and/or third parties, like charter schools – are not enrolled or otherwise might be harmed." *Id.* As to charter school students specifically, Plaintiffs state they "may also seek to vindicate the right to an integrated

---

Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (illustrative examples of a Rule 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*") (emphasis added). While the Fifth Circuit has noted these decisions from other courts, it has not decided the issue. *Monumental Life* at 413.

[6] Again, the original class included all Black children residing in St. Mary Parish, who are either currently attending or are eligible to attend the public schools of St. Mary Parish, "all of whom are affected by the policy, practice, custom and usage" of the Board's operation of compulsory, bi-racial schools, and their parents. [ECF No. 17-4 at 3-4].

education for Black students in public charter schools." *Id.* at 7-8. Defendant argues that the original class definition should be modified so that it includes only those "[B]lack students who attend schools in the St. Mary Parish School System operated by the St. Mary Parish School Board." [ECF No. 40 at 1]. According to Defendant, inclusion of Black students who are eligible but do not attend its schools (e.g., students attending private schools, charter schools or who are homeschooled) is too vague and would potentially create a conflict of interest within the class. [ECF No. 40 at 5].

The Court concludes the Board's proposed definition is overly narrow, as it would exclude future students from protection from the violations alleged in Plaintiffs' complaint,[7] and it would exclude past students who would remain eligible to attend the Board's schools but for the fact that they have been expelled due to alleged discriminatory practices of the Board. On the other hand, the Court concludes that Plaintiffs' proposed definition is overly broad under modern jurisprudence addressing class action litigation. Defining the class as all Black students "eligible to attend" schools operated by the Board would include students attending private schools, charter schools and students who are home-schooled, yet there is no indication in the record that these

---

[7] While those students who may attend the Board's schools in the future are not capable of being specifically identified, this is not a bar to certification of a Rule 23(b)(2) class. *See* Fed. R. Civ. P. 23 advisory committee's note (1966) ("illustrative" examples of a Rule 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*") (emphasis added); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir.1975) ("Since it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained, . . . the 23(b)(2) class action is an effective weapon for an across-the-board attack against systematic abuse"), *abrogated on other grounds by Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978); *Morrow v. Washington*, 277 F.R.D. 172, 189-90 (E.D. Tex. 2011) (certifying a class to include those who may in the future be subject to the contested interdiction program); *ODonnell v. Harris Cty., Texas*, 2017 WL 1542457, at *3 (S.D. Tex. Apr. 28, 2017) ("The fact that members will flow in and out of the class as they are arrested and released . . . does not pose an obstacle to class certification"); *Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cty.*, 2002 WL 1033085, at *4 (N.D. Tex. May 21, 2002) (certifying class of current *and* future students harmed by "unequal treatment and/or the distribution of benefits"); *Biediger v. Quinnipiac Univ.*, 2010 WL 2017773, at *7 (D. Conn. May 20, 2010) (certifying class of present and future students subject to discrimination on the basis of sex).

students were ever considered to be a part of the original class.[8] More importantly, the Board has no authority over students who do not attend its schools, and it has not implemented any policies affecting the education of these students. Thus, the remedy requested by Plaintiffs – injunctive relief against the St. Mary Parish School Board – would have no impact upon students who do not attend the Board's schools.[9] *See e.g. Wal-Mart* at 360 ("Rule 23(b)(2) applies only when a single or declaratory judgment would provide relief to each member of the class."). Simply put, Plaintiffs in this suit do not have standing to assert claims on behalf of students who do not attend the Board's schools. *Id.* at 348 ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members"); *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir.2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed. 2011). Finally, to the extent Plaintiffs wish to include those students who are eligible to attend the Board's schools but do not because they have chosen to attend some other school due to the Board's allegedly discriminatory policies, the Court finds no need to explicitly include these students in the class definition. Because Plaintiffs seek a permanent injunction, relief for the class will necessarily provide the same relief to these students should they attend the Board's schools in the future.

---

[8] Indeed, charter schools did not even exist in Louisiana until the 1990s. *See e.g.* Amy Moore, *Brokering Education: A Study of Charter Receipt, Renewal, and Revocation in Louisiana's Charter Schools*, 11 LOY. J. PUB. INT. L. 343, 344 (2010).

