# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **CLAUDE BOUDREAUX, ET AL.** | **CIVIL ACTION NO. 65-11351** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **SCHOOL BD. OF ST. MARY PARISH, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

## MINUTES OF ORAL ARGUMENT AND RULING

On February 7, 2022, the undersigned magistrate judge conducted oral argument from 10:30 a.m. to 11:30 a.m.[1] on two pending motions: (1) Motion for Protective Order [Doc. 95] filed by the St. Mary Parish School Board, and (2) Motion to Compel [Doc. 99] filed by the plaintiffs. The plaintiffs responded to the Motion for Protective Order [Doc. 98], and the School Board responded to the Motion to Compel [Doc. 101]. In response to both motions, the United States of America filed a Position Statement regarding the dispute at issue. [Doc. 100]. Participating in the argument were Gideon Carter III, Michaele Turnage Young, Anuja Thatte, and Ashok Chandran for the plaintiffs; John Blanchard, Pamela Wescovich Dill, and Timothy Riveria for the School Board; and Ceala Breen-Portnoy, Jerry Edwards, and LeighAnn Rosenberg for the United States.

---

[1] Statistical time: 1 hour.

Having taken the matter under advisement at the conclusion of the conference, the Court now makes the following findings.

### A.     Legal Standards

Federal Rule of Civil Procedure 26(b)(1) allows a party to obtain discovery "regarding any nonprivileged matter relevant to any party's claim or defense," as follows:

> (b) Discovery Scope and Limits
>
> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  This Court has explained that "[i]n the discovery context, 'relevancy is broadly construed and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Quality Constr. & Prod., LLC v. Collins*, 2021 WL 3520626, at *2 (W.D. La. Aug. 10, 2021).

A party seeking a Rule 26(c) protective order prohibiting deposition testimony and document production must establish good cause and a specific need for

protection. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003), *citing Landry v. Air Line Pilots Ass'n,* 901 F.2d 404, 435 (5th Cir.1990). "Good cause" exists when justice requires the protection of "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See Landry*, 901 F.2d at 435, *quoting* Fed. R. Civ. P. 26(c). The burden is upon the movant to prove the necessity of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citations omitted). If both of these requirements are proven, the court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense." Fed R. Civ. P. 26(c). If a district court denies a motion for a protective order in whole or in part, the court may, "on such terms and conditions as are just, order that any party or other person provide or permit discovery." *Id.* In deciding whether to grant a motion for a protective order, the court has significant discretion. *Ferko*, 218 F.R.D. at 133, *citing Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir.1985).

On May 18, 2021, plaintiffs served a Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) ("30(b)(6) Notice") on the School Board. The School Board provided a written response, which included objections and identification of topics

3

to which it had no objection.  Since that time, the parties have attempted to resolve their disputes regarding the 30(b)(6) topics, however, as of this date, they have been unable to resolve three main disputed topics.  In its Motion for Protective Order, the School Board seeks protection from the following: (1) topics related to special education, which it contends are beyond the scope of this litigation; (2) topics that are vague and overly broad by inclusion of language that topics "include but are not limited" to certain areas of inquiry; and (3) a number of the 30(b)(6) topics, which allegedly span an unknown period of time or seek information from the time period when this case was initiated in 1965.

### 1. Special education classes

In considering whether the vestiges of *de jure* segregation have been eliminated to the extent practicable, this Court must look "to every facet of school operations" including student assignment, faculty, staff, transportation, facilities, and extracurricular activities (known as the "*Green*" factors).  *Green v. County School Bd. of New Kent County, Va.,* 391 U.S. 430, 435–37, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).  *See also Freeman v. Pitts*, 503 U.S. 467, 492, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992).  The Supreme Court has made clear that the "*Green* factors" are not intended to be a "rigid framework," *Freeman*, 503 U.S. at 492–93, but are among the most important indicia of a segregated system," *Swann v. Charlotte-*

*Mecklenburg Bd. of Educ.*, 402 U.S. 1, 18 (1971), and they are often "intertwined or synergistic in their relation, so that a constitutional violation in one area cannot be eliminated [without remedies in another]." *Freeman*, 503 U.S. at 497.

In addition to the *Green* factors, federal courts may examine other factors, such as "administration attitudes," *Keyes*, 413 U.S. at 196, and quality of education, including graduation rates, in-grade retention, and discipline, *Freeman*, 503 U.S. at 492–93. Importantly, in *Johnson v. Jackson Par. Sch. Bd.*, 423 F.2d 1055, 1056 (5th Cir. 1970), the Fifth Circuit made clear that the decisions of the Supreme Court and this Court required the elimination of not only segregated schools, but also segregated classes within the schools.

With those legal precepts in mind, the School Board seeks protection from disclosure of discovery related to the general implementation of its special education program, arguing that discovery related to special education is not within the scope of this case and is outside the scope of Rule 26(b)(1). The School Board contends that its general operation of special education has not been a matter of concern until the plaintiff's May 2021 discovery requests. The School Board argues against what it views as an audit of the School Board's compliance with the Individuals with Disabilities Education Act ("IDEA"), enacted in 1975, and further argues that the plaintiffs are attempting to conduct a top-down review of the School Board's

5

evaluation and provision of special education of services to all its students with disabilities. The School Board contends that such a review is not appropriate at this juncture, nearly a half century after the filing of this case.

The plaintiffs and the United States counter that the School District has a duty to operate all areas of student assignment in a racially non-discriminatory manner, that is, when identifying students as gifted; when assigning disciplinary consequences that involve exclusion from classrooms; or when identifying students as needing the provision of special services, including special education. The plaintiffs argue that the topics outlined in the Rule 30(b)(6) deposition notice are relevant to the Court's analysis of the *Green* factors and will allow the Court to determine whether all areas of student assignment – including special education classes – are operated in a racially non-discriminatory manner.

The issue of the scope of unitary status appears to have been disputed by the parties since the January 16, 2020 Status Conference conducted with the district judge. At that conference, the district judge stated:

> The Court: There was also some mention in the status report. It appears to be a dispute over the scope of unitary status and whether the Court should consider educational quality and discipline as additional areas in which the Court has to make a determination of unitary status. Is that correct?[2]

---

[2] *See* Transcript of January 16, 20202 Status Conference, Doc. 55, at p. 19, ll. 15-19.

After listening to the arguments of the parties – which are similar to the arguments of the parties in the briefing herein, albeit in a more general way -- the district judge discussed the need to swiftly resolve this case without opening areas of inquiry that were not considered when the case was originally filed, as follows:

> THE COURT: And I'm sure the district has a position on this, but my view on this is that this case will be resolved by a determination of unitary status based on the five *Green* factors, and if some of these other issues may be relevant to a *Green* factor, if the parties don't reach an agreement, you know, that's a different question than an independent unitary determination on these two additional areas. I'm saying this because I believe, based on my review of the historical pleadings in this case, that those two areas were not considered by the Court as an independent basis for a unitary status determination.
>
> There was a 1975 order from Judge Putnam acknowledging the most recent status report and indicating that the parties needed to object to unitary status, and, in default, that he was going to declare the district unitary, that it had achieved unitary status. No other further order was issued from that. I think that's what led Judge James at one point -- and, Heather, you can correct me if I'm wrong because you know the history that much better. Based on that 1975 order, he had an original order declaring the district unitary and then that was withdrawn.
>
> I don't want to change the face of this case going forward. This is a 50-year-old case and I think it is important that we reach a point where we have, as the Supreme Court and the Constitution dictates, eliminated the vestiges of segregation from the school district, but, you know, the test also refers to as practicable.
>
> You know, in a 50-year-old case, we need to get to an end here, and I know Judge James -- this is not -- this work plan was formulated under Judge James, and what I appreciate from that work plan is that it is very aggressive. It puts us on a track to get this resolved swiftly. And that is something that the parties had put together. I don't want to get in the

7

way of that, but what I do want to do is make sure that we stay with that plan moving forward.

So that's my ruling as far as what we're going to determine as far as making a unitary status determination. We're going to stay with the five *Green* factors because I believe that that's historically where this case has focused. These other issues that were raised, to the extent that they may be relevant to a *Green* factor, you know, the parties are free to argue that, but the Court's ultimate determination will be the five *Green* factors.[3]

In discussing these issues, the School Board pledged to cooperate in the discovery process, barring any "unforeseen objection:"

John Blanchard for the School Board: And this may allay Mr. Ross's concerns, that while the school board does have objections about these two ancillary factors, we will cooperate in discovery. We will let them propound whatever requests they have on discipline and quality of education. Barring any unforeseen objection, we will fully cooperate in discovery so that this issue may be fully presented to the Court at an appropriate time.

Notwithstanding the Court's adherence to the *Green* factors and the overall interests of judicial efficiency, the district judge made clear that, for the purposes of discovery, evidence not directly related to the *Green* factors – to the extent it is relevant – would be allowed:

THE COURT: And I may have misunderstood the concern from the plaintiffs. **You know, even if this wouldn't be an independent *Green* factor, it may be relevant to that, and the fact that it's relevant, they're entitled to discovery**.[4]

---

3 *Id.* at pp. 22-24.
4 *Id.* at pp. 28-29.

8

After considering the arguments of the parties, and specifically considering the posture of this case, the Court agrees that the topic of special education is relevant to the analysis of the *Green* factors. The Court further finds that the School Board has not shown good cause to limit the discovery, that is, the School Board has not shown that the plaintiffs' requests are annoying, embarrassing, oppressive, or unduly burdensome. Indeed, considering that the St. Mary Parish school system has not attained unitary status, any current displacement disparities in special education classes entitles the plaintiffs to a presumption that the disparities are causally related to prior segregation. The burden then shifts to the School Board to prove that such disparities are not due to impermissible segregation. *See Vaughns by Vaughns v. Board of Educ. of Prince George's County*, 758 F.2d 983, 991 4th Cir. 1985), *citing Dayton Board of Education v. Brinkman,* 443 U.S. 526, 537, 99 S.Ct. 2971, 2978, 61 L.Ed.2d 720 (1979) and *United States v. Gadsden County School District,* 572 F.2d 1049, 1050 (5th Cir.1978).

Because the Court must consider "every facet of school operations" the composition of special education classes is relevant to the Court's analysis of the *Green* factors, which includes an examination of student assignments. Thus, regardless of whether such information is ultimately considered admissible for the purpose of an examination of the *Green* factors, under Rule 26(b), the information

regarding special education classes may be relevant to the plaintiffs' claims. Considering the foregoing, IT IS ORDERED that the Motion for Protective Order is DENIED, and the plaintiffs' Motion to Compel is GRANTED.

### 2. Topics that are vague and overly broad by inclusion of language that topics "include but are not limited" to certain areas of inquiry

The School Board objects to a number of the plaintiffs' 30(b)(6) topics on grounds they include language that makes it impossible for a deponent to be properly prepared to testify on behalf of the School Board because they include language that topics "include, but [are] not limited to" certain areas and/or other similar terms that lack specificity.

The Court rejects the blanket objection of the School Board but nevertheless finds that, with respect to the following topics, the requests are overly broad and/or vague. Accordingly, IT IS ORDERED that the plaintiffs shall more specifically tailor the following requests:

> **General Topic 1.** The District's policies, practices, efforts to comply with, and actual compliance – or lack thereof – with state and federal laws that prohibit racial discrimination, including but not limited to the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.
>
> **General Topic 5.** The District's policies, practices, efforts to comply with, and actual compliance - or lack thereof - with its desegregation obligations, including, but not limited to, the orders of the court in this lawsuit.

**Faculty and Staff Topic 16.** Defendant's efforts, including any policies and practices, to ensure that employment procedures comply with the Desegregation Order and its affirmative desegregation obligations.

**Faculty and Staff Topic 17.** All facts and reasons that would support an assertion by Defendant that it has complied with the Desegregation Order and its affirmative desegregation obligations and eliminated the vestiges of its past de jure discrimination to the extent practicable with respect to faculty and staff assignment.

**Faculty and Staff Topic 18.** All other issues concerning faculty and staff previously raised by the parties in their motions and correspondence.

**Facilities Topic 6.** All facts, information, and documents that would support an assertion by Defendant that it has complied with the Desegregation Order since it was entered and that the Defendant has eliminated the vestiges of its past de jure discrimination to the extent practicable with respect to facilities.

### 3. Relevant Time Period

The parties dispute the scope and time length of requests from the plaintiffs. Some include requests from 1965 forward, others seek information from the last "five (5)" years, from more than three (3) years ago, or from an unspecified length of time. The School Board has attempted to provide discovery responses from the 2018-19 school year forward, arguing that anything before that time period can only be relevant for the purposes of comparing where the School Board was in the Reports already filed into the record when it was on the cusp of unitary status in 1975. The

11

School Board argues that the Fifth Circuit's long-standing minimum of three years of compliance is the relevant time period for any assessment of the *Green* factors, and that, therefore, the reasonable time period for the discovery requests should be three years. *See, e.g., Flax v. Potts*, 915 F.2d 155, 158 (5th Cir. 1990) ("A district court in this circuit does not dismiss a school desegregation case until at least three years after it has declared the system unitary."), *citing Youngblood v. Board of Pub. Instruction,* 448 F.2d 770, 771 (5th Cir.1971). *See also Thomas v. Sch. Bd. St. Martin Par.*, 544 F. Supp. 3d 651 (W.D. La. 2021) ("The Fifth Circuit has held that a period of three years without circumstances adverse to desegregation is adequate to show a reasonable period of time acting in good faith.").

The plaintiff argues that if the School Board can raise, in its defense, time periods that pre-date the 2018-19 school year, the plaintiffs should be permitted to seek discovery into those time periods. The efforts of the parties to enter into a stipulation regarding time periods have been unsuccessful.

After considering the arguments of the parties, the Court finds that the discovery in this matter may include the exchange of information which allows for a comparison between where the School Board was in 1975 and where it is now; consequently, to that extent, the time period of the requests may exceed three years. However, for all other requests, as a general rule, the discovery should only cover

the time period from the 2018-19 school year going forward, unless any party can show a particular relevancy not addressed herein with respect to an earlier time period.

### 4. Stay

Indicating that it plans to appeal the instant Ruling, the School Board moved to stay the deadlines contained in the Fifth Amended Plan of Work [Doc. 88] until such time as the district judge has ruled on the appeal. The request for a stay was GRANTED, but with the clarification that only the discovery that is the subject matter of the instant ruling is STAYED pending a ruling by the district judge on appeal. All scheduled depositions that are unrelated to the subject matter of the instant Ruling are permitted to go forward.

IT IS ORDERED that for all discovery that has been ordered produced herein, the School Board shall supplement its responses to the plaintiffs' discovery requests within thirty (30) days of the date of the conference.

**THUS DONE AND SIGNED** this 9th day of February, 2022.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE