UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CLAUDE BOUDREAUX, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> SCHOOL BOARD OF ST. MARY PARISH, *et al.*, <br><br> Defendants. | Civil Action No. 6:65-cv-11351 <br><br> JUDGE ROBERT R. SUMMERHAYS <br><br> MAGISTRATE JUDGE CAROL B. WHITEHURST |

### MEMORANDUM IN SUPPORT OF LOUISIANA'S MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*

The State of Louisiana seeks leave to participate as *amicus curiae* to the same extent as the United States. The Court should grant Louisiana's motion for two reasons. First, Louisiana's *amicus* participation will assist this Court by providing a unique perspective as the sovereign authority over the School Board and dual sovereign with the United States—relationships that no other party can represent. Second, granting Louisiana's motion will avoid exacerbating the risks to federalism inherent in every school desegregation case.

### BACKGROUND

In 1965, Plaintiffs brought this action against the St. Mary Parish School Board to desegregate the public schools in the St. Mary Parish School District. *See* "Paper" Docket Sheet 1, ECF No. 1.[1] At that time, the Louisiana District Attorney for

---

[1] This memorandum uses the page numbers in the "blue" header applied by the ECF system when the document was filed.

1

the Sixteenth Judicial District represented the School Board. *See id.* Four years later, the United States joined the case as *amicus curiae*. *See id.* at 1, 5. The parties actively litigated the case for eighteen years, but in 1983, the case fell dormant. *See id.* at 11. For the next thirty-five years, neither party nor the United States took any action in the case. That changed in 2018 when the parties and the United States each enrolled new counsel. S*ee* Mots. to Enroll, ECF Nos. 7, 8, 9, 10, 15.

In 2021, the Court limited the United States' *amicus* role. The Court (1) directed the parties to send all "formal" and "informal" discovery to the United States "at the same time" that they send it to each other and allowed the United States (2) to participate in site visits and question School District employees, (3) propound informal discovery, (4) observe depositions and obtain transcripts "at the same time and . . . manner" as the parties, (5) "[f]ile position statements and responses," (6) "[a]ppear at conferences and hearings before the Magistrate Judge or District Judge," and (7) "[p]articipate in conferences and hearings to the extent directed by the Court." Order, ECF No. 74. Three months ago, the Court extended the dispositive motion deadline to September 2022. *See* 5th Am. Plan of Work, ECF No. 88.

Last month, the School Board appealed to this Court a decision of the Magistrate Judge, denying the School Board's motion for a protective order and granting Plaintiffs' motion to compel discovery in the area of special education. *See* Obj. to Magistrate's Ruling, ECF No. 109. The appeal implicates continued federal court jurisdiction over a state governmental entity, arguing that "brand-new issues" like special education "could [not] possibly be vestiges of the prior *de jure* segregated

2

system" and that this Court has demonstrated a "reluctan[ce] to treat this [case] like an entirely new case and introduce new issues that are not relevant to the process of removing the [School] Board from the desegregation supervision of this Court." Def's Reply to Pls.' Opp'n & United States' Position Statement in Response to Def's Obj. to Magistate's Ruling, ECF No. 118 at 7.

## ARGUMENT

I. **GRANTING LOUISIANA'S MOTION WILL ASSIST THE COURT BY PROVIDING A UNIQUE PERSPECTIVE THAT NO OTHER PARTY CAN REPRESENT AND WILL PROTECT FEDERALISM.**

The Court has "inherent authority" to allow Louisiana to participate as an *amicus* that "derive[s] from Federal Rule of Appellate Procedure 29" and is unconstrained by either the Federal Rules of Civil Procedure or the Local Rules. *Pegasus Equine Guardian Ass'n v. U.S. Army*, No. 2:17-CV-0980, 2019 WL 362598, at *1 (W.D. La. Jan. 28, 2019) (quoting *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008)). Under Rule 29, courts of appeals maintain the balance between the States and the federal government by granting each government the same level of automatic participation. *See* Fed. R. App. P 29(a)(2) ("The United States . . . or a state may file an amicus brief without the consent of the parties or leave of court."). In contrast, "[a]ny other amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing . . . ." *Id.*

The "purpose" of an *amicus curiae* in the district court is to "assist the court without duplicating or advocating for a party to the suit." *Pegasus Equine Guardian Ass'n*, 2019 WL 362598, at *1. Allowing Louisiana to participate as *amicus curiae* to the same extent as the United States in this case fulfills that purpose. Louisiana's

3

sovereign authority over the School Board and its dual sovereign relationship with the federal government—relationships that no other party shares—give Louisiana "unique information [and] perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *See In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) (quoting *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997)).

As a State, Louisiana has a sovereign interest in this *federal* case against a *Louisiana* school board to desegregate a *Louisiana* school district that no other party can represent. Providing public education is one of Louisiana's "core" or "apex" sovereign responsibilities. *See Horne v. Flores*, 557 U.S. 433, 448 (2009) (recognizing "public education" as an "area[] of core state responsibility"); *Wisconsin v. Yoder*, 406 U.S. 205, 213 (1972) ("Providing public schools ranks at the very apex of the function of a State.").

Louisiana exercised its sovereign responsibility over education by creating the St. Mary Parish School Board as a local political subdivision of the State, endowed with authority to make policies in the best interest of students in the St. Mary Parish School District. *See, e.g.*, La. Const. art. VIII § 9(A) ("The legislature shall create parish school boards and provide for the election of their members."); *id.* § 44 (defining "political subdivision" as "including a school board"); La. Rev. Stat. § 17:81(A)(1) ("Each local public school board shall serve in a policymaking capacity that is in the best interests of all students enrolled in schools under the board's jurisdiction."). And Louisiana's citizens elect the School Board's members. *See* La. Rev. Stat. § 17:52(A) ("Members of parish school boards shall be elected at the congressional elections.").

This case, like all school desegregation cases, "eviscerates" Louisiana's authority over its own school district and subverts the State's entire body of law that would otherwise govern. *See In re Gee*, 941 F.3d 153, 167 (5th Cir. 2019) ("[S]tructural reform decree[s] eviscerate[] a State's discretionary authority over its own programs and budgets" and "result in the entire subversion of the legislative, executive and judicial powers of the individual states." (quoting *Missouri v. Jenkins*, 515 U.S. 70, 128–29 (1995) (Thomas, J., concurring))). And every remedy that the Court grants directing the School Board to act or refrain from acting effectively enjoins the State of Louisiana. *See United States v. Overton*, 834 F.2d 1171, 1177 (5th Cir. 1987) (explaining that school desegregation cases "ask[] to enjoin . . . state government").

The Court, of course, has authority to remedy a constitutional violation, but that authority does not last forever. *Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 387 (5th Cir. 2014) ("[D]ecrees in school desegregation cases 'are not intended to operate in perpetuity . . . .'" (quoting *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 248 (1991))). Once "having righted the wrong," a court's jurisdiction ends. *United States v. Overton*, 834 F.2d 1171, 1177 (5th Cir. 1987). Retaining jurisdiction implicates "federalism." *Id.*; *accord Flax v. Potts*, 915 F.2d 155, 159 (5th Cir. 1990) ("[B]ecause retained supervision restricts state government, the principles of federalism require that federal courts draw the limits which they 'impose on the state no more tightly than the limits of the Constitution.'" (quoting *Overton*, 834 F.2d at 1177); *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006) (declining

5

"permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism").

Exacerbating the ever-present risk of upsetting federalism's careful balance between state and federal powers inherent in every school desegregation case, *see Overton*, 834 F.2d at 1177; *Flax*, 915 F.2d at 159, Plaintiffs ask after decades of silence that the Court reach beyond constitutional limits to supervise new issues that are not "traceable, in a proximate way," to the School Board's 1965 stipulation to liability. *See Freeman v. Pitts*, 503 U.S. 467, 491 (1992); Def's Answer, September 22, 1965, ECF No. 17-4 at 11 ("admit[ting] that prior to the filing of this suit bi-racial schools did exists in St. Mary Parish"). If this Court denies the School Board's objections to the Magistrate Judge's ruling, its expanded supervision of the School Board will restrict the authority that the State has given to the School Board and thus restrict the State "more tightly than the limits of the Constitution." *See Overton*, 834 F.2d at 1177; *Flax*, 915 F.2d at 159.

This Court should prevent further unbalance to federalism by allowing Louisiana to participate as *amicus curiae* to the same extent as the United States. *See Gregory v. Ashcroft*, 501 U.S. 452, 457–58 (1991) ("As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government" in which their power is "balance[d]." (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985))). Just like the United States has an interest in enforcing federal law, *see* Order 1, ECF No. 74, Louisiana has an interest in enforcing state law and remaining free from federal overreach. Allowing

6

representation of the federal interest without the state interest in federal court further unbalances state and federal powers.

## CONCLUSION

Granting Louisiana's motion will give the Court access to Louisiana's "unique information [and] perspective" as the sovereign authority over the School Board and dual sovereign with the federal government, *see In re Halo Wireless, Inc.*, 684 F.3d at 596 (quoting *Ryan*, 125 F.3d at 1063), and will avoid exacerbating the already-present risks to federalism. For these reasons, the Court should exercise its inherent authority to grant Louisiana leave to participate as *amicus curiae* to the same extent as the United States.

Dated April 5, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　JEFF LANDRY
　　　　　　　　　　　　　　　　　　　　ATTORNEY GENERAL

　　　　　　　　　　　　　　　　　　　*/s/ Elizabeth B. Murrill*
　　　　　　　　　　　　　　　　　　　Elizabeth B. Murrill, T.A. (LSB 20685)
　　　　　　　　　　　　　　　　　　　　Solicitor General
　　　　　　　　　　　　　　　　　　　Morgan Brungard*
　　　　　　　　　　　　　　　　　　　　Assistant Solicitor General
　　　　　　　　　　　　　　　　　　　LOUISIANA DEPARTMENT OF JUSTICE
　　　　　　　　　　　　　　　　　　　ATTORNEY GENERAL'S OFFICE
　　　　　　　　　　　　　　　　　　　1885 N. 3rd St.
　　　　　　　　　　　　　　　　　　　Baton Rouge, LA 70802
　　　　　　　　　　　　　　　　　　　(225) 326-6766
　　　　　　　　　　　　　　　　　　　Murrille@ag.louisiana.gov

　　　　　　　　　　　　　　　　　　　*Counsel for the State of Louisiana*

　　　　　　　　　　　　　　　　　　　**Pro Hac Vice forthcoming*