UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**CLAUDE BOUDREAUX, ET AL.**      **CASE NO. 6:65-CV-11351**

**VERSUS**      **JUDGE ROBERT R. SUMMERHAYS**

**SCHOOL BOARD OF**      **MAGISTRATE JUDGE WHITEHURST**
**ST. MARY PARISH, ET AL.**

## RULING ON OBJECTIONS

Before the Court is an "Objection to Magistrate's Ruling," filed by Defendant, the St. Mary Parish School Board ("the Board").[1] The Plaintiff Class ("the Plaintiff Class" or "Plaintiffs") has filed an Opposition to the Board's Objection, the United States of America, as amicus curiae, has filed a Position Statement, and the Board has filed a Reply.[2] For the reasons that follow, the Board's Objection is SUSTAINED IN PART and OVERRULED IN PART.

### I.
### BACKGROUND

On August 31, 1965, five African-American students attending public schools in St. Mary Parish filed suit for injunctive relief against the St. Mary Parish School Board and its superintendent, alleging that Defendants were maintaining racially segregated schools in violation of the Fourteenth Amendment to the United States Constitution.[3] The suit was brought "as a class suit . . . on behalf of [Plaintiffs] and on behalf of other [Black] children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein. . . ."[4] On October 11, 1965, the Court issued the first of several Decrees and

---

[1] ECF No. 109.
[2] ECF Nos. 117, 113, and 118.
[3] ECF No. 17-4 at 2-9.
[4] *Id.* at 3.

Orders enjoining Defendants from continuing to operate a segregated public school system, implementing desegregation plans, and requiring Defendants to submit reports regarding these efforts to the Court two times each year.[5] In April of 1975 the case was placed on the "inactive docket," but the Board continued filing reports until December of 1983.[6] Thereafter, all activity ceased until the Court reopened this matter in 2012.[7]

Once this matter was reopened, the Court formally certified it as a class action and modified the class definition as follows:

> (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) the custodial biological or custodial adoptive parents of the foregoing students.[8]

The Court additionally ordered the parties to craft a Plan of Work "designed to avoid unnecessary delay in the disposition of this matter."[9] The parties submitted their Plan of Work on November 12, 2019, and that plan was subsequently adopted by the Court.[10] Since adoption of the Plan of Work, the parties have worked diligently to move this litigation forward, although these efforts were delayed by the COVID-19 pandemic and governmental closure orders.

On May 18, 2021, the Plaintiff Class issued a deposition notice to the Board, pursuant to FED. R. CIV. P. 30(b)(6), which set out the matters for examination.[11] On May 25, 2021, the Board responded to Plaintiffs, "objecting to and refusing to designate a witness to testify concerning the

---

[5] *See e.g. id.* at 20-22, 41-43; ECF No. 1-13 at 4.
[6] ECF No. 1-67; ECF No. 1-79.
[7] ECF Nos. 2-5.
[8] ECF No. 67 at 9, 18-19. At the time suit was filed, the Federal Rules of Civil Procedure did not require courts to certify actions as class actions. After the case was reopened, the Court found it should be formally recertified "and its parameters should be clarified." ECF No. 36 at 21.
[9] ECF No. 38.
[10] ECF Nos. 43, 44.
[11] ECF No. 95-4.

vast majority of the Plaintiff Class's noticed topics."[12] After several more meetings, the exchange of several rounds of correspondence, and two rounds of revisions to Plaintiffs' topics of examination, the parties were able to "resolve[] some but not all of the School Board's Objections."[13] On January 31, 2022, the Board filed a Motion for Protective Order, seeking a court order limiting the scope of the matters for examination noticed by Plaintiffs.[14] On February 9, 2022, the Magistrate Judge issued a Ruling granting in part and denying in part the Board's motion.[15] Thereafter, the Board filed its Objection to the Magistrate Judge's Ruling, and the matter is now ripe for review.

## II.
## STANDARD OF REVIEW

A magistrate judge is permitted broad discretion in resolving nondispositive pretrial motions.[16] A district court will reconsider such matters only where it is shown that the magistrate judge's order "is clearly erroneous or is contrary to law."[17] When considering objections to a magistrate judge's nondispositive order, district courts review factual findings under the clearly erroneous standard, and legal conclusions *de novo*.[18] A factual finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[19] A legal conclusion is contrary

---

[12] ECF No. 98-1 at 1, ¶ 4.
[13] *Id.* at 2; *see also* ECF No. 109 at 2-3.
[14] ECF No. 95.
[15] ECF No. 105.
[16] A.*M. Castle & Co. v. Byrne*, 123 F.Supp.3d 895, 898 (S.D. Tex. 2015); *Credeur v. York Claim Serv.*, No. 13-1367, 2013 WL 5935477 at *3 (W.D.La. Nov. 4, 2013).
[17] FED. R. CIV. P. 72(a).
[18] *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993)).
[19] *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

to law when the magistrate judge misapplies relevant statutes, case law, or rules of procedure.[20] Where a magistrate judge has properly applied the law to factual findings that are not clearly erroneous, a "vast area of . . . choice" exists which is reviewed solely for abuse of discretion.[21]

### III.
### APPLICABLE LAW

Rule 26(b) of the Federal Rules of Civil Procedure addresses the scope of discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[22]

Rule 26(c) permits a party from whom discovery is sought to move for a protective order. If the moving party demonstrates good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ."[23] In deciding whether to grant a motion for a protective order, the court has significant discretion.[24]

---

[20] *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019); *Ambrose-Frazier v. Herzing Inc.*, CV 15-1324, 2016 WL 890406, at *2 (E.D. La. Mar. 9, 2016).
[21] *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994) (quoting *In re REPH Acquisition Co.*, 134 B.R. 194, 202-03 (N.D. Tex. 1991)); *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F.Supp.2d 675, 683 (N.D. Tex. 2013).
[22] FED. R. CIV. P. 26(b)(1).
[23] FED. R. CIV. P. 26(c).
[24] *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## IV.
### DISCUSSION

A. **Whether the Magistrate Judge's Ruling denying the Board's Motion for Protective Order with regard to "special education" topics was clearly erroneous or contrary to law.**

The Board seeks reversal of the Magistrate Judge's Ruling denying it a protective order with regard to the topic of special education, arguing special education is not relevant to Plaintiffs' claim that the Board operates its schools in a manner that violates the rights of Black students under the Equal Protection clause of the Fourteenth Amendment. Specifically, the Board objects to the following areas of inquiry:

1. The curriculum, course offerings, and all other educational and/or academic programs at each school, including, but not limited to, special education classes.

2. Defendant's policies and practices that permit students at each of Defendant's schools to qualify for participation or otherwise enroll in particular courses and educational and/or academic programs at each school, including, but not limited to, special education classes.

3. The racial composition of students identified as having an "emotional disturbance," "intellectual disability," "other health impairment,["] a "specific learning disability," and/or a "speech or language impairment."

4. The provision of special education and accommodations under Section 504, ADA, and IDEA, including which students, by race, enter and exit these programs.[25]

The Magistrate Judge found that "the topic of special education is relevant to the analysis of the *Green* factors," in particular to classroom assignment, and further found "that the School Board has not shown good cause to limit the discovery."[26] The Board objects to these findings.

---

[25] ECF No. 95-5 at 9.
[26] ECF No. 105 at 9.

First, the Board argues that although special education is relevant in many desegregation cases, it is not relevant here, because "the general operation of the Board's special education programs, including *evaluating* students for disabilities, has never been at issue before in this case."[27] The Board "agrees that classroom assignment is a relevant issue as the Board cannot intentionally segregate classrooms," and therefore it "has no objection to deposition topics or discovery related to *classroom assignment*, special education classes or otherwise."[28] However, the Board contends "[t]his is where the relevant information should stop. . . ."[29] Next, the Board contends permitting this topic of inquiry would impose "an unwarranted burden on the Board," due to the "myriad of state and federal procedures" with which its special education staff must comply, and "the importance of preserving staff time for the needs to [sic] students with disabilities."[30] Finally, the Board argues there is no link between special education and the former dual education system, because the current federal laws protecting students with disabilities were enacted after suit was filed in 1965.[31]

First, the Court notes special education has been a part of this case since, at the latest, the May 2, 1967 issuance of the first superseding Decree, which provided in pertinent part:

<div style="text-align:center">

IV.
TRANSFERS

</div>

> . . . .
>
> (b) <u>Transfers for Special Needs</u>. Any student who requires a course of study not offered at the school to which he has been assigned may be permitted, upon his written application at the beginning of any school term or semester, to transfer to another school which offers courses for his special needs.

---

[27] ECF No. 109 at 7.
[28] *Id*.
[29] *Id*.
[30] *Id.* at 13.
[31] *Id.* at 14.

      (c) <u>Transfers to Special Classes or Schools</u>. If the defendants operate and maintain special classes or schools for physically handicapped, mentally retarded[32], or gifted children, the defendants may assign children to such schools or classes on a basis related to the function of the special class or school that is other than freedom of choice. **In no event shall such assignments be made on the basis of race or color or in a manner which tends to perpetuate a dual school system based on race or color.**

<div align="center">V.

SERVICES, FACILITIES, ACTIVITIES AND
PROGRAMS</div>

    . . . . All special educational programs conducted by the defendants shall be conducted without regard to race or color.[33]

The final superseding Decree, issued on August 4, 1969, retained the above provisions, removing only the reference to the "freedom of choice" plan in the "<u>Transfers to Special Classes or Schools</u>" provision.[34] Thus, contrary to the Board's argument that "special education is not relevant to the *Green* factors in this case," the Court finds that special education has been relevant to the Plaintiff Class's claim that Defendant operates its schools in a manner that violates the Equal Protection clause almost since the inception of this suit. Further, as special education can be relevant to the first *Green* factor—student assignment—the Court finds the Plaintiff Class is entitled to conduct discovery regarding whether disparities exist in the manner of administering special education services. Such information is relevant to whether school authorities have complied with their affirmative obligation "to eliminate from the public schools all vestiges of state-imposed

---

[32] The Court uses the term "mentally retarded" only where it reflects the usage in the historical document cited.

[33] ECF No. 17-4 at 37-38 (bold emphasis added). The Court additionally notes Congress first addressed the education of children with disabilities in the 1966 amendments to the Elementary and Secondary Education Act of 1965 ("ESEA"). *Honig v. Doe*, 484 U.S. 305, 310 n.1 (1988); *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 150 n.1 (2nd Cir. 1992).

[34] ECF No. 1-13 at 3; *see also* ECF No. 1-5 at 14; ECF No. 1-1 at 11-12, 18-25. On May 28, 1969, the Fifth Circuit found the "freedom of choice" desegregation plan ordered in *United States v. Jefferson Cty. Bd. of Educ.*, 372 F.2d 836 (5th Cir. 1966), *on reh'g*, 380 F.2d 385 (5th Cir. 1967), and in effect in St. Mary Parish, was ineffective and remanded the matter "in order that a new plan may be put into effect." *Hall v. St. Helena Parish School Bd.*, 417 F.2d 801, 809 (5th Cir. 1969). After remand, the August 4, 1969 Decree issued.

segregation" to the extent practicable.[35] For these reasons, the Court affirms the Magistrate Judge's Ruling denying a protective order on the topic of special education. However, for the reasons set forth in section IV(C), *infra*, the scope of the topic will be modified.

**B.     Whether the Magistrate Judge's Ruling was clearly erroneous or contrary to law by denying the Board's motion requesting a protective order on the grounds that Plaintiffs' Rule 30(b)(6) topics are vague and overly broad.**

The Board argued below that a protective order was warranted because "a number of Plaintiffs' 30(b)(6) topics include language that make it impossible for a deponent to be properly prepared to testify on behalf of the School Board because they include language that topics 'include, but [are] not limited to' certain areas and/or other similar terms that lack specificity."[36] The Magistrate Judge granted the motion on these grounds in part, finding six of the thirteen topics argued by the Board were overly broad and/or vague.[37] Accordingly, the Magistrate Judge ordered the Plaintiff Class to "more specifically tailor" those six requests.[38] The Board objects on the same grounds it argued to the Magistrate Judge, and asks this Court to order Plaintiffs to "more narrowly and specifically" tailor the remaining seven topics, or alternatively, to remove the "including but not limited to" language from the requests.[39]

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the propounding party "must describe with reasonable particularity the matters for examination."[40] In response, the organization must designate an agent or other person to testify on its behalf "about

---

[35] *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("[S]chool authorities are 'clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch.'") (quoting *Green v. Cty. Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 437–38 (1968)); *Missouri v. Jenkins*, 515 U.S. 70, 89 (1995).
[36] ECF No. 95-1 at 14.
[37] ECF No. 105 at 10-11.
[38] *Id.*
[39] ECF No. 109 at 20; *see also id.* at 15 ("The Board is not challenging the[] sub-parts" of the seven topics.)
[40] FED. R. CIV. P. 30(b)(6).

information known or reasonably available to the organization."[41] The organization has a duty to "make a conscientious good-faith endeavor to designate the persons having knowledge" of the noticed topics, "and to *prepare* those persons in order that they can answer fully, completely, [and] unevasively, the questions posed . . . as to the relevant subject matters."[42] The duty to present and prepare a designee "goes beyond matters personally known to that designee or to matters in which that designee was personally involved."[43] Rather, "[t]he deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."[44] "The court may, for good cause, issue an order to protect a party . . . from . . . undue burden or expense, including . . . limiting the scope of disclosure or discovery to certain matters. . . ."[45] It is the movant's burden to show "good cause" for issuance of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[46]

Following a review of the topics to which the Board objects, the Court finds that the use of the phrase "including but not limited to" does not provide the "reasonable particularity" that Rule 30(b)(6) requires.[47] "When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition."[48] The purpose of describing the matters for

---

[41] *Id.*
[42] *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)).
[43] *Id.* (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).
[44] *Id.*
[45] FED. R. CIV. P. 26(c).
[46] *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).
[47] *See* ECF No. 109 at 16-19 (objecting to General Topics 3 and 4, Faculty and Staff Topics 3, 4, 5, and 14); *see also* ECF No. 95-5.
[48] *Brazos River Auth.* at 433; *see also In re: Taxotere (Docetaxel) Products Liab. Litig.*, 26 F.4th 256, 266 (5th Cir. 2022).

examination "with reasonable particularity" is to give the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure that they are prepared for the deposition.[49] Incorporating the phrase "including, but not limited to" broadens the scope of the specifically enumerated topics, such that the Board is unable to properly prepare a designee to testify on its behalf. For these reasons, the Court will strike the "but not limited to" language from General Topics 3 and 4, and from Faculty and Staff Topics 3, 4, 5, and 14.[50]

The Board additionally objects to General Topic 4, which seeks information regarding the "planning and execution of Black History Month programs at each school and districtwide from 2017 to present."[51] Specifically, the Board asserts "it is unduly burdensome to require a designee to research an unknown time period for all schools related to Black History Month" (noting it operates twenty-two schools), and further contends that this topic is not relevant to the Plaintiff Class's claims.[52] This objection is overruled. As explicitly stated in General Topic 4, the inquiry is limited in time "from 2017 to present." As to the Board's argument that requiring a response for all schools it operates is unduly burdensome, the Court finds the Board has failed to support this objection with the level of specificity required by Rule 26(c). When seeking a protective order, "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[53] Merely stating a topic is unduly burdensome is insufficient to meet the standard of Rule 26(c).[54] Accordingly, this objection is overruled.

---

[49] FED. R. CIV. P. 30(b)(6).
[50] *See* ECF No. 109 at 16-19.
[51] *See id.* at 17-18; *see also* ECF No. 95-5 at 6.
[52] ECF No. 109 at 18.
[53] *In re Terra Int'l, Inc.*, 134 F.3d at 306 (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)).
[54] *See e.g. AdvancePierre Foods, Inc. Grp. Health Plan v. Jones*, 3:16-CV-2364-M, 2018 WL 1536331, at *2 (N.D. Tex. Jan. 8, 2018) ("The party resisting discovery must show specifically how each discovery

Finally, the Board objects to Facilities Topic 5, which seeks information regarding: "Defendant's efforts, including any policies and practices, to ensure that its facilities operations comply with the Desegregation Order, including any attempts to address racial disparities in facilities and the District's efforts to review and/or revise facilities procedures from 2017 to present."[55] The Board objects to this area of inquiry as follows:

> There is not one (1) singular order issued in this case nor is there specificity in this topic as to what orders contain the active desegregation obligations. This topic lacks the specificity required by Rule 30(b)(6); therefore, there is no Board representative who can adequately respond to questions related to such a vague and overly broad topic. This topic appears to be designed to elicit opinions or legal conclusions for which no Board representative would be available to testify to same.[56]

The record reflects that the operative Desegregation Order in this case is the Decree issued on August 4, 1969, as amended by the Orders issued on August 5, 1970 and June 30, 1971.[57] As to the Board's statement that the topic calls for "opinions or legal conclusions," the Court notes that "[a] corporate designee 'has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition' and that authority extends 'to facts, . . . subjective beliefs[,] and opinions.'"[58] The remainder of this objection is overruled due to the failure to support the objection with the level of specificity required by Rule 26(c).

---

request is.... overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden") (quoting *Curtis v. Metro. Life Ins. Co.*, No. 3:15-CV-2328-B (BN), 2016 WL 687164, at *2 (N.D. Tex. Feb. 19, 2016) (citing *Mcleod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990)).
[55] ECF No. 95-5 at 10.
[56] ECF No. 109 at 19-20.
[57] ECF No. 1-13 (Aug. 4, 1969 Decree); ECF No. 1-42 (Aug. 5, 1970 Order retaining desegregation plan of Aug. 4, 1969 for East St. Mary Parish, and adopting Aug. 4, 1970 Board desegregation plan for West St. Mary Parish); ECF No. 1-50 (June 30, 1971 Order implementing "the practices prescribed by the Court of Appeals for the Fifth Circuit in Singleton v. Jackson Municipal School District . . . ."); *see also* ECF Nos. 1-43; 1-40.
[58] *In re: Taxotere (Docetaxel) Products Liab. Litig.*, 26 F.4th at 266 (quoting *Brazos River Auth.*, 469 F.3d at 433).


### C. Whether the Magistrate Judge's Ruling was clearly erroneous or contrary to law with regard to the time period of the Rule 30(b)(6) topics.

Finally, the Board objects to the Magistrate Judge's Ruling to the extent it permits discovery into "any pre-2018-19 school year information," beyond that which is in the record.[59] In the Ruling, the Magistrate Judge held "as a general rule, the discovery requests should only cover the time period from the 2018-19 school year going forward, unless any party can show a particular relevancy not addressed herein with respect to an earlier time period."[60] However, as to those discovery requests which seek information "allow[ing] for a comparison between where the School Board was in 1975 and where it is now . . ., the time period may exceed three years."[61] The Board objects only to the latter finding.[62] The Board contends that all of Plaintiffs' requests for discovery should be limited in time to 2018 to present, and to the extent the parties intend to rely upon information from early time periods, they should be limited to the Reports filed by the Board from 1969 to 1983 that are in the record.[63] Essentially, this is what the Magistrate Judge ordered. Nevertheless, with regard to the 30(b)(6) topics that do not set forth a time frame, the Court will limit the time frame of those topics to 2018 forward.[64] To the extent Plaintiffs seek information beyond that limitation, they may seek leave of court to propound such discovery.[65] However, the Court will not permit the Board to rely on any information prior to 2018 that is not contained in

---

[59] ECF No. 105 at 20 (internal quotation marks omitted).
[60] *Id.* at 12-13.
[61] *Id.* at 12.
[62] ECF No. 109 at 20.
[63] *See* ECF No. 1-1 through 1-79.
[64] *See e.g.* ECF No. 95-5 at 1, nos. 2, 3, etc.
[65] However, prior to seeking leave, Plaintiffs remain under an obligation to consult with the Board in an attempt to come to an agreement with regard to such discovery.

the record in any motion seeking unitary status or at trial, absent a showing of good cause or agreement of the parties.[66]

## V.
### CONCLUSION

For the reasons set forth herein, the Objections to the Magistrate Judge's Ruling [ECF No. 109] are SUSTAINED IN PART and DENIED IN PART. More specifically, the Court: (1) strikes the "but not limited to" language from General Topics 3 and 4 and from Faculty and Staff Topics 3, 4, 5, and 14; and (2) for those topics that do not state a time period, the Court limits the time frame to 2018 forward.

THUS DONE in Chambers on this 16th day of May, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[66] *See* ECF No. 109 at 21 ("To possibly address Plaintiff's concerns, the Board does not intend to use new documents or witnesses (if they are still alive) related to the Board's operations from decades ago. The only information the Board would rely on from so long ago is the information currently contained in the record.")