UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CLAUDE BOUDREAUX, ET AL.** | **CASE NO.  6:65-CV-11351** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SCHOOL BOARD OF ST MARY PARISH, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

## MEMORANDUM RULING

The present matters before the Court are two motions: (1) the State of Louisiana's Motion for Leave to Participate as *Amicus Curiae* (the "*Amicus* Motion"),[1] and (2) the St. Mary Parish School Board's Objection to the Magistrate Judge's Ruling on the Motion to Amend Protective Order and Stay Discovery Deadlines.[2] After considering the record, the parties' arguments, and the relevant authorities, the Court rules as follows.

### I.
### BACKGROUND

On August 31, 1965, five African-American students attending public schools in St. Mary Parish filed suit for injunctive relief against the St. Mary Parish School Board (the "School Board" or the "Board") and its superintendent, alleging that Defendants were maintaining racially segregated schools in violation of the Fourteenth Amendment to the United States Constitution.[3] The suit was brought "as a class suit . . . on behalf of [Plaintiffs] and on behalf of other [Black] children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein. . . ."[4] On October 11, 1965, the Court

---

[1] ECF No. 119.
[2] ECF No. 131.
[3] ECF No. 17-4 at 2-9.
[4] *Id.* at 3.

issued the first of several Decrees and Orders enjoining Defendants from continuing to operate a segregated public school system, implementing desegregation plans, and requiring Defendants to submit reports regarding these efforts to the Court two times each year.[5] In April of 1975 the case was placed on the "inactive docket," but the Board continued filing reports until December of 1983.[6] Thereafter, all activity ceased until the Court reopened this matter in 2012.[7]

After the case was reopened, the Court formally certified the case as a class action and modified the class definition as follows:

> (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) the custodial biological or custodial adoptive parents of the foregoing students.[8]

Thereafter, all parties agreed to the parameters of the United States' role as *amicus curiae* going forward,[9] and the Court entered an order memorializing the parties' agreement.[10] Pursuant to that order:

> [T]he United States of America [may] continue to appear and participate in this action as amicus curiae, with the right as such to participate in the case as follows, unless otherwise directed by the Court:
>
> 1. Receive and access all formal discovery exchanged between the parties at the same time as the parties;
>
> 2. Receive and access all informal discovery exchanged between the parties at the same time as the parties, participate in site visits (during which the United States may ask questions of District employees), and propound informal discovery in accordance with the scope of its enforcement authority under federal law;

---

[5] *See e.g. id.* at 20-22, 41-43; ECF No. 1-13 at 4.
[6] ECF No. 1-67; ECF No. 1-79.
[7] ECF Nos. 2-5.
[8] ECF No. 67 at 9, 18-19; *see also* ECF No. 38. At the time suit was filed, the Federal Rules of Civil Procedure did not require courts to certify actions as class actions. After the case was reopened, the Court found it should be formally recertified "and its parameters should be clarified." ECF No. 36 at 21.
[9] ECF No. 73; *see also* ECF No. 36 at 21 n. 25; ECF Nos. 53, 55.
[10] ECF No. 74.

3. Observe depositions taken by the parties and obtain copies of all deposition transcripts at the same time and in the same manner as available to the parties;

4. File position statements and responses;

5. Appear at conferences and hearings before the Magistrate Judge or District Judge; and

6. Participate in conferences and hearings to the extent directed by the Court.[11]

The Court additionally ordered the parties to craft a Plan of Work "designed to avoid unnecessary delay in the disposition of this matter."[12] The parties submitted their Plan of Work on November 12, 2019, and that plan was subsequently adopted by the Court.[13] The parties then worked diligently to move this litigation forward, although these efforts were delayed by the COVID-19 pandemic and governmental closure orders that impacted the St. Mary Parish School System.

After the Plan of Work was adopted, the parties engaged in formal and informal discovery. Because this discovery included the production of documents and information "protected by the Family Educational Rights and Privacy Act ('FERPA'), 20 U.S.C. § 1232g; 34 C.F.R. Part 99, the School Employees Personnel File Act ('SEPFA') (LA. REV. STAT. § 17:1237), and other highly sensitive information," the parties negotiated and agreed to a protective order (the "Protective Order" or "Order"), which was formally entered on June 1, 2021.[14] The Protective Order creates two tiers of protection. The first tier requires that "Personally Identifiable Information" (as defined by FERPA), education records, and employee records be marked "CONFIDENTIAL INFORMATION—SUBJECT TO COURT'S PROTECTIVE ORDER,"[15] and limits access to this discovery to nine categories of individuals, including "[p]ersonnel of Plaintiffs and *amicus curiae* the United States of America or Defendant actually engaged in assisting counsel in the conduct of

---

[11] *Id.*
[12] ECF No. 38.
[13] ECF Nos. 43, 44.
[14] ECF No. 79.
[15] *Id.* at ¶¶ 2, 7.

this Litigation and who have been advised of their obligations hereunder."[16] The second tier of protection covers "Interested Person Information," which includes:

> [T]he names of educators, class members, and community members who have reached out to counsel for the plaintiff class or the United States seeking assistance or providing information in connection with this Litigation. Interested Person Information shall also include other information that, alone or in combination, would allow a reasonable person in the community to identify such people with reasonable certainty.[17]

The Protective Order requires that any documents or information produced containing "Interested Person Information" be marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO COURT'S PROTECTIVE ORDER," and limits access to this information to a subset of the individuals identified in paragraph 3 of the Protective Order.[18] This subset does not include members of the School Board or executive-level administrators.

## II.
## THE *AMICUS* MOTION

The State of Louisiana seeks appointment as *amicus curiae* with the same role in this case as the United States. In other words, the State requests the ability to file responsive briefs and position statements with the Court, and to participate in formal and informal discovery, including site visits. The State grounds its request on its "interests in guarding against federal overreach and in maintaining federalism's proper balance between state and federal powers [which] are already at play."[19] The State explains that it "exercised sovereign responsibility over education by creating the St. Mary Parish School Board as a local political subdivision of the state, endowed with authority to make policies in the best interest of students in the St. Mary Parish School District."[20]

---

[16] *Id.* at ¶ 3.
[17] *Id.* at ¶ 2(d).
[18] *Id.* at ¶ 4.
[19] ECF No. 135 at 4-5.
[20] ECF No. 119-1 at 4.

While there is no specific rule or statute addressing when a district court may grant leave to a non-party to file an *amicus* brief, district courts often look to Rule 29 of the Federal Rules of Appellate Procedure.[21] Rule 29 governs requests to file *amicus* briefs in the courts of appeals, and provides in pertinent part:

> **(1) Applicability**. This Rule 29(a) governs amicus filings during a court's initial consideration of a case on the merits.
>
> **(2) When Permitted**. The United States or its officer or agency or a state may file an amicus brief without the consent of the parties or leave of court. Any other amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing, but a court of appeals may prohibit the filing of or may strike an amicus brief that would result in a judge's disqualification.
>
> **(3) Motion for Leave to File.** The motion must be accompanied by the proposed brief and state:
>
> **(A)** The movant's interest; and
>
> **(B)** The reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.[22]

In deciding whether to grant leave to file an *amicus* brief under Rule 29, courts consider factors such as whether the proposed *amicus* has a unique interest in the case, and whether the proposed *amicus* brief is "timely and useful or otherwise necessary to the administration of justice."[23] The First Circuit has cautioned that "a district court lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an *amicus* brief unless . . . the *amicus* has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance."[24] District courts "must keep in mind the differences between the trial

---

[21] *U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F.Supp.2d 920, 927 (S.D. Tex. 2007), *aff'd sub nom. U.S. ex rel. Gudur v. Deloitte & Touche*, No. 07-20414, 2008 WL 3244000 (5th Cir. Aug. 7, 2008); *Texas v. United States*, No. 6:21-CV-00003, 2021 WL 2172837, at *1 (S.D. Tex. Mar. 5, 2021).
[22] FED. R. APP. P. 29.
[23] *U.S. ex rel. Gudur* at 927 (internal quotation marks omitted).
[24] *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).

and appellate court forums in determining whether it is appropriate to allow an *amicus curiae* to participate."[25] "Chief among those differences is that a district court resolves fact issues."[26] "[A]n amicus who argues facts should rarely be welcomed."[27] Finally, courts should not grant leave to an *amicus* who is merely an advocate for one of the parties.[28]

Here, putting aside the State's arguments about its role in enforcing federalism and preventing federal court "overreach" in desegregation cases, the Court agrees that the State does have a unique interest in the education of Louisiana public school students and in its oversight of public school education in Louisiana. The Court concludes that the State's perspectives on issues that the court must decide in the future—such as the question of whether the St. Mary Parish School System has achieved unitary status—would be timely and useful. Accordingly, the Court is inclined to allow the State to file responsive briefs and position statements as *amicus curiae* in connection with future motions and matters arising in this case. The State may also participate in oral argument to the extent that the Court grants oral argument on a particular motion or other matter.

The State, however, seeks a broader role in this case than merely filing Rule 29 *amicus* briefs. Specifically, the State argues for a role equivalent to that of the United States, which the State characterizes as a "litigating *amicus*."[29] Indeed, the State seems to suggest an even more significant role than the United States by arguing that it satisfies the requirements for "intervention of right" as a party under Rule 24(a) of the Federal Rules of Civil Procedure.[30] The Court declines to grant this expanded role. First, the United States has traditionally assumed a significant role in

---

[25] *Club v. Fed. Emergency Mgmt. Agency*, CIV.A. H-07-0608, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007).
[26] *Id.*
[27] *Strasser* at 569; *see also Club* at *1.
[28] *Evanston Ins. Co. v. Rodriguez Engineering Lab.*, No. 21-cv-1129, 2023 WL 379277 at *1 (W.D. Tex. Jan. 20, 2023) (citing *Leigh v. Engle*, 535 F.Supp. 418, 422 (N.D. Ill. 1982)).
[29] ECF No. 135 at 1.
[30] *Id.* at 6-10.

6

desegregation cases addressing federal constitutional concerns.[31] Second, and more importantly, the United States' participation in the present litigation dates back to September 9, 1969.[32] Since the case was reopened, the United States has been an active participant, including in discovery. The State makes its bid for a more active role late in the litigation. Specifically, a class certification order was previously entered without participation by the State, and discovery closed in February 2022 (with the exception of the discovery issues raised in the objection to the Magistrate Judge's ruling). The parties have prepared and implemented six joint "Plans of Work" governing discovery and other critical case deadlines before the State filed its *Amicus* Motion.[33] Allowing the State to now assume the same role as the United States at this late stage would unduly delay the resolution of this case and the Court's ultimate decision on unitary status. Finally, the Court notes that the School Board is represented by able counsel who have experience in desegregation cases and have been actively litigating this case for the Board since the case was reopened. Allowing the State to serve in the capacity it now seeks would largely duplicate the efforts of the Board's counsel.[34] In

---

[31] *See, e.g., Missouri v. Jenkins*, 515 U.S. 70, 95 (1995) (United States filed brief as *amicus* supporting district court's ruling); *Taylor v. Ouachita Par. Sch. Bd.*, 648 F.2d 959, 962 (5th Cir. 1981) (referring to the United States' first appearance in the case as *amicus* in 1970); *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1051–52 (8th Cir. 1997) ("The plaintiffs and the United States as *amicus* submitted desegregation plans to the district court."); *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 664 (10th Cir. 1990) (referring to the United States' position as *amicus curiae*); *Faubus v. United States*, 254 F.2d 797, 805 (8th Cir. 1958) (noting that "the status of the Attorney General and the United States Attorney was something more than that of mere amici curiae in private litigation" in desegregation case); *Reed v. Rhodes*, 635 F.2d 556, 557 (6th Cir. 1980), *modified*, 642 F.2d 186 (6th Cir. 1981) (noting that "the United States as *amicus curiae* proposed that the court appoint a desegregation administrator with specified powers"); *Harvest v. Bd. of Pub. Instruction of Manatee Cnty., Fla.*, 312 F.Supp. 269, 275 (M.D. Fla. 1970) (designating the United States as *amicus* and authorizing it "to appear and participate in this action before this Court and to accord this Court the benefit of its views and recommendations, with the right to submit proceedings, evidence, arguments, and briefs, the right to move for injunctive and other necessary and proper relief, and the right to initiate such further proceedings as may be necessary and appropriate"); *Bush v. Orleans Par. Sch. Bd.*, 190 F. Supp. 861, 867 (E.D. La. 1960), *aff'd*, 365 U.S. 569 (1961), and *aff'd sub nom. City of New Orleans, Louisiana v. Bush*, 366 U.S. 212 (1961) (noting that the United States, as *amicus*, "has a vital interest in vindicating the authority of the federal courts" in desegregation cases).
[32] *See, e.g.*, ECF No. 1-15.
[33] ECF Nos. 44 (Plan of Work); 57 (First Amended Plan of Work); 70 (Second Amended Plan of Work); 72 (Third Amended Plan of Work); 83 (Fourth Amended Plan of Work); 88 (Fifth Amended Plan of Work).
[34] For example, the State suggests that it would oppose discovery with respect to special education because "brand-new issues" like special education "could [not] possibly be vestiges of the prior de jure segregated system." ECF No. 119-1 at 2; *see also id.* at 6. However, counsel for the School Board has previously advanced the same arguments in discovery litigation before the Magistrate Judge. ECF No. 109.

sum, the Court will grant the State of Louisiana leave to file *amicus* briefs in response to pending motions and to participate in oral arguments if and when granted by the Court. In all other respects, the Court denies the motion.[35]

## III.
### THE BOARD'S OBJECTION TO THE MAGISTRATE JUDGE'S RULING

The School Board objects the Magistrate Judge's Ruling granting in part and denying in part its Motion to Amend Protective Order.[36] The stated purpose of the Protective Order is "to facilitate the production, exchange, and discovery of documents and information that are protected by the Family Educational Rights and Privacy Act . . . , the School Employees Personnel Files Act . . . , and other highly sensitive information."[37] One of the specific categories of information expressly identified in the Protective Order is "Interested Person Information," which includes "the names of educators, class members, and community members who have reached out to counsel for the plaintiff class or the United States seeking assistance or providing information in connection with this Litigation."[38] This category of protected information also includes "other information that, alone or in combination, would allow a reasonable person in the community to identify such people with reasonable certainty."[39] The Protective Order requires that this information be marked as "ATTORNEYS' EYES ONLY" and restricts disclosure of this information to certain designated individuals, namely:

> c.  Counsel for any party in this Litigation and their associated and temporary attorneys, paralegals, and other professional personnel (including support staff);

---

[35] Although the State invokes Rule 24 (Intervention) in its reply brief, no formal Rule 24 motion has been filed. In any event, the Court would be inclined to deny any such motion this late in the case for the same reasons that it denies the State's request for a more active role in the present motion—*i.e.*, intervention is untimely. *See e.g. Assoc. Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir 1999) (Rule 24(a) explicitly imposes a "timeliness" requirement on motions to intervene).
[36] ECF No. 131; *see also* ECF No. 125.
[37] ECF No. 79 at ¶ 1.
[38] *Id.* at ¶ 2(d).
[39] *Id.*

    d.    Service vendors . . . who are directly assisting counsel for any party in the conduct of this Litigation, are under the supervision or control of such counsel, and who have been advised by such counsel of their obligations hereunder;

    e.    Expert witnesses or consultants . . .;

    f.    The Court and court personnel; [and]

    g.    An officer before whom a deposition is taken . . . .[40]

The School Board seeks to expand the list of persons entitled to view "Interested Person Information" to include Board members and executive-level administrators—specifically, the Superintendent, Assistant Superintendent, Central Office Directors, and Central Office Supervisors—and to allow the foregoing persons to be present during depositions when counsel question witnesses on Interested Person Information.[41] The School Board contends that its counsel cannot adequately investigate the allegations made by Interested Persons without the assistance of Board representatives.[42] The Board further argues the restrictions on "Interested Person Information" may result in a violation of counsel's duties under the Louisiana Rules of Professional Conduct. The Magistrate Judge rejected these arguments and concluded that the School Board had not established good cause to modify the Protective Order.

### A.    Standard of Review.

Where, as here, a magistrate judge rules on a non-dispositive matter, a district judge may "modify or set aside any part of the order that is clearly erroneous or is contrary to law."[43] A magistrate judge's finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

---

[40] *Id*. at ¶¶ 3, 4.
[41] ECF No. 131 at 1, 16.
[42] *Id.* at 13-15. Specifically, counsel argues that it needs the input of the Board to fully investigate allegations made by Interested Persons and that, presumably, Board representatives must know the identities of those Interested Persons to provide that input.
[43] Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).

mistake has been committed."[44] A magistrate judge's legal conclusions are reviewed *de novo* and will be reversed "if the magistrate judge erred in some respect in her legal conclusions."[45] Here, the Magistrate Judge applied the correct legal standard for modifying a protective order. Specifically, courts consider four factors in determining whether to modify a protective order: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the reliance on the order; and (4) whether good cause exists for the modification."[46]

## B. Nature of the Protective Order.

The Magistrate Judge first found that the nature of the Protective Order weighed against modification. This factor focuses on the protective order's "scope and whether it was court imposed or stipulated to by the parties."[47] Agreed protective orders are generally "viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order."[48] This factor also considers the breadth of the protective order. With respect to breadth, courts categorize protective orders on a spectrum. At one end of the spectrum are "specific" protective orders, which are "narrowly drawn protective orders" that cover specific identified information.[49] At the opposite of the spectrum are "umbrella" protective orders, which designate "all discovery as protected, without review or determination of 'good cause' by the parties or the court."[50] "Blanket" protective orders fall somewhere between

---

[44] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).
[45] *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996).
[46] ECF No. 125 at 7 (quoting *Dean v. Texas Tech Univ. Health Scis. Ctr.*, No. 16-2635, 2017 WL 9901155 at *7 (N.D. Tex. Sept. 25, 2017)).
[47] *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*, CV 17-405-JWD-RLB, 2020 WL 10641896, at *3 (M.D. La. Dec. 10, 2020) (quoting *Murata Mfg. Co., Ltd. V. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006)).
[48] *MBA Eng'g Inc. v. Matrix Tr. Co.*, 3:20-CV-01915-E, 2023 WL 2619172, at *2 (N.D. Tex. Mar. 23, 2023) (quoting *Orthoflex, Inc. v. ThermoTek, Inc.*, No.3:10-CV-2618-D, 2013 WL 3095106, *3 (N.D. Tex. June 20, 2013)).
[49] *Cox Operating, LLC v. ATINA, M/V*, No. 20-2845, 2021 WL 5405259, at * 3 (E.D. La. Oct. 1, 2021).
[50] *Raytheon Co. v. Indigo Sys. Corp.*, No. 07-cv-109, 2008 WL 4371679, at * 2 (E.D. Tex. Sept. 18, 2008).

specific and umbrella protective orders. Blanket protective orders permit the parties to protect that information which they, in good faith, believe to be particularly sensitive.[51] Blanket protective orders may be modified for "good cause."[52]

The School Board does not dispute that the parties negotiated and consented to the Protective Order, including the specific terms of the Order governing "Interested Party Information." However, the School Board contests the Magistrate Judge's conclusion that the Protective Order is a "specific protective order," arguing the Order is a "blanket protective order" because it protects not only Interested Person information, "but information protected by FERPA, SEPFA, and 'other highly sensitive information.'"[53] According to the School Board, the terms of the Protective Order grant Plaintiffs' counsel and the United States such broad discretion that they can categorize "virtually anyone" who reaches out to them for assistance or to provide information as an "Interested Person."[54]

The Court agrees that in some respects the Protective Order is similar to a blanket protective order, for example, by allowing Plaintiffs and the United States to designate information as "Interested Person Information," defined to include "other information that, alone or in combination, would allow a reasonable person in the community to identify such people with reasonable certainty."[55] This language, like language typically used in blanket protective orders entered in commercial cases, allows the Plaintiffs and the United States to designate information that they believe, in good faith, would allow a reasonable person to identify an Interested Person.

---

[51] *United States v. Ocwen Loan Servicing, LLC*, 4:12-CV-543, 2016 WL 278968, at *3 (E.D. Tex. Jan. 22, 2016); *MBA*, 2023 WL 2619172, at *2.
[52] *Raytheon* at *2.
[53] ECF No. 131 at 8.
[54] *Id.* at 8-9.
[55] ECF No. 79 at ¶ 2(d).

On the other hand, the Court agrees with the Magistrate Judge's assessment that the restrictions of the Protective Order with respect to Interested Person Information is narrowly tailored. The Protective Order applies to a specific class of persons: "educators, class members, and community members who have reached out to counsel for the plaintiff class or the United States seeking assistance or providing information in connection with this litigation."[56] It also applies to information that would disclose the identities of the forgoing individuals.[57] The Order does not restrict disclosure of the underlying facts or allegations asserted by Interested Persons. This definition thus places some boundaries on the discretion of the Plaintiffs and the United States to designate information as "Interested Person Information," and more importantly, the School Board agreed to this definition of "Interested Person Information" when the Board consented to the terms of the Protective Order. Accordingly, the Magistrate Judge's conclusion that the nature of the Protective Order weighs against the Board's present request to modify the Order is not clearly erroneous or contrary to law.[58]

### C.     Foreseeability.

The School Board next challenges the Magistrate Judge's conclusion that the Board's proposed modification was foreseeable at the time the Board agreed to the terms of the Protective Order. The Magistrate Judge concluded that the "protection of individuals' identities was clearly foreseeable and part of the reason for the entry of the Protective Order in the first place."[59] The School Board argues that the Magistrate Judge's conclusion in this regard is flawed because her ruling conflates foreseeability with the question of whether the parties acted in reliance on the

---

[56] *Id*.
[57] *Id*.
[58] The Protective Order permits the parties "to challenge any designation of personally identifiable information, education records, and employee record, or interested person information as inappropriate; or to seek or agree to different or additional protection for any particular material or information." ECF No. 79 at ¶ 15.  From the Court's review, the Board is making no such specific challenge under paragraph 15, but rather, seeks to modify the Protective Order generally.
[59] ECF No. 125 at 8.

terms of the Protective Order. According to the School Board, the Magistrate Judge's reasoning ignores paragraph 15 of the Protective Order, which provides that the parties reserve the right to request that the Order be modified. Based on this reservation language, the School Board argues that it was foreseeable that the parties might need to modify the terms of the Protective Order at the time the Order was entered.

The School Board's Objection misstates the foreseeability factor that courts consider in deciding whether to modify a protective order. In applying this factor, courts generally consider whether the specific modification requested is supported by "changed circumstances or new situations" that were not foreseeable at the time the order was entered.[60] Here, the School Board seeks to expand the group of individuals entitled to view Interested Person Information to include Board members and executive-level administrators. The School Board seeks this modification on the grounds that its counsel allegedly cannot investigate the allegations made by Interested Persons unless the foregoing representatives have access to information that would disclose the identities of those Interested Persons. However, the School Board offers no evidence of changed circumstances or new situations that would justify the modification that they now seek. Nor does the Board explain how the need for these representatives to access this information was unforeseeable at the time the Order was entered. Counsel also does not show how its concerns about potential ethical violations were unforeseeable at the time the Order was entered. Accordingly, the Court agrees with the Magistrate Judge that the foreseeability factor weighs against the modification requested by the School Board.

---

[60] *Peoples v. Aldine Ind. Sch. Dist.*, No. 06-2818, 2008 WL 2571900, at * 3 (S.D. Tex. June 19, 2008).

### D. Reliance.

The School Board also challenges the Magistrate Judge's conclusion that the parties' reliance on the protections afforded to Interested Person Information weighs against modifying those protections. According to the School Board, the Plaintiffs and United States' arguments that these provisions encourage School Board employees and community members to come forward with relevant information without fear of retaliation is not supported by the record. The School Board asserts that there is no evidence of any threats of retaliation that would chill witnesses from coming forward absent a protective order.[61] The School Board also argues that any reliance by the parties or witnesses on the terms of the Protective Order is undercut by paragraph 15 of the Order, which provides that the parties may request modifications to the Protective Order.[62]

The Court agrees with the Magistrate Judge's conclusion that the parties' reliance on the Interested Person Information provisions in the Protective Order weighs against modifying those provisions at this stage of the litigation. As noted by the Magistrate Judge, the parties agreed to include these protections for Interested Persons who come forward with relevant information, and the parties engaged in discovery with the expectation that these protective provisions would apply. Now, at the close of discovery, the School Board essentially seeks to rewrite these provisions and expose the identities of School Board employees, teachers, and community members who provided information to the Plaintiffs and the United States with the expectation that the Protective Order would shield their identities from supervisors and School Board administrators.[63] If the School Board had sought the modification earlier in the discovery process, the reliance factor may have weighed in the Board's favor. However, in the words of one court, the School Board "should not now be allowed to dramatically and unilaterally reposition that balance at this stage in the

---

[61] ECF No. 131 at 11.
[62] *Id.*
[63] *See e.g.* ECF No. 79 at ¶ 6.

14

litigation."[64] Accordingly, the Court agrees with the Magistrate Judge's conclusion that the parties relied on the Order's protections for Interested Person Information throughout discovery, and that this reliance weighs against the School Board's proposed modification.

E.     **Good Cause.**

Finally, the Court agrees with the Magistrate Judge's conclusion that, considering all the factors as a whole, the School Board has not shown good cause to modify the Protective Order. The School Board sought to modify the Protective Order late in the discovery process, after it had been in place for over a year. As noted above, the reasons for the requested modification were foreseeable at the time the parties negotiated and consented to the terms of the Protective Order. Furthermore, the Protective Order includes remedies short of modification which would allow school administrators to view Interested Person Information. Specifically, to the extent the School Board believes that specific designations of Interested Person Information are inappropriate, paragraph 15 of the Protective Order allows the School Board to challenge those designations.[65] Moreover, paragraph 15 of the Protective Order also allows the parties "to seek . . . *different* or additional protection for any *particular* material or information."[66] Under this provision, the Board could make a tailored request with respect to specific information that it believes requires "different" protection based on unique circumstances. Here, in contrast, the School Board seeks an across-the-board modification impacting an entire category of discovery.

In sum, the Court concludes that the Magistrate Judge's denial of Defendant's Motion to Amend Protective Order was not clearly erroneous or contrary to law. The Magistrate Judge also

---

[64] *Raytheon*, 2008 WL 4371679, *2.
[65] ECF No. 79 at ¶ 15.
[66] *Id.* (emphasis added).

15

granted a 60-day extension of all deadlines in this matter.[67] The Court affirms that extension and it shall run from issuance of this ruling.

## IV.
### CONCLUSION

For the reasons stated above, the State of Louisiana's Motion for Leave to Participate as *Amicus Curiae* [ECF No. 119] is GRANTED IN PART and DENIED IN PART; the School Board's Objection to the Magistrate Judge's Ruling denying the Board's Motion to Amend Protective Order [ECF No. 131] is DENIED. All deadlines in the parties' Plan of Work are EXTENDED sixty (60) days from issuance of this Ruling.

THUS DONE in Chambers on this 24th day of July, 2023.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[67] ECF No. 125 at 11.