UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION


CLAUDE BOUDREAUX, ET AL.                    CASE NO.  6:65-CV-11351

VERSUS                                      JUDGE ROBERT R. SUMMERHAYS

SCHOOL BOARD                                MAGISTRATE JUDGE WHITEHURST
OF ST. MARY PARISH, ET AL.


RULING

Before the Court is a "Motion to Dismiss the Complaint and Dissolve the Injunction" submitted by Defendant, the School Board of St. Mary Parish ("the Board"),[1] and a "Motion for Further Relief" submitted by the Plaintiff Class.[2] The Board contends this matter must be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(h)(3), or alternatively, this suit should be dismissed and the governing desegregation orders should be dissolved pursuant to FED. R. CIV. P. 60(b)(5), or in the further alternative, this suit should be dismissed and the desegregation orders should be dissolved under *Dowell*.[3] The Plaintiff Class opposes the motion,[4] to which the Board has filed a reply.[5] The State of Louisiana has filed an *amicus* brief in support of the Board's motion,[6] and the United States has filed a position statement in opposition to the motion.[7] By its motion, the Plaintiff Class seeks further relief as to three *Green*

---

[1] ECF No. 226. For purposes of identification, all page citations in this Ruling refer to the page number imprinted by the court's electronic filing system, "CM/ECF."
[2] ECF Nos. 244, 247 (ECF No. 247 is an unredacted version of ECF No. 244).
[3] ECF No. 226 at 2 (referencing *Bd. of Educ. of Okla. City Pub. Sch., Indep. Sch. Dist. No. 89, Okla. Cnty., Okla. v. Dowell*, 498 U.S. 237 (1991).
[4] ECF No. 244.
[5] ECF No. 258.
[6] ECF No. 242.
[7] ECF No. 255.

factors: student assignment, faculty, and facilities.[8] The Board opposes Plaintiff's motion,[9] and the

Plaintiff Class has filed a reply.[10] The United States has filed a position statement in support of the

Plaintiff Class's motion,[11] and the State of Louisiana has filed an amicus brief in opposition to the

motion.[12] For the reasons that follow, the Board's Motion to Dismiss [ECF No. 226] is DENIED,

and the Plaintiff Class's Motion for Further Relief [ECF No. 244] is DEFERRED pending an

evidentiary hearing.

## I.
### BACKGROUND

On August 31, 1965, five African American students attending public schools in St. Mary

Parish filed suit for injunctive relief against the School Board of St. Mary Parish, alleging the

Board was maintaining racially segregated schools in violation of the Fourteenth Amendment to

the United States Constitution.[13] The suit was brought as a class action:

> Plaintiffs bring this action as a class suit pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of other [Black] children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein as more fully appears. The members of the class on behalf of which plaintiffs sue are so numerous as to make it impracticable to bring them all individually before this Court, but there are common questions of law and fact involved, common grievances arising out of common wrongs and common relief is sought for each of the plaintiffs individually and for each member of the class. Plaintiffs fairly and adequately represent the interests of the class.[14]

---

[8] ECF No. 244 at 3 (referencing *Green v. Cnty. Sch. Bd. of New Kent Cnty., Va.*, 391 U.S. 430, 436 (1968)).
[9] ECF No. 258.
[10] ECF No. 260.
[11] ECF No. 259.
[12] ECF No. 268.
[13] ECF No. 17-4 at 2, 4.
[14] *Id.* at 3.

At the time suit was filed, a prior version of Rule 23 governing class actions (*i.e.*, the 1938 rule) was in effect. Unlike the current version of Rule 23, the former rule did not require that courts issue an order certifying an action as a class action.[15]

On September 22, 1965, the Board filed an answer admitting that "prior to the filing of this suit bi-racial schools did exist in St. Mary Parish and . . . have existed as such for many years."[16] The Board stated it had passed a resolution on September 16, 1965, which it asserted "effectively removes defendant, School Board, from the category of operating a discriminatory bi-racial school system."[17] The Board's prayer for relief asked the Court to approve the resolution "as providing a proper mode of desegregation of the public schools of St. Mary Parish" and to summarily dismiss the Complaint.[18] Alternatively, the Board asked "that this Court assume jurisdiction to supervise the development and implementation of an orderly plan of desegregation of the public schools of St. Mary Parish in such a manner as to cause an orderly transition from a bi-racial to a unitary, non-racial system."[19] The Board raised no objection to the propriety of the suit proceeding as a class action, but rather, it implicitly agreed that a class action was the appropriate procedural vehicle. Two weeks after its Answer, the Board sent a letter to the Court stating that they would "stipulate, or admit, that the plaintiffs are residents of St. Mary Parish, Louisiana, and are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs, and that plaintiffs are, therefore, under the law entitled to bring this suit as a class action."[20]

---

[15] *Compare* former Rule 23, 39 F.R.D. 69, 94-95, *with* FED. R. CIV. P. 23(c) (2025).

[16] ECF No. 17-4 at 11.

[17] *Id.* The resolution (passed to "comply with anticipated orders of the United States District Court") set up a system allowing any parent to request a transfer of his or her children to a specific school or schools, subject to approval by the Superintendent or the Board. *Id.* at 15-17.

[18] *Id.* at 11–12.

[19] *Id.* at 12.

[20] *Id.* at 19.

On October 11, 1965, the Court granted the Plaintiff Class's Motion for Judgment on the

Pleadings and issued a Decree stating in pertinent part as follows:

> For written reasons this day assigned, it being stipulated that plaintiffs are members of the [Black] race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class, it is now:
>
> I.    ORDERED, ADJUDGED AND DECREED that the defendant[], St. Mary Parish School Board, . . . be . . . hereby permanently restrained and enjoined from:
>
> > (a)    Continuing to operate a segregated or biracial public school system in said parish . . ., and
> >
> > (b)    from assigning . . . pupils to said public schools solely because of the race of any or all of such pupils, and
> >
> > (c)    from continuing to maintain dual attendance zones or districts in furtherance of a segregated or biracial public school system.
>
> II.    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the proposed plan of desegregation of the St. Mary Parish Public School System, adopted and filed in this cause by defendant[] on September 16, 1965, retroactive to the beginning of the fall term 1965-66, applying to grades one through twelve . . . ., be and the same is hereby approved and made the order of this Court . . . .[21]
>
> . . . .
>
> IV.    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs' request for desegregation of teaching personnel and other administrative staff in said school system, is deferred and action thereon at this time is denied, pending the progress of the pupil desegregation of said system; all subject to the future orders of the Court.
>
> V.    Jurisdiction is retained in this case for such further proceedings as may become necessary and proper.[22]

---

[21] In particular, the referenced "plan of desegregation" abolished all dual attendance zones and districts, provided for an initial pupil assignment procedure applicable to all students "whereby transfers may be made according to the choice of school of the individual student, under criteria set forth in the [plan], which make no distinction on account of race, color or creed. ECF No. 17-4 at 25; *see also id.* at 15–17.

[22] *Id.* at 20–22.

The following year, the Fifth Circuit issued an opinion in *Jefferson County*, which impliedly overruled the Decree issued by this Court.[23] On May 2, 1967, in conformity with *Jefferson County*, the Court issued a superseding Decree.[24] This second Decree required all students (White and Black) to "exercise a free choice of schools annually," and imposed "additional detailed duties" on the Board, including the desegregation of teaching personnel and the submission of bi-annual reports.[25] Two years later in *Hall*, the Fifth Circuit ruled that the "freedom of choice" desegregation plans ordered in *Jefferson*—including the plan in effect for St. Mary Parish—were ineffective and remanded "in order that a new plan may be put into effect in each school district."[26] On August 4, 1969, the Court issued its third and final Decree, further refining the desegregation duties of the Board and preserving the requirement of bi-annual reporting.[27] The third Decree maintained the permanent injunction prohibiting the Board from "discriminating on the basis of race or color in the operation of their parish school system."[28] In 1970, the Plaintiff Class sought further relief, arguing that "freedom of choice" plans (as retained in the third Decree)[29] had not resulted in desegregation and did not comply with governing caselaw, and further requesting the Court order the Board "to complete the pairing of all grades between former all-black and all-white schools," as well as "implement the provisions of Singleton, regarding faculty, staff, transportation, extracurricular activities and facilities . . . ."[30] The Court

---

[23] *United States v. Jefferson Cnty. Bd. of Educ.*, 372 F.2d 836 (5th Cir.1966), *on reh'g*, 380 F.2d 385 (5th Cir.1967); *see also* ECF No. 17-4 at 29.

[24] ECF No. 17-4 at 30–46. The Decree was drafted by the Fifth Circuit and ordered to be entered by district courts on remand of the consolidated cases in *Jefferson Cty.* 380 F.2d at 390–96. The desegregation plans ordered in *Jefferson* were known as "freedom of choice plans" or "Jefferson-decree plans." *See e.g. Hall v. St. Helena Parish School Bd.*, 417 F.2d 801, 808 (5th Cir. 1969).

[25] ECF No. 17-4 at 30, 32, 40, 41–43.

[26] *Hall*, 417 F.2d at 809.

[27] ECF No. 1-13 at 1–4.

[28] *Id.* at 1.

[29] *See id.* at 2–3

[30] ECF No. 226-3 at 243–44.

then issued an injunction modifying the previous operational plan used to implement the final Decree.[31] The Court again issued an injunction modifying the governing Decree on August 2, 1971, requiring further desegregation of faculty and staff, implementation of a majority-to-minority transfer policy, and addressing various other issues.[32]

Over the next four and a half years, the Court issued a series of orders establishing various remedial measures the Board was required to undertake to desegregate its schools. In April of 1975, after receipt of the Board's bi-annual report, the Court issued an order giving the plaintiffs thirty days to "file any and all objections they may have to the operation of the public school system in the parish of St. Mary, Louisiana," stating that "otherwise this Court shall, in the absence of such objections, declare said system unitary and direct that the matter be placed on the inactive docket."[33] Neither objections nor an order declaring the system unitary have been located in the record.

Thereafter, the record reflects a series of reports submitted by the Board from 1975 through 1983, as well as a Joint Motion by the Board and Plaintiffs to reconfigure certain schools, which was granted by the Court in 1981.[34] In 1999, certain parents of students attending St. Mary Parish public schools filed suit alleging the Board was in violation of the desegregation Decree as it had allowed its staff to re-segregate and its facilities were being funded in a disparate manner.[35] The

---

[31] ECF No. 1-42 at 1–4. *See Moore v. Tangipahoa Par. Sch. Bd.*, 843 F.3d 198, 200–01 (5th Cir. 2016) ("[E]quitable decrees that impose a continuing supervisory function on the court commonly . . . contemplate the subsequent issuance of specific implementing injunctions . . . . [T]he initial desegregation decree was essentially 'an injunction generator' allowing the district court to exercise its ongoing supervisory function to ensure the school district achieved and maintained unitary status.") (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 171 F.3d 1083, 1086 (7th Cir. 1999)).

[32] ECF No. 226-3 at 354.

[33] ECF No. 1-67.

[34] ECF Nos. 1-68 through 1-79.

[35] *See David LeBourgeois v. St. Mary Par. Sch. Bd.*, No. 6:99-cv-1541 (W.D. La. filed Aug. 23, 1999), ECF No. 1.

parties agreed to settle the suit after the Board adopted a resolution stating that its policy would be "to hire and promote teachers and administrators in accordance with, as much as may be practical, the racial population of East St. Mary Parish and West St. Mary Parish as originally defined and described by Judge Putnam in his Opinion and Order dated August 5, 1970," and that it would assign teachers with provisional teaching certificates "equally as possible to both East and West St. Mary, giving due consideration to the residence of the employee."[36]

On May 15, 2012, the Court *sua sponte* entered a final judgment of dismissal with prejudice.[37] Two days later, the Court *sua sponte* vacated and set aside the judgment, finding "additional facts are necessary to address the unitary status of the school system."[38] In 2016, the United States requested information from the Board concerning multiple letters received from "concerned residents of St. Mary Parish regarding the Board's intent to close two additional elementary schools in the parish, including one of the parish's few remaining historically African-American schools."[39] In March of 2018, the United States issued a supplemental request for information and the following May, it conducted a site visit and interviews of district and school officials.[40]

On March 25, 2019, the Board filed a Motion to Dismiss as Moot for Lack of Subject Matter Jurisdiction,[41] and on May 29, 2019, counsel for Plaintiffs filed "The Plaintiff Class' Motion to Substitute Named Plaintiffs."[42] The Court denied the Board's Motion to Dismiss and

---

[36] *LeBourgeois*, ECF No. 19 at 2; *see also id.* at ECF Nos. 21, 22.
[37] ECF No. 3.
[38] ECF No. 4.
[39] *See* ECF No. 29 at 8; ECF No. 227 at 39.
[40] ECF No. 29 at 8.
[41] ECF No. 17.
[42] ECF No. 26.

granted the Motion to Substitute Named Plaintiffs.[43] The Court further found that although the case had proceeded up to that point as an "implied" class action, the class "should be formally recertified and its parameters should be clarified."[44] The Court concluded by explicitly stating that it "would look favorably upon a request to certify this matter for interlocutory appeal."[45] The Board made no attempt to appeal that Ruling.

On December 12, 2019, the case was reassigned to the undersigned.[46] On September 8, 2020, the Court "formally recertified" the following class, pursuant to FED. R. CIV. P. 23(b)(2):

> (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) all custodial biological or custodial adoptive parents of the foregoing students.[47]

Neither party appealed this Order.[48]

On April 5, 2022, the State of Louisiana filed a Motion for Leave to Participate as *Amicus Curiae*, asking that it be granted a role in this case equivalent to the United States.[49] The Court granted the State leave to file *amicus* briefs and to participate in oral arguments, but denied the motion to the extent the State sought a broader role than the foregoing.[50] On May 17, 2024, one of the attorneys representing the State filed a motion to withdraw as counsel for the State and to re-enroll as trial counsel for the School Board.[51] At a subsequent conference, the motion was

---

[43] *See* ECF No. 36 (*available at Boudreaux v. Sch. Bd. of St. Mary Par.*, 405 F.Supp.3d 652 (W.D. La. 2019)); ECF No. 37.
[44] ECF No. 36 at 21; *see also id.* at 16–20.
[45] *Id.* at 22.
[46] ECF No. 49.
[47] ECF No. 68; *see also* ECF No. 67.
[48] *See* FED. R. CIV. P. 23(f).
[49] ECF No. 119; *see also* ECF No. 135 at 6 n. 3.
[50] *See* ECF No. 143 at 6; ECF No. 144.
[51] ECF No. 169.

granted.[52] Thereafter, the State filed the pending, second motion to dismiss, and the Plaintiff Class filed the pending motion for further relief.[53]

## II.
### DISCUSSION

**A.   Whether the Court lacks subject matter jurisdiction over this suit.**

The Board contends the Court lacks subject-matter jurisdiction over this litigation and therefore the case must be dismissed.[54] According to the Board, because there was no named plaintiff with a live claim at the time of class certification, the case is moot.[55] The Board asserts the only applicable exception to mootness—the "inherently transitory" exception—is inapplicable here, because too much time has passed between when the original plaintiffs graduated, and when new plaintiffs with live claims were substituted and the class was formally certified.[56] The Board further contends the Court was incorrect when it previously found that "the implied class action doctrine has not been overruled," and further found that "under the facts of this matter this suit constitutes an implied class action."[57]

The Board's implied class action arguments were previously addressed in a thorough and well-reasoned opinion by Judge Robert G. James in 2019.[58] In that ruling, the Court concluded

---

[52] ECF No. 182.

[53] The second motion to dismiss devotes a significant amount of briefing to revisiting issues addressed in the first motion to dismiss filed by the Board's original counsel.

[54] Rule 12 instructs that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The party asserting jurisdiction bears the burden of proof. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). A lack of subject matter jurisdiction may be found by examining: (1) solely the complaint, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts, as well as the court's resolution of disputed facts. *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

[55] ECF No. 227 at 44–45.

[56] *Id.* at 46–57.

[57] *Id.* at 57–63; *see also Boudreaux*, 405 F.Supp.3d at 664.

[58] *See Boudreaux, supra.* While the Court did not address the Board's "inherently transitory" argument (because the Board did not raise it at that time), there was no need to address that argument then or now, as

that Fifth Circuit precedent recognizing an "implied class action doctrine" had not been overruled, and that under the facts of this case, an implied class action exists.[59] The Court invited the Board to file an interlocutory appeal at that time, but no appeal was taken. The Court declines at this point in the case to revisit Judge James's ruling or "to announce for the [Fifth Circuit] that it has overruled one of its decisions."[60]

The final argument in this section of the Board's brief is that this Court lacks jurisdiction over this matter because "no vestiges of segregation remain within the scope of the Court's continuing jurisdiction."[61] The Board bases its position on arguments that: (1) "the 1965 Board's policies and practices purposefully separating schools by race are not the direct cause of any current aspect of today's St. Mary Parish schools,"[62] (2) "[t]he facts here show that, as a matter of law, there can be no remaining 'direct effects' of the 1965 Board's policies and practices intentionally separating schools by race," because "[t]he causal chain flowing from that violation was severed when the [original named Plaintiffs'] claims were satisfied,"[63] and (3) the only conclusion to be drawn from the fact that the original named Plaintiffs have lodged no complaint in this case since it was administratively closed is that "they were satisfied that the Board's 1975 policies had eliminated 'direct' effects of that prior intentional separation from all areas of operation."[64] But these arguments are all grounded on disputed facts that should be properly addressed in the contemplated evidentiary hearing addressing the *Green* factors. Specifically, whether the Board has "eliminated the vestiges of prior *de jure* segregation to the extent

---

the Court found at all times this matter had proceeded as an implied class action. *Boudreaux*, 405 F.Supp.3d at 665-66.

[59] *Boudreaux*, 405 F.Supp.3d at 664; *see also id.* at 665-66.

[60] *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000).

[61] ECF No. 227 at 63 (emphasis omitted); *see also id.* at 73.

[62] *Id.* at 69.

[63] *Id.*

[64] *Id.* at 70.

practicable" [65] is disputed by the Plaintiff class, as demonstrated by the evidence Plaintiffs tender in connection with their briefing.[66] As such, the Court finds dismissal of this suit and dissolution of the Decree and implementing injunctions for lack of jurisdiction would be improper at this time.[67]

The Board further argues that due to the passage of time, the presumption of *Freeman*—*i.e.*, that the Board "bears the burden of showing that any current [racial] imbalance in its schools is not traceable, in a proximate way, to the prior [*de jure*] violation"—no longer applies, and "[t]hus, as a matter of law, the Board no longer bears the burden of disproving vestiges."[68] This argument is supported solely by a concurring opinion in *Freeman*. A concurring opinion is not the law. Rather, at a future evidentiary hearing, the Board will bear the burden of demonstrating that any current unconstitutional racial imbalance is not traceable, in a proximate way, to its prior dual, racially segregated school system."[69]

Finally, the Board argues that unlike the original Decree, in its subsequent Decrees the Court did not explicitly state that it was "retaining jurisdiction" over this case, and therefore "there is no continuing jurisdiction here."[70] According to this argument, the original 1965 Decree states "[j]urisdiction is retained in this case for such further proceedings as may become necessary and proper."[71] However, "in 1967, Judge Putnam adopted the *Jefferson* Decree, 'super[s]eding all

---

[65] *Anderson v. School Bd. of Madison Cnty.*, 517 F.3d 292, 297 (5th Cir. 2008).
[66] *See e.g.* ECF No. 244-1 at 52–112.
[67] *See e.g. Borel ex rel., AL v. Sch. Bd. St. Martin Par.*, 44 F.4th 307, 312 (5th Cir. 2022) ("In an ongoing institutional reform case like this one, jurisdiction extends to the 'the correction of the constitutional infirmity.'") (quoting *Brumfield v. La. St. Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015)).
[68] ECF No. 227 at 72; *see also id.* at 71 (citing *Freeman v. Pitts*, 503 U.S. 467, 506 (1992) (Scalia, J., concurring)); *see also Freeman* at 494.
[69] *Freeman*, 503 U.S. at 494; *Hull v. Quitman Cnty. Bd. of Educ.*, 1 F.3d 1450, 1454 (5th Cir. 1993).
[70] ECF No. 227 at 69.
[71] ECF No. 17-4 at 22.

previous orders,'" and did not explicitly "retain[] jurisdiction" in the latter Decree (nor any subsequent Decree), and therefore "there is no continuing jurisdiction here."[72]

The Board is incorrect. On May 2, 1967, the Court entered the Decree ordered by the Fifth Circuit in *Jefferson County*.[73] The Court concluded its Ruling as follows:

> [T]he decree ordered [by the Fifth Circuit] placed into effect will be entered. It is very broad and imposes additional detailed duties on the defendant School Boards, some of which may raise practical problems of a local nature in many instances. *If and when such problems arise, the plaintiffs, as well as the local School Boards, may make application to this Court for a hearing on all pertinent facts to develop rational and workable solutions, and the decree may be amended, as required, in the exercise of our discretionary powers in equity.*
>
> Accordingly, the attached decree, superceding [sic] all previous orders entered in these dates, will issue forthwith.[74]

As the emphasized language shows, jurisdiction was explicitly retained in this matter. Regardless,

> In an ongoing institutional reform case like this one, jurisdiction extends to the [sic] "the correction of the constitutional infirmity." A district court has the continuing ability to order affirmative relief to cure violations flowing from the original constitutional violation, and must retain jurisdiction over a school desegregation case until the vestiges of past segregation have been eliminated to the extent practicable.[75]

Based upon the foregoing, the Court concludes that it retains jurisdiction over this matter.

---

[72] ECF No. 227 at 69 (first alteration in original).

[73] As previously noted, the Decree was drafted by the Fifth Circuit in *Jefferson County*. *See* n.24, *supra*. The *Jefferson County* opinion clearly requires continuing jurisdiction. 372 F.2d at 895 ("When school systems are under court-ordered desegregation, the courts are responsible for determining the sufficiency of the system's compliance with the decree. The courts' task, therefore, is a continuing process . . . . What the decree contemplates, then, is continuing judicial evaluation of compliance by measuring the performance—not merely the promised performance—of school boards in carrying out their constitutional obligation 'to disestablish dual, racially segregated school systems and to achieve substantial integration within such systems.'"); *see also id.* at 901 (requiring school boards to provide status reports to the court "on or before April 15, 1967, and on or before June 15, 1967, and in each subsequent year on or before June 1 . . . ."; *id.* at 902 n.1.

[74] ECF No. 17-4 at 30 (emphasis added).

[75] *Borel*, 44 F.4th at 312 (quoting *Brumfield*, 806 F.3d at 298) (internal citations omitted); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees"); *Dayton Bd. of Ed. v. Brinkman*, 443 U.S. 526, 537 (1979) ("Given intentionally segregated schools in 1954, however, the Court of Appeals was quite right in holding that the Board was thereafter under a continuing duty to eradicate the effects of that system . . . .").

**B.    Whether the Court Should Dismiss this Suit and Vacate the Injunctions Under Rule 60(b)(5).**

The Board asserts the Court should vacate the operative Decree and implementing injunctions under Rule 60(b)(5) and dismiss this litigation.[76] Rule 60(b)(5) provides in pertinent part that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" where: "the judgment has been satisfied, released, or discharged," or "applying it prospectively is no longer equitable."[77] Here, the Board argues: (1) the Decree has been satisfied, because the Board completed every affirmative action required of it and complied for a reasonable amount of time,[78] (2) applying the Decree prospectively is no longer equitable, because the public interest is best served by returning control to the Board,[79] (3) changed factual circumstances (*i.e.*, the "massive shift in population in St. Mary Parish" that began in 1975, ultimately resulting in a student population that today is less than half of what it was in 1974) warrant releasing jurisdiction,[80] and (4) changes in the law—*i.e.,* "recent constitutional limitations on race-based remedies for past violations of the Equal Protection Clause of the Fourteenth Amendment"—warrant the relinquishment of jurisdiction .[81]

The Board's first three arguments involve contested issues of fact and cannot be decided without an evidentiary hearing. The Board's fourth argument relies on caselaw developed in areas outside of the school desegregation context. Binding Supreme Court precedent in school desegregation cases requires that before a school desegregation case can be dismissed, the Board must demonstrate that it has "complied in good faith with the desegregation decree since it was

---

[76] ECF No. 227 at 74, 91–92 (citing FED. R. CIV. P. 60(b)(5)).
[77] FED. R. CIV. P. 60(b)(5).
[78] ECF No. 227 at 76, 78.
[79] *Id.* at 78–79.
[80] *Id.* at 80, 85.
[81] *Id.* at 86.

entered," and that "the vestiges of past discrimination ha[ve] been eliminated to the extent practicable."[82] Until such time as the Supreme Court overrules its long line of school desegregation decisions, that is the body of law which inferior courts must follow.[83]

**C.    Whether the Court Should Dismiss this Suit and Vacate the Injunctions Under *Dowell*.**

Finally, the Board contends that it has complied in good faith with the operative desegregation Decree since its issuance, and that all vestiges of past discrimination have been eliminated to the extent practicable.[84] Therefore, it concludes this suit should now be dismissed.[85] The Plaintiff Class contends the Board has not complied in good faith with the Court's desegregation orders, nor eliminated the vestiges of prior *de jure* segregation in the areas of student assignment, faculty, and facilities.[86]

In a school desegregation case, "the ultimate goal of litigation is to 'transition to a unitary, nonracial system of public education.'"[87] The Supreme Court, recognizing "the term 'unitary' is not a precise concept,"[88] has established certain aspects of a school system "that must be freed from racial discrimination before the desegregation process will be deemed successful."[89] These features, referred to as "the *Green* factors," include: "student assignment, faculty assignment, staff assignment, facilities and resources, transportation, and extracurricular activities."[90] "Other

---

[82] *Dowell*, 498 U.S. at 249–50; *see also Missouri v. Jenkins*, 515 U.S. 70, 89 (1995).

[83] *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *accord Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *see also Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 319 (5th Cir. 2024).

[84] ECF No. 227 at 94–95.

[85] *See e.g.* ECF No. 226 at 2, 3; ECF No. 227 at 116.

[86] ECF No. 244-1 at 39–40.

[87] *Borel*, 44 F.4th at 313 (quoting *Green*, 391 U.S. at 436).

[88] *Freeman*, 503 U.S. at 487.

[89] *Borel* at 313 (citing *Green* at 435).

[90] *Borel* at 313-14 (citing *Green* at 435).

ancillary factors, such as quality of education, are also relevant."[91] "To achieve unitary status in each of these areas, a defendant district is required to demonstrate that it has (1) 'complied in good faith with desegregation orders' for a period of at least three years and (2) 'eliminated the vestiges of prior *de jure* segregation to the extent practicable.'"[92]

The Board contends it satisfied its obligations under *Dowell* with respect to student assignment "in 1974 and again in 1983," and any current racial imbalance is due to "'immutable geographic factors and post-desegregation demographic changes.'"[93] The Plaintiff Class has offered evidence demonstrating factual issues remain with regard to whether the Board has eliminated the vestiges of discrimination with respect to student assignment, as well as whether the Board has complied in good faith with this aspect of the Court's desegregation orders.[94] Accordingly, an evidentiary hearing is required with regard to student assignment.

The Board contends that it satisfied its obligations under *Dowell* with respect to faculty and staff assignments.[95] The Board supports this argument by citing to an October 26, 1970, letter to the Court from the Board stating that "all promotions, demotions and reassignments are made in accordance with the Louisiana Teachers Tenure Law,"[96] and by citing to an anti-discrimination faculty policy purportedly adopted in 1994.[97] But this evidence does not address whether "faculty and staff who work directly with children are assigned in such a manner that the racial composition of the faculty and staff would not indicate that the school is intended for either African–American

---

[91] *Borel*, 44 F.4th at 314 (citing *Freeman*, 503 U.S. at 482–83).

[92] *Borel* at 314 (quoting *Anderson*, 517 F.3d at 297) (citing *United States v. Fletcher ex rel. Fletcher*, 882 F.3d 151, 157–60 (5th Cir. 2018)).

[93] ECF No. 227 at 103 (quoting *Price v. Austin Ind. Sch. Dist.*, 945 F.2d 1307, 1314 (5th Cir. 1991)); *see also id.* at 107.

[94] *See e.g.* ECF No. 244-1 at 44–45, 52–54 (submitting evidence in support of Plaintiffs' position that the Board continues to operate several formerly *de jure* White schools as racially identifiable White schools).

[95] ECF No. 227 at 109 (citing ECF No. 1-48).

[96] *Id.* (citing ECF No. 226-3 at 345–46).

[97] *Id.* at 114 (citing ECF No. 226-49).

or white students."[98] In this regard, the Plaintiff Class has submitted its own evidence demonstrating that there is a factual dispute on this issue. Accordingly, an evidentiary hearing on this topic is necessary.[99]

The Board also contends that there are no vestiges of the former *de jure* system with regard to facilities, because the Board's former policies requiring racial separation were "replaced . . . long ago with anti-discrimination policies (not to mention the added layer of state laws prohibiting racial discrimination in all areas of public education)."[100] The Board notes that Section VI(a) of the 1967 *Jefferson* Decree, entitled "School Equalization," required the Board "to provide physical facilities, equipment, courses of instruction, and instructional materials of quality equal to that provided in schools previously maintained for [W]hite students," and to address "[c]onditions of overcrowding."[101] According to the Board, "[t]he 1969 Decree discontinued that equalization policy because it had achieved its purpose."[102] The Board then characterizes the 1971 Amended Judgment as "a prophylactic facilities policy."[103] The Board further notes it has a current policy that requires that "all school properties be maintained in good physical condition."[104] In light of the forgoing, the Board concludes that "[t]oday, St. Mary Parish public schools cannot be identified as 'Black' or 'White' by their physical condition.[105] Again, this argument is made in the context of an incomplete evidentiary record. In sum, the Court agrees with the Plaintiff Class that an

---

[98] *Anderson*, 517 F.3d at 303 (citing *Singleton v. Jackson Mun. Separate Sch. Dist.*, 419 F.2d 1211, 1217–18 (5th Cir. 1969) (*en banc*).
[99] ECF No. 244-1 at 94–101.
[100] ECF No. 227 at 117.
[101] *Id.* at 117–18 (citing ECF No. 17-4 at 39).
[102] *Id.* at 118 (citing ECF No. 226-3 at 145).
[103] *Id.* The Aug. 2, 1971, Amended Judgment states in pertinent part: "All school construction, school consolidation, and site selection (including the location of any temporary classrooms) in the system shall be done in a manner which will prevent the recurrence of the dual school structure once this desegregation plan is implemented." ECF No. 226-3 at 356.
[104] ECF No. 227 at 121 (citing ECF No. 226-68).
[105] *Id.* at 122.

evidentiary hearing is necessary with regard to desegregation of facilities and that, accordingly, the motion to dismiss must be denied.[106]

## III.
### CONCLUSION

For the reasons set forth above, the Board's "Motion to Dismiss the Complaint and Dissolve the Injunction" [ECF No. 226] is DENIED, and the Plaintiff Class's "Motion for Further Relief" [ECF No. 244] is DEFERRED.

THUS DONE in Chambers on this 7th day of April, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[106] ECF No. 244-1 at 107–111.