[9] The Court is aware that Louisiana law provides that a charter school shall "[b]e subject to any court-ordered desegregation plan in effect for the city or parish school system." La. R.S. 17:3991(C)(3); *but see Banks Next friend of W.B. v. St. James Par. Sch. Bd.*, 757 Fed.Appx. 326, 329 (5th Cir.2018) (questioning whether "a state, through its statutes, can determine who is or who is not bound to respect a federal injunction"). The only charter school in St. Mary Parish of which the Court is aware is V.B. Glencoe Charter School, a Type 2 Charter School. *See e.g.* https://lacharterschools.org/about-charter-schools/find-a-charter-school/ (last visited Aug. 27, 2020). Type 2 charter schools operate pursuant to a charter "between the nonprofit corporation created to operate the school and the State Board of Elementary and Secondary Education [BESE]." La. R.S. § 17:3973; *see also id.* at §§ 3981, 3992. Likewise, students who are home-schooled are either under the authority of BESE or the state Department of Education. La. R.S. §§ 17:236-236.2, 232.

### 2. Parents

Plaintiffs contend parents should continue to be included as members of the class, arguing "Black parents unquestionably have the 'personal right' to vindicate their children's right to receive an 'education in a racially integrated school.'" [ECF No. 39-1 at 8 (quoting *Allen v. Wright*, 468 U.S. 737, 756 & n.21 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014))]. According to Plaintiffs, Black parents have standing because they must expend "additional time, effort, emotional energy, and financial resources" in protecting their children from the harmful effects of unequal treatment when, for example, the Board "unjustly subjects Black students to a disproportionate share of exclusionary discipline." *Id.* at 8. Plaintiffs further assert "Black parents are injured as taxpayers required to support the District, as parents experiencing the dignitary harm of having children attending schools tainted with the vestiges of discrimination, and, for many class members, as individuals who were themselves victims of past discrimination by the District." *Id.* at 9.

While the Board agrees parents may bring suit on behalf of their children, it argues "parents should not be certified as named plaintiff representatives in their own capacity nor be included as members of the class." [ECF No. 40 at 5]. According to the Board, parents do not satisfy Article III standing requirements because "they do not attend the Board's schools," and therefore they have not personally suffered an injury traceable to the Board's conduct sufficient to confer standing upon them in their own right. [ECF No. 40 at 6]. The Board additionally states that continuing to include "parents" in the class definition would be "ill-defined," as the term "parents" could be interpreted to include "biological parents, custodial and non-custodial parents, foster parents, grandparents, etc." [ECF No. 40 at 6].

The caselaw does not support the Board's argument. Numerous federal decisions have recognized that parents have standing to sue when government policies affect their children's education.[10] The rationale of these cases is that parents have a strong interest in the education of their children and suffer injury when their children experience unlawful discrimination. The Court agrees. Accordingly, the Court finds that the custodial adoptive or custodial biological parent(s) of the class of students set forth below satisfy Article III standing requirements.

For all of these reasons, the Court certifies a class defined as:[11]

> (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) the custodial biological or custodial adoptive parents of the foregoing students.[12]

---

[10] *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462, 466-67 (5th Cir. 2001) (parents and students had standing to challenge constitutionality of school district's "Clergy in Schools" volunteer counseling program); *Liddell v. Special Admin. Bd. of Transitional Sch. Dist.*, 894 F.3d 959, 965–66 (8th Cir. 2018) ("Parents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children."); *Alvarado v. El Paso Independent School Dist.*, 445 F.2d 1011 (5th Cir. 1971) (suit brought as class action "by fourteen Mexican-American parents on behalf of themselves and children, and all other children and parents in the El Paso, Texas Independent School District," alleging racial and ethnic discrimination in the school system in violation of the Fourteenth Amendment, was improvidently dismissed on the pleadings by the District Court for failure to state a claim); *Johnson v. Stuart*, 702 F.2d 193, 197 (9th Cir. 1983) (conclusion that students had standing to challenge constitutionality of provision of statute dealing with selection of school textbooks applied "equally to the parents, for they may assert claims of constitutional violation primarily affecting their children's education); *United States v. State of Tex.*, 356 F.Supp. 469, 473 (E.D. Tex.1972), *aff'd*, 495 F.2d 1250 (5th Cir.1974) ("students and parents residing in the Dallas District and aggrieved by state court interference in the desegregation order of a federal court possess the requisite standing"); *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (holding that non-profit corporation with parent members had standing to sue school district based upon injuries they could validly claim on behalf of their children); *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 225 n.9 (1963) ("The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain."); *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135, 1139 (5th Cir. 1982); *Davis v. Board of Ed. of North Little Rock, Ark. School District*, 674 F.2d 684, 689 (8th Cir. 1982).

[11] "District courts are permitted to limit or modify class definitions to provide the necessary precision." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).

[12] *See* La. Civ. Code arts. 178, 199, 221-223, 232, 234.

C.  **Rule 23(a) Factors**

1.  **Numerosity**

To satisfy the numerosity requirement, the purported class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981)); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir.1999) (a class consisting of 100 to 150 members is "within the range that generally satisfies the numerosity requirement"). However, courts are not to focus on numbers alone but must instead focus "on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[13] *Id.* at n.11 (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir.1981)); *see also In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013). Inclusion of future members in a class definition is a factor to consider in determining whether joinder is impracticable. *Pederson*, 213 F.3d at 868 n.11 (the fact that the proposed class included "unknown, unnamed future members" weighed in favor of certification).

To satisfy the numerosity requirement, Plaintiffs cite to statistics from the Louisiana Department of Education showing that as of February 2019 (the latest data available), there were 3,331 Black students enrolled in the St. Mary Parish schools.[14] [ECF No. 39-1 at 3]. Plaintiffs

---

[13] Other such relevant factors can include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, . . . the size of each plaintiff's claim," *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981), as well as the "judicial economy arising from the avoidance of a multiplicity of actions." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir.2013).

[14] *See* La. Dep't of Educ., *Multiple Statistics By School System For Total Public Students – Feb. 1, 2019*, available at https://www.louisianabelieves.com/docs/default-source/data-management/feb-2019-multi-stats-(total-by-site-and-school-system).xlsx?sfvrsn=e4aa9f1f_3 at cell I57 (last visited Aug. 21, 2020).

additionally contend "the nature of the case and the fluid nature of the class" support the numerosity element, as class members periodically move into and out of the school district, and each year, due to age, new children become eligible to attend the Board's schools while others become ineligible. *Id.* Plaintiffs additionally note that potential class members might be reluctant to sue individually for fear of retaliation. *Id.* (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir.1999) (district court reasonably presumed that potential class members might be unwilling to sue individually for fear of retaliation at their jobs, which was a factor supporting the numerosity element).

The Court finds that given the size of the class, the difficulty in identifying all class members, and the fact that the class will necessarily include unknown, unnamed future members, the numerosity requirement has been met and joinder of all members would be impracticable.

### 2. Commonality

The Court must next consider whether there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) requires that the putative class members' claims depend upon a "common contention" that is of such a nature that it is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 349, 350; *see also Yates*, 868 F.3d at 361; *In re Deepwater Horizon*, 739 F.3d at 810–11 ("To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class members' claims"). What matters for Rule 23(a) is not the existence of common questions – rather, it is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart* at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. REV. 97,

132 (2009)); *see also Yates* at 361. In sum, a single contention regarding the class members' injury is sufficient to satisfy Rule 23(a)(2), as long as the party seeking certification can show that this contention is common to all class members, is central to the validity of their claims, and is capable of class-wide resolution, even where the resulting injurious effects (*i.e.*, the damages) are diverse. *In re Deepwater Horizon*, 739 F.3d at 810–11.

In this matter, the common contention alleged by the Plaintiff Class is that the Board "operated *de jure* segregated schools for years and has failed to fulfill its affirmative and continuing duty to take whatever action may be necessary to create a unitary, nonracial system." [ECF No. 39-1 at 5 (internal quotation marks omitted) (quoting *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 440 (1968))]. The common contention identified by the Plaintiff Class – the children/students' ability to receive an education in a racially integrated school – is "beyond any doubt, not only judicially cognizable but, as shown by cases from *Brown v. Board of Education* . . . to *Bob Jones University v. United States* . . ., one of the most serious injuries recognized in our legal system." *Allen*, 468 U.S. at 756. As decades of jurisprudence have shown, this common wrong calls for common, systemic relief. Indeed, as the history of this case shows, its classwide treatment to date has generated "common answers" which will ultimately drive the resolution of the case. [*See e.g.* ECF No. 17-4 at 20-22, 28-30, ECF No. 30-5 at 2; ECF No. 1-4 at 6-12; ECF No. 1-13].

### 3. Typicality

Rule 23 requires the claims of the representative parties to be "typical" of the claims of the class.[15] Fed. R. Civ. P. 23(a)(3). Typicality focuses on "the similarity between the named plaintiffs'

---

[15] As noted by the Supreme Court:

> [T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a

legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *see also Ibe v. Jones*, 836 F.3d 516, 528–29 (5th Cir. 2016). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* "The inherent logic of the typicality requirement is that a class representative will adequately pursue her own claims, and if those claims are 'typical' of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well." 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:28 (5th ed. 2019). As described by one court:

> Typicality requires a showing that the claims of the named plaintiffs are in fact those asserted as the common class claims. In this sense, typicality is commonality addressed from the perspective of the named plaintiffs. Commonality requires showing that, in fact, all members of the proposed class share a common claim, the validity of which can be determined on a classwide basis. Typicality requires showing that, in fact, the proposed representatives have that claim. Often, once commonality is shown typicality will follow as a matter of course.

*M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013).

In this matter, the claims of the Plaintiff Class Representatives are typical of those of the class. All seek relief from the Board's "operation of a *de jure* segregated school system and the unremedied vestiges of that unconstitutional segregation." [ECF No. 39-1 at 6]. The typicality requirement is satisfied because each member of the Class seeks to enjoin the Board from the continuation of such practices. Accordingly, the Court finds that the typicality requirement is satisfied in this case.

---

> class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Wal-Mart*, 564 U.S. at 350 n.5 (quoting *Falcon*, 457 U.S. at 157 n.13).

4. **Adequate Representation**

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class."[16] Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir.2001). More specifically, adequacy addresses: (1) the "zeal and competence" of the representatives' counsel"[17]; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees";[18] and (3) "the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'"[19] *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (alteration in original) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)).

The Board does not contest "the zeal and competence of the representatives' counsel." [ECF No. 40 at 8]. Plaintiffs' attorneys have extensive experience litigating desegregation cases, [*see* ECF No. 39-1 at 10], and the Court has no concerns regarding the qualifications of counsel that would defeat the adequacy of representation requirement. However, the Board argues the declarations of the Class Representatives (Tiffany Dupas and George Boston) "do not appear to demonstrate that they would be adequate representatives," because it is "unclear whether Ms.

---

[16] Like typicality, adequacy of representation also tends to merge with commonality, though it "also raises concerns about the competency of class counsel and conflicts of interest." *Wal–Mart*, 564 U.S. at 350 n.5 (quoting *Falcon*, 457 U.S. at 157 n.13).

[17] "Adequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the job." NEWBERG at § 3:54.

[18] "Class representatives must satisfy the court that they, and not counsel, are directing the litigation. To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)).

[19] "Class representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *In re Deepwater Horizon*, 785 F.3d at 1015 (internal quotation marks omitted).

Dupas and Mr. Boston are truly aware of what desegregation cases entail and/or the ultimate goal of this case – eliminating the vestiges of the prior *de jure* segregated system to the extent practicable in the Board's schools."[20] [ECF No. 54 at 8]

The Declaration submitted by Tiffany Dupas attests that she, her mother, her grandparents, and her seven children all attended or are attending St. Mary Parish schools, beginning in kindergarten. [ECF No. 39-2 at 1]. Currently, five of Ms. Dupas' children attend the Board's schools. She has had some children in advanced classes, some have received special education services, all have taken the bus to school, some have played sports, and some have been on the dance team and cheerleading squad. Ms. Dupas' has attended parent teacher organization meetings and is active in her community. Ms. Dupas' mother and grandmother attended historically Black schools in St. Martin Parish during segregation. Ms. Dupas states she chose to serve as a class representative because she wants the Parish's Black children "to receive the same rights as other children in regard to their education." *Id.* at 2, ¶ 8. Ms. Dupas further states she is "committed to representing all class members to the best of [her] ability by staying informed, serving as a liaison between the class and [its] lawyers, and making decisions with [the class'] best interests in mind." *Id.* at ¶ 9. Mr. Boston attests that his children have attended St. Mary Parish schools for sixteen years. [ECF No. 39-3 at 1]. Three have graduated and one is in high school. His children have taken the bus to school, participated in clubs and sports, and Mr. Boston has served on some of the booster clubs supporting his children's activities. Mr. Boston declares that he is committed to

---

[20] The Board cites *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) in support of its argument. [ECF No. 40 at 9-10 n. 28]. *Berger* held that the Private Securities Litigation Reform Act's requirement "that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation . . . raises the standard adequacy threshold." *Id.* at 483 n.18. Several courts have found that *Berger*'s heightened adequacy standard does not apply outside of the securities context. *See* NEWBERG at § 3.67 n.10 (collecting cases).

representing all class members to the best of his ability by staying informed, serving as liaison between the class and its attorneys, and making decisions with the best interest of the class in mind.

The Court finds the Named Plaintiffs meet the adequacy requirements. "Class representatives are merely asked to have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants." *Rubenstein v. Collins*, 162 F.R.D. 534, 538 (S.D. Tex. 1995); *see also Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 335 (E.D. Tex. 2019), *aff'd*, 807 Fed.Appx. 320 (5th Cir.2020). Here, the Plaintiff Class Representatives are members of the class, have the same interest as other members of the class in remedying the harm caused by the Board's unconstitutional segregation, are knowledgeable about the schools, and have each affirmed their willingness to undertake the duties of representing the class.[21] Accordingly, the Court finds the class representatives will fairly and adequately represent the interests of the class.

**D.     Rule 23(b)(2)**

A class that satisfies all of the requirements of Rule 23(a) must also satisfy at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23; *see also Vizena v. Union Pac. R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004). Here, Plaintiffs assert this matter is properly brought under Rule 23(b)(2), which permits a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A Rule 23(b)(2) class action focuses "on cases where broad, class-wide injunctive or declaratory relief is necessary." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). It applies "only

---

[21] Further, the Court may re-evaluate class certification and adequacy of representation before final judgment and may take appropriate steps if inadequacy of representation is found. *See e.g. Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617-18 (5th Cir. 1983); *Bywaters v. United States*, 196 F.R.D. 458, 468 (E.D. Tex. 2000).

when a single injunction or declaratory judgment would provide relief to each member of the class," and it does not permit class certification where "each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart Stores,* 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (quoting Nagareda, 84 N.Y.U.L. REV. at 132). Because the relief affects the entire class at once, a class certified under Rule 23(b)(2) is a "mandatory" class, with no opportunity for class members to opt out, and the trial court is not obliged to afford class members notice of the action. *Id.* at 361-62. "'[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." *Id.* at 361 (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997)).

The proposed class, as modified by the court, alleges class-wide racial discrimination – *i.e.,* that the Board continues to operate its schools in a manner that violates the rights of Black students under the Equal Protection clause of the Fourteenth Amendment – and is thus precisely the type of class for which Rule 23(b)(2) was created. Accordingly, the Court finds that certification of a (b)(2) class for injunctive relief is appropriate.

E.  **Class Counsel**

Rule 23(g) requires that a court certifying a class must appoint class counsel. In appointing class counsel, a court must consider:

>   (i) the work counsel has done in identifying or investigating potential claims in the action;
>
>   (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

>   (iii) counsel's knowledge of the applicable law; and
>
>   (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). Section (g)(4) requires that "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The Court finds that counsel for the named plaintiffs fulfill these requirements. The NAACP Legal Defense and Educational Fund, Inc. ("LDF") has been involved in this case for years and is highly qualified to adequately represent the Plaintiff Class. LDF won the landmark case, *Brown v. Board of Education*, 347 U.S. 483 (1954) and continues to litigate the many desegregation cases across the country that came in its wake. LDF has a "corporate reputation for expertness in presenting and arguing the difficult questions of law that frequently arise in civil rights litigation." *NAACP v. Button*, 371 U.S. 415, 422 (1963). Further, each of the individuals enrolled as counsel of record for the Plaintiff Class have extensive experience litigating desegregation cases. [*See* ECF No. 39-1 at 10]. Counsel for the named plaintiffs have demonstrated familiarity with the applicable law and dedication to this case. They have shown they will devote substantial resources to representing the class and pursuing this litigation. Accordingly, the Court concludes that counsel for named plaintiffs will fairly and adequately represent the interests of the class and appoints them as class counsel for the class certified in this Ruling.

### III.
#### CONCLUSION

For the reasons set forth herein, the Motion for Class Recertification [ECF No. 39] is GRANTED, and the Court certifies the following class for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2):

>   (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such

schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) the custodial biological or custodial adoptive parents of the foregoing students.

THUS DONE in Chambers on this ___8TH___ day of September, 2020.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE